UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | |
| | . | |
| Plaintiff, | . | CR No. 21-0575 (JDB) |
| | . | |
| v. | . | |
| | . | |
| 01 DAVID JOHN LESPERANCE, | . | Washington, D.C. |
| 02 CASEY CUSICK, | . | Monday, July 10, 2023 |
| 03 JAMES VARNELL CUSICK JR., | . | 9:51 a.m. |
| | . | |
| Defendants. | . | Pages 1 through 194 |

. . . . . . . . . . . . . . .

DAY 1
TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE JOHN D. BATES
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:

For the Government:            FRANCESCO VALENTINI, ESQ.
                              U.S. Department of Justice
                              Criminal Division
                              950 Pennsylvania Avenue NW
                              Washington, DC 20530

                              SONIA MURPHY, ESQ.
                              U.S. Department of Justice
                              Civil Division
                              1100 L Street NW
                              Washington, DC 20530

For Defendants:               JOHN M. PIERCE, ESQ.
                              ROGER ROOTS, ESQ.
                              John Pierce Law, P.C.
                              21550 Oxnard Street
                              Suite 3rd Floor OMB 172
                              Woodland Hills, CA 91367

Court Reporter:               BRYAN A. WAYNE, RPR, CRR
                              U.S. Courthouse, Room 4704-A
                              333 Constitution Avenue NW
                              Washington, DC 20001

P R O C E E D I N G S

THE DEPUTY CLERK:  Your Honor, this is criminal action 21-575, United States of America versus David John Lesperance, Casey Cusick and James Varnell Cusick, Jr.

Will the parties please come forward and identify themselves for the record.

MR. VALENTINI:  Good morning, Your Honor, and counsel. My name is Francesco Valentini, one of the prosecutors in this case.  Also counsel --

MS. MURPHY:  Good morning.

MR. VALENTINI:  Also at counsel table with me today are my co-counsel, Sonia Murphy, trial attorney with the United States Department of Justice; Josephine Roberts and Tamica Meadows, our paralegals; and FBI-TFO Kris Miyasato. Thank you.

THE COURT:  Good morning to all of you.

MR. PIERCE:  Good morning, Your Honor.  John Pierce on behalf of defendants James Cusick, Casey Cusick, and David Lesperance, who are here in the courtroom with us, along with my co-counsel Roger Roots, and our paralegal, Emily Lambert.

THE COURT:  All right.  Good morning to all of you. Are there logistical issues before we begin with jury selection?  Mr. Valentini.

MR. VALENTINI:  Yes.  Just two very brief notes. The first, I just wanted to confirm with the Court, at the

pretrial conference last week the Court ruled that the
government would be allowed to have one case agent in the
courtroom.  I just wanted to confirm with the Court that we do
have two other case agents in the courthouse, and that we
expect they will not be in the courtroom, of course, based on
the Court's ruling, but we do expect to continue interacting
with them throughout the trial as needs to do additional
research or look into additional matters arise.  I just wanted
to make sure that was okay with the Court.

THE COURT:  I see no problem with that.  Just be
cognizant of your responsibilities under the various rules.

MR. VALENTINI:  Of course.  And the other matter that I
wanted to raise is about within the last 15 minutes there's a
trial brief that was filed on the docket that also seems to
contain some belated objections to our proposed trial exhibits.

I'd understood that the point of the pretrial conference
was in part to resolve that type of issue.  At the same time,
we have glanced at the brief and we are ready to address any
issues that the Court would like to address before jury
selection or during breaks in jury selection or before trial.
Thank you.

THE COURT:  Well, we're not going to address them now
because, although you've had a chance to glance at it, I have
not.  And it's a rather late filing.  That doesn't mean that I
will ignore it.  I'll look at it when I can.  But now is not

 1    the moment I'm going to look at it.  With that, Mr. Pierce.

 2        MR. PIERCE:  Yes, Your Honor.  Just a housekeeping

 3    issue.  With respect to if we're using the phones as we've

 4    experienced before where the defendants are listening and the

 5    counsel are able to talk, we may need two more phones at some

 6    point.  I don't know if that's necessary for jury selection,

 7    but at some point we may need two more phones.

 8        THE COURT:  All right.  That is noted and will be

 9    communicated and we'll see if we can get them set up.

10      I was also informed, Mr. Pierce, that you may have a second

11    quote-unquote paralegal that you might have sitting here in

12    the courtroom.

13        MR. PIERCE:  Yes, Your Honor.  That is Mr. Moseley.

14        THE COURT:  And that would mean that Mr. Moseley will

15    not be a witness in the chase?

16        MR. PIERCE:  He will not be a witness in the case.

17        THE COURT:  All right.  That's good.  Because I was

18    going to be inquiring of you as to whether certain ethical

19    obligations had been satisfied with respect to a potential

20    witness who is, while not an attorney member of your firm, is

21    nonetheless a member of your firm, and there are ethical

22    obligations and requirements that would have to be satisfied.

23    But since he's not going to be a witness, we don't have to

24    deal with that.

25        MR. PIERCE:  Yes, Your Honor.

1        THE COURT:  With that, I am prepared to begin the jury

2    selection process by bringing the jury pool in for the general

3    voir dire questions, and then subsequent to that, bringing

4    them in one by one for follow-up questions.

5      Any questions about the process before we begin that

6    process?

7        MR. VALENTINI:  No, Your Honor.

8        MR. PIERCE:  No, Your Honor.

9        THE COURT:  All right.  Let's get the jury ready and

10    bring them in.

11        THE DEPUTY CLERK:  Yes, Your Honor.

12      (Jury pool enters the courtroom.)

13        THE COURT:  Good morning, ladies and gentlemen.  I am

14    Judge John Bates.  I will be the presiding judge in this case.

15    You've been called to this courtroom for possible selection as

16    a juror in a criminal case entitled the United States versus

17    Lesperance.  In this case, David John Lesperance, Casey

18    Cusick, and James Varnell Cusick Jr. are each charged with

19    four offenses which I will review with you in just a moment.

20      Would you all please stand for a second so you can be sworn

21    in by the deputy clerk, and then we'll be ready to proceed.

22        THE DEPUTY CLERK:  Will everyone please raise your

23    right hands.

24      (The jury pool is sworn.)

25        THE COURT:  Thank you.  And now let me explain.  The

1    procedure of jury selection, which is called the voir dire

2    process, has as its object to select 12 jurors, and in this

3    case two alternate jurors as well, who have no prior knowledge

4    concerning the case and no bias toward either side in the

5    case.  In short, it is our aim to select a jury that will

6    reach a verdict based solely on the evidence presented in the

7    courtroom and the law as I instruct you.

8        During the voir dire process you will be introduced to the

9    participants in the trial, and I will ask you a series of

10   questions.

11       The words "voir dire" are a legal term which comes from the

12   French language and means "to speak truthfully."  The origin

13   of voir dire helps to explain its purpose.  It's the time at

14   the beginning of a trial when a jury is selected and when I

15   will ask you some questions which the lawyers and I believe

16   will be helpful to us in selecting a fair and impartial jury.

17   You, of course, are bound by the oath that you have just taken

18   to speak truthfully in response to those questions.

19       Now, as I just said, the reason for asking the questions is

20   to help the parties and the Court select a jury that will be

21   fair and impartial, that will make a decision based only on

22   the evidence presented in the courtroom, and that will follow

23   my instructions and will be fair to both sides.

24       You should -- now I believe you do -- have a little card

25   and a pencil.  I would ask if you haven't already done so that

on one side of the card you put your juror number, the number

you've been assigned for this process.  As I go through each

of these questions, if your answer is yes to the question or

if you think you have some information to provide in response

to the question, then just write down the number of that

question on the card.  You don't have to write them all down;

just write down the ones for which you have a yes answer and

have some information to provide to the Court and counsel.

When we finish that, everyone will then leave the courtroom

and we will bring you back one by one for an individual

conversation with me.  During that conversation you will give

me your card and state your jury number and I will ask you

about your answers to particular questions.  We clear the room

for that conversation to preserve your privacy if there are

any sensitive matters with respect to the questions.

I will go through each question very carefully and slowly.

If you want me to repeat it, just stick your hand up really

high in the air so I can see it, so I don't miss you.  If you

want me to go over it again because you didn't hear it or

understand it, just ask, don't be shy, please.  Because I want

to make sure you completely understand each question before

you give your answer.

Also as we go through this, if you remember information in

response to an earlier question, but you can't remember the

number of that question, there is sort of a catch-all question

1    at the end.  So you can just put down that one and maybe make

2    a note to yourself, and then we can go back over what other

3    information you may have.  The card is used just as a reminder

4    for you of which questions you answered yes to when I went

5    through all of the questions.

6        I'm going to be asking what may appear to you to be some

7    personal questions in an attempt to get your viewpoint about

8    things, and it's important that you be entirely

9    straightforward with us in your responses so we may more

10    easily and appropriately select a jury for this case.

11        Now, this is a criminal case in which the government has

12    charged the defendants, again, David John Lesperance, Casey

13    Cusick and James Varnell Cusick Jr. with, No. 1, Entering and

14    Remaining in a Restricted Building or Grounds; No. 2,

15    Disorderly and Disruptive Conduct in a Restricted Building or

16    Grounds; No. 3, Disorderly Conduct in a Capitol Building; and

17    No. 4, Parading, Demonstrating, or Picketing in a Capitol

18    Building.  Each defendant denies these charges and has

19    accordingly pled not guilty to the charges.

20        Now for the questions, and there are forty-some questions.

21    I'll go through them one by one.  But again, if you have any

22    questions with respect to them or don't hear something, stick

23    your hand up in the air so we can go back over it.

24        No. 1.  As I said, I am Judge Bates, and I will be the

25    presiding judge in the case.  Assisting me are deputy clerks

1    Chashawn White and Nicole Hawkins, who you've already met, and

2    later in the week another deputy clerk, Kymberly Kay.  Bryan

3    Wayne is the court reporter who keeps a record of the

4    proceedings for me and for the litigants.  And one of my law

5    clerks is assigned to this case, and that is Jacob Van Leer.

6        Do you know any of these people?  If so, mark down No. 1 on

7    your card.

8        No. 2.  The United States is represented in this case by

9    attorneys -- and I'm going to ask them to stand -- Francesco

10   Valentini and Sonia Murphy.  They will be accompanied by

11   paralegals Tamica Meadows and Josephine Roberts.  And they all

12   work in the United States Attorney's Office here in

13   Washington, D.C.

14       Also at the table for the United States is FBI task force

15   officer Kris Miyasato.  Do you know or think you know or

16   recognize any of these individuals?  Thank you, you may be

17   seated, please.

18       The defendants are -- would you please stand when I call

19   out your name -- David John Lesperance, Casey Cusick, and

20   James Varnell Cusick Jr.  And the attorneys representing them

21   are John Pierce and Roger Roots.  They're assisted by

22   paralegals Emily Lambert and Jonathan Moseley.

23       Do you know any of the defendants or their attorneys or

24   other representatives?

25       Thank you.  You may all be seated again.  That was No. 3.

1    So if you know any of them, mark down No. 3 on your card.

2        No. 4.  The government will call a number of witnesses to

3    testify during the trial, and the defense may also call

4    witnesses but is not required to.  The government will now

5    read a list of the names of witnesses who you may hear from or

6    about during the trial.  Not all of these individuals will

7    necessarily testify as witnesses, but they're being introduced

8    to determine whether any of you know any of the prospective

9    witnesses in the case.  Mr. Valentini.

10        MR. VALENTINI:  Thank you, Your Honor, and good

11    morning.

12        The government may call United States Capitol Police

13    Captain Tia Summers, United States Secret Service Special

14    Agent Elizabeth Glavey, Metropolitan Police Department Officer

15    Christopher Cartwright, FBI Special Agent Robert "Blaine"

16    Pfannkuch, FBI Special Agent Walter Giardina, FBI Task Force

17    Officer Kris Miyasato, and FBI Task Force Officer Joshua

18    Strait.  Thank you.

19        THE COURT:  All right.  If you know any of those people

20    just announced, please mark down No. 4 on your card.

21        Defense counsel will now read a list of the names of

22    witnesses you may hear from or about during trial.  As with

23    the government's list, not all of these individuals will

24    necessarily testify as witnesses, but they're being introduced

25    to determine whether any of you know any of the prospective

1      witnesses in the case.  Mr. Pierce.

2          MR. PIERCE:  Yes, Your Honor.  In addition to the three

3      defendants who may testify, the witnesses who may testify are

4      Ruth Cusick, Stacie Cusick, Katie Cusick, Carol Lesperance and

5      David Sumrall.

6          THE COURT:  Thank you.  If you know any of those

7      individuals, please mark down No. 5 on your card.

8          No. 6.  Do you know any other member of the jury panel or

9      any other person in the courtroom?  I don't mean people you've

10     met this morning, but anyone you might know from your

11     neighborhood, from school, church, work, whatever.  If so,

12     please indicate that by marking down No. 6 on your card.

13         No. 7.  Mr. Lesperance, Mr. Casey Cusick, and Mr. James

14     Cusick, like all defendants, are presumed innocent unless and

15     until the government proves their guilt beyond a reasonable

16     doubt.  This presumption continues throughout the trial.

17     Would you have any difficulty following this requirement of

18     the law?  If so, mark down No. 7.

19         Question No. 8.  The burden of proof in a criminal case is

20     on the government.  The defendants in this case do not need to

21     produce any evidence whatsoever to prove that they are

22     innocent of these charges.  The law does not require that any

23     defendant offer any evidence or take the stand and testify on

24     his own behalf because the burden is on the government.

25         If you are selected, will you have any difficulty applying

1    this rule of law?

2        No. 9.  If, after you've heard all the evidence, you find

3    that the government has proven beyond a reasonable doubt every

4    element of an offense charged against one of the defendants,

5    it is your duty to find that defendant guilty.  On the other

6    hand, if you find that the government has failed to prove any

7    element of the offense beyond a reasonable doubt, you must

8    find that defendant not guilty.  Would you be reluctant or

9    unable to carry out this duty?

10       No. 10.  Have you, a family member, or close friend ever

11   studied law or had any legal training, including paralegal

12   training?

13       No. 11.  Have you, a family member, or a close friend ever

14   been involved as a lawyer or otherwise in the prosecution or

15   defense of a criminal case?

16       No. 12.  Have you ever previously served on a grand jury?

17       No. 13.  Have you ever previously served on a jury in a

18   civil or criminal trial in either state or federal court?

19       No. 14.  Have you formed specific opinions concerning

20   defense attorneys, prosecutors, law enforcement officers, or

21   accused persons that would affect you in deciding this case?

22       No. 15.  Have you or a close friend or family member

23   previously been called for jury service for a trial related to

24   the events of January 6, 2021, here in Washington at the

25   Capitol?

1       No. 16.  Have you, any member of your family or a close

2   friend ever worked in any capacity for the Capitol Police, the

3   Metropolitan Police Department, or the Secret Service?

4       No. 17.  Have you, a family member or close friend ever

5   worked in any capacity for any other type of law enforcement

6   agency?  This would include the U.S. Park Police, the Federal

7   Bureau of Investigation, the Department of Homeland Security,

8   Drug Enforcement Administration, Department of Justice, or any

9   other federal, state, or local law enforcement agency.

10      No. 18.  Have you ever filed a complaint against a police

11  officer or anyone in law enforcement?

12      No. 19.  Have you, a family member or a close friend had

13  any experiences with any law enforcement agency, the

14  government, or a court which would make it difficult for you

15  to be a fair and impartial juror in this case?

16      No. 20.  Do you believe that the testimony of a law

17  enforcement officer -- and this includes members of any law

18  enforcement agency -- is more or less likely to be truthful

19  simply because that witness is a law enforcement officer?

20      No. 21.  Have you, a family member or close friend ever

21  been the victim of, a witness to, arrested for, or charged

22  with a criminal offense?  Excluding traffic offenses.  You

23  don't need to consider those.  That was 21.

24      22.  A few moments ago you heard a brief summary about the

25  charges in this case.  That is that Mr. Lesperance, Mr. Casey

Cusick and Mr. James Cusick were involved in the events at the Capitol on January 6, 2021.

The specific offenses with which each defendant is charged are, No. 1, Entering or Remaining in a Restricted Building or Grounds; No. 2, Disorderly and Disruptive Conduct in a Restricted Building or Grounds; No. 3, Disorderly Conduct in a Capitol Building; and No. 4, Parading, Demonstrating, or Picketing in a Capitol Building.

Is there anything about the nature of those charges or any experience that you or a family member or close friend may have had that would affect your ability to be a fair and impartial juror in this case?  If there is, please write down No. 22 so we can discuss that.

Question 23.  During the course of this trial you will hear about events at the United States Capitol here in Washington, D.C.  Do you, a member of your family or a close friend live near, work near, or have any special familiarity with the immediate area of the United States Capitol?

Now No. 24.  Were you, any member of your family or a close friend present at the United States Capitol on January 6, 2021?

No. 25.  Did you watch live news coverage of the events at the U.S. Capitol on January 6, 2021, or have you since watched videos or news coverage of what happened on that day?

No. 26.  Have you, any family member or close friend been

employed by or have any association with the House of
Representatives select committee to investigate the January 6,
2021, events at the United States Capitol?

No. 27.  Have you watched TV coverage or videos of any
congressional hearing related to the events of January 6,
2021?

No. 28.  Do you have such strong feelings or opinions about
the events that took place at the U.S. Capitol on January 6
that it would be difficult for you to serve as a fair and
impartial juror in this case?

29.  Do you have such strong feelings or opinions about
people who believe the 2020 presidential election was stolen
that it would be difficult for you to serve as a fair and
impartial juror in this case?

No. 30.  You are to decide this case based solely on the
evidence presented in court and not based on anything you may
have learned about it from outside sources, such as the news
or social media.  Would you have difficulty putting aside what
you may have already learned about the events of January 6 and
any opinions you may have already formed about people charged
with criminal conduct in relation to those events, when you
are considering the evidence in this case?  If so, write down
30, and we will discuss that up here at the bench.

31.  Have you ever watched video of any of these
defendants, Mr. Lesperance, Mr. Casey Cusick and Mr. James

Cusick Jr., related to January 6, 2021, on the news, on the internet, or in any other way?

32.  Have you read any articles regarding these defendants related to January 6, 2021 on the internet, in a newspaper, or on social media platforms?

Now No. 33.  Do you know of any reason why you may be prejudiced for or against the government, for or against any witness, or for or against the defendants because of the nature of the charges or otherwise?

34.  If you are selected as a juror in this case, I will instruct you to avoid, not seek out any media coverage about this case, the defendants, or any hearings held by the House Select Committee concerning events at the U.S. Capitol on January 6, 2021, including radio, television, podcasts, social media and the internet.  I will instruct you not to Google or search for information about any of the defendants.  Would you have any difficulty following this instruction from the Court?

Now 35.  Do you have any moral, social, political, philosophical, religious or any other beliefs that would interfere with your ability to assess the facts and return a fair and impartial verdict based solely on the evidence?

36.  In this case you may hear evidence that one of the defendants works as a pastor in a church.  Would the fact that a defendant works as a pastor at a church make it difficult for you to be a fair and impartial juror in this case?

37.  Do you believe the testimony of someone who works as a pastor at a church is more or less likely to be truthful simply because that witness is a pastor at a church?

38.  To reach a verdict on a particular charge, every juror must agree on the verdict.  That is, any verdict must be unanimous.  In deliberations you are to consider the opinions and points of your fellow jurors.  However, in the final analysis, you must follow your own conscience and be personally satisfied with any verdict in the case.  Would you have any difficulty expressing your own opinions and thoughts about this case to your fellow jurors?

39.  The law requires that the jurors weigh the evidence in a case and determine the guilt or innocence of each defendant solely upon the basis of the evidence, without any consideration of the matter of punishment and without prejudice, fear, sympathy, or favoritism.  Do you believe that you would have difficulty following this instruction?

No. 40.  Anyone who is selected to serve on the jury will take an oath to follow the law as instructed by the Court. Would you for any reason not be able to accept and follow the Court's instructions regarding the law?

41.  Are you currently caring for a relative or close friend who has been infected by or exposed to persons infected with COVID-19 such that it would be difficult for you to pay attention or otherwise to serve as a juror in this case?

42.  And we're almost done.  Do you have any vision, language, or hearing problems or any other physical or medical problems that might interfere with your ability to hear or understand what the witnesses say in this case, to view exhibits and photographs, or to give your full attention to the case?

43.  Are you presently taking any medication which might cause drowsiness or experiencing any other physical or mental conditions which might in any way affect your ability to give your full attention to the case?

44.  The presentation of evidence in this trial is expected to last approximately three to four days, maybe a little less, but three to four days on the outside.  But it could run shorter or longer, as I said.  The length of deliberations, of course, is determined by the jury itself.  The jury will generally sit from 9:30 a.m. until 5 p.m. each weekday.

Do you have an urgent matter to attend to during the next week, approximately, such that you could be faced with a severe hardship if selected for the jury in this case?

Now, I'm going to stress the words "severe hardship" and stress that what I'm looking for are emergencies or things that are scheduled that you can't change.  We all have responsibilities and appointments and things we need to tend to, but I'm looking for true emergencies that would make it so that you could not really serve as a juror over the next

1    approximately one week.

2        Last but not least, No. 45.  Do you know any other reason

3    not already discussed that might interfere with your ability

4    to arrive at a fair and impartial verdict, or which causes you

5    to feel that you cannot sit as a juror in this case?  And this

6    is also the final catch-all question that I mentioned.

7        All right.  So we know roughly how many jurors we need to

8    have -- it's 12 jurors plus two alternates -- plus the strikes

9    that counsel get to exercise.  So what I will do now is talk

10   to as many of you as I need to in order to make sure that I

11   have a sufficient number of jurors.  It may be that we will

12   not need to talk to everybody.  Indeed, I'm pretty confident

13   that we won't need to talk to all of you.

14       I'll be bringing you up one by one, or bringing you back

15   into the courtroom one by one.  If I do not need to talk to

16   you, in other words, if I have a sufficient pool to make a

17   selection of the jury, then we'll stop at that point.

18       Now, all of you are going to leave the courtroom and walk a

19   short distance next door to courtroom 29A.  My courtroom

20   deputy, Nicole Hawkins, will bring you back into the courtroom

21   one by one.  You'll come back with your card and we'll go over

22   the information that you listed, have a discussion with you

23   about it as necessary.

24       If you need to use the facilities, the court security

25   officers or the deputy clerks can direct you to them, but I

1    ask you to come back promptly, don't wait around in the hall

2    and don't leave the courthouse or even this floor of the

3    courthouse.  Sometimes people stand outside the courtroom or

4    down the hall and they start talking and it means that the

5    deputy clerk has to go out and find you.  So please come back

6    into courtroom 29A that you'll be going to promptly.

7        I would ask that you not speculate about the case.  If you

8    have information that you're going to be providing to me from

9    the questions that have been asked, please don't discuss it

10   with your fellow jurors so that you don't tell them something

11   that may excuse you and then could wind up having to excuse

12   them as well.

13       You can talk among yourselves, get to know your fellow

14   jurors.  This is a good opportunity to do this.  We have a

15   nice cross-section of the community, and you're certainly able

16   to talk among yourselves.  There's no problem with that.  If

17   you do get up, look at whoever's on either side of you and

18   where you are.  We put you in order according to the list so

19   we know who you are, and please go back to the same seat that

20   you were in.  That way we will not take you out of order.

21       If you run into anyone associated with the case, please do

22   not stop to talk to them about anything.  If you're seen

23   talking to them, I will need to make an inquiry to make sure

24   that you're not talking about the case.  You're not allowed to

25   talk about the case.  That includes the attorneys as well.

1     Please do not talk to them.  Again, if you're seen talking to

2     them, even if you're not talking about the case, I would still

3     need to make an inquiry, and that just takes a lot of extra

4     time.

5         We want you to come here without getting additional

6     information from anyone else.  If you're chosen as a juror

7     you'll be making your decision based solely on the evidence

8     that's going to be presented to you here in this courtroom.

9         With that, Ms. Hawkins and Ms. White, if you would escort

10    the jury over to courtroom 29A, and then we'll bring you in

11    one by one to complete this voir dire process.  Thank you for

12    your patience and attention.

13        (Jury pool out at 10:45 a.m.)

14            THE COURT:  Mr. Pierce?

15            MR. PIERCE:  Yes, Your Honor.  I was kind of looking at

16    the list of folks here and their occupations and I was hoping

17    perhaps we could save a bit of time or save these folks some

18    time.  In prior cases when there have been DOJ employees or

19    attorneys, there's been a stipulation from the government to

20    just let them go.  It looks like there are three on this list.

21            THE COURT:  Go ahead and identify them, not by their

22    names but by their -- where they appear on the first sheet and

23    the number on the right-hand side is the easiest way to do it.

24            MR. PIERCE:  Yes, Your Honor.  So one is No. 11, which

25    is 2174.  That's ██████████.  It appears she's an associate

1    director of the DOJ.  So that's one of them.

2          THE COURT:  Yeah, I don't know what office in the

3    DOJ, but if the government -- this is a request to just

4    agree to strike that witness based on what Mr. Pierce feels

5    is the likelihood that that witness will be stricken.  If

6    the government agrees to that, we'll strike that juror now.

7    Otherwise, we won't.  It's not going to save much time since

8    there are only three.

9          MR. VALENTINI:  Yes, Your Honor.  We have no objection

10   to the extent that that approach is limited to employees at

11   the Department of Justice as opposed to other agencies.

12         THE COURT:  All right.  So that will be 2174.  Who

13   else, Mr. Pierce?

14         MR. PIERCE:  Yes, Your Honor.  The other one would

15   be -- two others would be -- her jury number is 0290.  I'm

16   trying to find her on the front list.

17         THE COURT:  It's an attorney with the U.S. -- 0290.

18   That's near the bottom of the second page of the full listings

19   of the jurors, and it's Juror No. -- on the list, No. 32.

20         MR. PIERCE:  Yes, Your Honor.

21         THE COURT:  Agreement there?

22         MR. VALENTINI:  No objection.

23         MR. PIERCE:  And then the final one I did find on the

24   front list, No. 37, a few below her, ███████████████.

25         THE COURT:  Please don't state the name.

1          MR. PIERCE:  I'm sorry, Your Honor.  Juror No. 0627.

2     Looks like she works in the executive office of the U.S.

3     Attorney.

4          THE COURT:  Agreement there as well?

5          MR. VALENTINI:  No objection.

6          THE COURT:  All right.  We'll excuse those at the first

7     break.  And that's jurors 0290, 0627, and then 2174.

8        All right.  With that, let's bring in the first of the

9     other jurors.

10        (Juror 2015 steps up.)

11          THE COURT:  This is juror 2015.  This juror's answered

12     yes to question No. 25.  That question is whether you watched

13     live news coverage of the events.  On the day did you watch it

14     on television a little bit?

15          PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Do you think that that would affect your

17     ability to be a fair and impartial juror if you were selected

18     as a juror here?

19        Do you think that watching it on TV would affect your

20     ability to be a fair and impartial juror?

21          PROSPECTIVE JUROR:  No.

22          THE COURT:  All right.  This juror has not answered yes

23     to any other questions.  Are there any questions from counsel?

24          MR. VALENTINI:  Good morning.

25          PROSPECTIVE JUROR:  Good morning.

1          MR. VALENTINI:  My name is Francesco Valentini.  I'm

2     one of the prosecutors in this case.  I just had one brief

3     question.  Could you confirm for us what you do for a living?

4          PROSPECTIVE JUROR:  I'm a teacher assistant with D.C.

5     Public Schools.

6          MR. VALENTINI:  Thank you very much.  No further

7     questions.

8          THE COURT:  Any questions from the defense?

9          MR. PIERCE:  No questions, Your Honor.  Thank you.

10          THE COURT:  All right.  Thank you very much.  You may

11     step down.

12       (Juror 2015 steps down.  Juror 0272 steps up.)

13          THE COURT:  Good morning.

14          PROSPECTIVE JUROR:  Good morning.

15          THE COURT:  Please have a seat.

16       This is juror 0272.  Let's start with question No. 43.  Are

17     you taking any medications that you think could interfere with

18     your ability to give full attention to the case?

19          PROSPECTIVE JUROR:  Yes.  I'm currently in fertility

20     treatment.  So sometimes the medications -- I have to use the

21     restroom frequently.

22          THE COURT:  So it's just using the restroom frequently?

23          PROSPECTIVE JUROR:  Yes, just using the restroom.

24          THE COURT:  I think we can manage that as long as

25     you're willing to give me a little signal if you need to take

1    a break.

2              PROSPECTIVE JUROR:  (Nods)

3              THE COURT:  All right.  Back to some other questions.

4    We'll start with No. 10.  You or someone close to you has

5    studied law or had legal training?

6              PROSPECTIVE JUROR:  Yes.  My father-in-law worked for

7    the EEOC.  He has now transitioned, so he's no longer with us.

8              THE COURT:  He was an attorney?

9              PROSPECTIVE JUROR:  An attorney, yes.

10             THE COURT:  And he worked for the agency, for EEOC?

11             PROSPECTIVE JUROR:  Yes.

12             THE COURT:  For a long period of time?

13             PROSPECTIVE JUROR:  About 15 years.

14             THE COURT:  Did he do litigation in court?

15             PROSPECTIVE JUROR:  Yes.

16             THE COURT:  And it was generally representing the

17   government in pursuing discrimination cases?

18             PROSPECTIVE JUROR:  Yes.

19             THE COURT:  No criminal work?

20             PROSPECTIVE JUROR:  No.

21             THE COURT:  You have served on a grand jury?

22             PROSPECTIVE JUROR:  Yes.

23             THE COURT:  How long ago?

24             PROSPECTIVE JUROR:  Six years, seven years?

25             THE COURT:  Was it in this court or in Superior Court

1     across the street?

2            PROSPECTIVE JUROR:  It was actually in Maryland.

3            THE COURT:  In Maryland.

4            PROSPECTIVE JUROR:  Yes, sir.

5            THE COURT:  And you understand that the role of a juror

6     in the grand jury is different than the role in the trial

7     court.

8            PROSPECTIVE JUROR:  Yes.

9            THE COURT:  All right.  No. 17.  You or someone close

10    to you has worked for a law enforcement agency?

11           PROSPECTIVE JUROR:  My uncle worked for Park Police for

12    the National Zoo.  But he has also transitioned.

13           THE COURT:  Okay.  No. 25.  You did watch the events of

14    January 6 on TV as they were occurring?

15           PROSPECTIVE JUROR:  Yes.

16           THE COURT:  Do you think that having seen them, now

17    more than two years ago, that that would make it difficult for

18    you to be a fair and impartial juror if selected in this case?

19           PROSPECTIVE JUROR:  No, sir.

20           THE COURT:  And with that, are there any follow-up

21    questions for this juror?

22           MR. VALENTINI:  Not for the government, Your Honor.

23           MR. PIERCE:  Good morning, ma'am.

24           PROSPECTIVE JUROR:  Good morning.

25           MR. PIERCE:  Just a few quick questions.  Do you feel

1    that in light of the fact that it sounds like you had a -- I

2    think your father worked for the EEOC, you mentioned.

3         PROSPECTIVE JUROR:  My father-in-law, yes.

4         MR. PIERCE:  Father-in-law.  It looks like from your

5    occupation you work for the National Institutes of Health.  Is

6    that right?

7         PROSPECTIVE JUROR:  Yes.

8         MR. PIERCE:  And you had a relative work for the Park

9    Police, an uncle?

10        PROSPECTIVE JUROR:  I'm sorry.  I didn't hear that.

11        MR. PIERCE:  An uncle worked for the Park Police?

12        PROSPECTIVE JUROR:  Yes.

13        MR. PIERCE:  So my question simply is do you think that

14   in light of those relationships, would you -- do you think you

15   would find the testimony of law enforcement officers or

16   federal officials, do you think that you would find their

17   testimony to be more credible simply because they have those

18   kind of occupations?

19        PROSPECTIVE JUROR:  No, sir.

20        MR. PIERCE:  Okay.  And then with respect to January 6

21   and seeing it on TV, did you have any kind of visceral

22   reaction one way or another when you were watching those

23   events?

24        PROSPECTIVE JUROR:  No, sir.

25        MR. PIERCE:  All right.  Thank you very much.

1          THE COURT:  All right.  Thank you very much.  You may

2     step down.  Appreciate it.

3          PROSPECTIVE JUROR:  Thank you.

4        (Juror 0272 steps down.  Juror 0063 steps up.)

5          THE COURT:  This is juror 0063.  We have a few

6     questions to go over.  No. 10, you or someone close to you has

7     studied law?

8          PROSPECTIVE JUROR:  Yes.  I have several close friends

9     who are currently lawyers in D.C.

10          THE COURT:  Any of them practice criminal law?

11          PROSPECTIVE JUROR:  No.

12          THE COURT:  All right.  No. 19.  We all, living in

13     D.C., have friends who are lawyers, of course.

14          PROSPECTIVE JUROR:  Right.

15          THE COURT:  19.  You or someone close to you has had

16     experiences with a law enforcement agency, the government or

17     the court, which might make it difficult for you to be fair

18     and impartial.

19          PROSPECTIVE JUROR:  Yes.  Is this the one that was

20     asking if someone's been charged with a crime?

21          THE COURT:  No.  It was a little more general, just

22     whether you or someone close to you has had any experiences

23     with law enforcement agencies, the government, or a court

24     which would make it difficult for you to be a fair and

25     impartial juror.

1          PROSPECTIVE JUROR:  Okay.  That may have been an

2     accident.

3          THE COURT:  Okay.  No. 18 was whether you've ever filed

4     a complaint against a police officer or anyone in law

5     enforcement.

6          PROSPECTIVE JUROR:  No.

7          THE COURT:  We'll move on.  No. 21.  Have you or

8     someone close to you ever been the victim of or a witness to

9     or arrested for or charged with a criminal offense.

10         PROSPECTIVE JUROR:  Yes.  I have a cousin who was.

11         THE COURT:  A close cousin or just a relative among 37

12    cousins?

13         PROSPECTIVE JUROR:  Yeah.  I wouldn't say close.

14         THE COURT:  And what kind of charge?

15         PROSPECTIVE JUROR:  Murder.

16         THE COURT:  All right.  Is there anything about the way

17    that matter was handled that would make it -- that leaves you

18    with some bad taste about law enforcement, about the court

19    system, or anything that would make it difficult for you to be

20    fair and impartial as a juror in this case?

21         PROSPECTIVE JUROR:  No.

22         THE COURT:  No. 22.  You indicated that the nature of

23    the charges might affect your ability to be a fair and

24    impartial juror.  Give me a little bit of an explanation

25    there.

1      PROSPECTIVE JUROR:  I think that was more so related to
2  the people that I knew were in the Capitol on January 6.
3      THE COURT:  When you say "in the Capitol," do you mean
4  engaged in particular kinds of activities or just went into
5  the Capitol?
6      PROSPECTIVE JUROR:  Like working in the Capitol
7  building.
8      THE COURT:  Working in the Capitol.
9      PROSPECTIVE JUROR:  Yes.
10      THE COURT:  All right.  So let me repeat that question
11  in a little more manageable sense.  The charges against these
12  three defendants involve activities in or around the Capitol
13  on January 6, and we read off those charges.  What I need to
14  know is whether just the nature of those charges against these
15  individuals would make it difficult for you to be fair and
16  impartial in deciding the case as a juror with respect to
17  these individuals.
18      PROSPECTIVE JUROR:  Not the nature of the charges.
19      THE COURT:  All right.  Now, just the way you say that,
20  what might make it difficult for you to be fair and impartial?
21      PROSPECTIVE JUROR:  I think later on in the questions
22  asking more about do I have strong opinions about the
23  activities.
24      THE COURT:  We'll get to that, then.
25      PROSPECTIVE JUROR:  Yeah.

1          THE COURT:  Do you work near or have any special

2     familiarity with the Capitol?

3          PROSPECTIVE JUROR:  I live in Navy Yard, but I don't

4     work near the Capitol.

5          THE COURT:  And 24.  You or someone close to you was

6     present at the Capitol?

7          PROSPECTIVE JUROR:  Yes.

8          THE COURT:  And who was that?

9          PROSPECTIVE JUROR:  It's a close friend.

10          THE COURT:  A staffer?

11          PROSPECTIVE JUROR:  A *New York Times* reporter whose

12     office is in the Capitol building.

13          THE COURT:  Have you had discussions with that

14     individual about what he or she observed on that day?

15          PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Do you think those discussions would make

17     it difficult for you to set that aside and decide this case

18     based on the evidence that you hear in the courtroom?

19          PROSPECTIVE JUROR:  Yes.

20          THE COURT:  Why would that be more difficult than just

21     having viewed yourself the events on television on January 6?

22     Why would it be more difficult to set aside your discussions

23     with this friend who's a reporter?

24          PROSPECTIVE JUROR:  I think because it's a trusted

25     friend, I trust the firsthand account from him versus through

1    the lens of the media or reporters or interviewees that I

2    don't know personally.

3        THE COURT:  And you would trust that to the extent that

4    if you viewed the evidence in this case and it was

5    inconsistent with what your friend may have told you, you

6    would tend not to believe the evidence in the case and instead

7    trust what your friend had told you?

8        PROSPECTIVE JUROR:  Not necessarily, but I would

9    probably question it more than I otherwise would.

10        THE COURT:  All right.  And you did watch the

11    television coverage live as it was occurring?

12        PROSPECTIVE JUROR:  Yes.

13        THE COURT:  And you do have strong feelings about the

14    events on January 6.

15        PROSPECTIVE JUROR:  Yes.

16        THE COURT:  In a nutshell, give me those feelings.

17        PROSPECTIVE JUROR:  I feel negatively about the

18    activities that happened and the people that were involved

19    with them.

20        THE COURT:  Would you have difficulty setting aside

21    that negative feeling in deciding this case if you were

22    selected as a juror based on the evidence fairly and

23    impartially?

24        PROSPECTIVE JUROR:  I would find it difficult, but I

25    would try.

1          THE COURT:  You would try.  Here's the question:

2     Between finding it difficult and trying, are you confident

3     that you would be able to set aside those views and decide the

4     case fairly and impartially based on the evidence in the

5     courtroom?

6          PROSPECTIVE JUROR:  No.

7          THE COURT:  All right.

8        Other questions for this juror?

9          MR. VALENTINI:  Good morning.  My name is Francesco

10    Valentini.  I'm one of the prosecutors in this case.  I have a

11    couple of follow-up questions.  You mentioned that you have a

12    close friend who worked at the Capitol, was at the Capitol on

13    January 6.

14         PROSPECTIVE JUROR:  Yes.

15         MR. VALENTI:  And you said that you've had some

16    conversations about what happened that day and what your

17    friend saw at the Capitol on January 6?

18         PROSPECTIVE JUROR:  Mm-hmm.

19         MR. VALENTINI:  If you are selected as a juror in this

20    case, I expect that Judge Bates will instruct you that in

21    deciding this case you will have to base your decision only on

22    the evidence that is presented to you during this trial.  And

23    if you hear that specific instruction, do you think you'll be

24    able to follow that instruction?

25         PROSPECTIVE JUROR:  As a human being who has biases, I

1    would find it difficult, but I would try to do so.

2        MR. VALENTINI:  Same question with respect to the

3    feelings that you expressed.  A lot of people have feelings

4    about January 6, understandably.  My question is, again, I

5    expect that if you are selected as a juror, Judge Bates will

6    instruct you that in deciding this case you have to base your

7    decision on the evidence presented in this case.  And so

8    hearing that instruction, would you be able to apply that

9    instruction to the best of your ability?

10        PROSPECTIVE JUROR:  Yes.

11        MR. VALENTINI:  I have just one more follow-up

12   question.  And I don't want to put the name of your employer

13   on the record, but I understand you put down at some point on

14   a questionnaire that you work as a program manager?

15        PROSPECTIVE JUROR:  Yes.

16        MR. VALENTINI:  Is that for a nonprofit entity?

17        PROSPECTIVE JUROR:  No.  It's for a tech company.

18        MR. VALENTINI:  Okay.  And just broadly speaking on the

19   record, what does the tech company do?

20        PROSPECTIVE JUROR:  It's education technology.

21        MR. VALENTINI:  And generally speaking who are the

22   clients or the customers of the company?

23        PROSPECTIVE JUROR:  Mostly university partners, some

24   enterprise partners too.  So online education.

25        MR. VALENTINI:  Thank you very much.

1          THE COURT:  Mr. Pierce?

2          MR. PIERCE:  Just a few questions.  Good morning,

3     ma'am.

4          PROSPECTIVE JUROR:  Good morning.

5          MR. PIERCE:  Picking up on your job and the clients of

6     the entity you work for, are any of those government entities

7     that you're aware of?

8          PROSPECTIVE JUROR:  No.  They're all private companies.

9          MR. PIERCE:  You also mentioned you have friends that

10    are lawyers.  No surprise in D.C.  Do you know if any of those

11    lawyers are government lawyers?

12         PROSPECTIVE JUROR:  I have one who works as a

13    prosecutor for the U.S. district attorney's office.

14         MR. PIERCE:  Okay.  And then you mentioned at a certain

15    point there was an issue about folks that went in the Capitol

16    or were in the Capitol.  When you mentioned that, you were

17    referring to your friend in the *New York Times* who was in the

18    Capitol?

19         PROSPECTIVE JUROR:  On -- yes.  And another friend who

20    typically works in the Capitol but was not there on that day.

21    So people who work in the building, yes.

22         MR. PIERCE:  And I know you've talked about the

23    discussions you had with the *New York Times* friend.  Did you

24    also have discussions with this other friend about what

25    happened that day?

1            PROSPECTIVE JUROR:  Yes.

2            MR. PIERCE:  With respect to the *New York Times* friend,

3       could you -- you know, you don't have to go through every

4       detail but could you summarize the nature of what was

5       discussed with respect to January 6?

6            PROSPECTIVE JUROR:  Just generally the fear around what

7       was happening and the confusion and his evacuation from the

8       building.

9            MR. PIERCE:  Okay.  And with respect to the other

10      friend that you mentioned, same question, general nature of

11      those discussions.

12           PROSPECTIVE JUROR:  Yes.  She was not in the building,

13      though, so it was more generally speaking about the events,

14      not her direct presence there.

15           MR. PIERCE:  And like what was her view or what did she

16      share with you about January 6 generally speaking?

17           PROSPECTIVE JUROR:  She was very upset about it.

18           MR. PIERCE:  Okay.  And in light of some of the very

19      forthright answers that you've given here today, if you -- try

20      to ask this in a nonconfusing way -- if you were sitting in

21      the defendants' shoes, would you feel comfortable having

22      yourself on the jury in light of your feelings?

23           THE COURT:  I'm not sure I'm going to allow that

24      question.  I think it has the potential for making jurors a

25      little bit uncomfortable.

1          MR. PIERCE:  Understood.  Thank you very much.

2          PROSPECTIVE JUROR:  Thank you.

3          THE COURT:  All right.  Thank you very much.  You may

4     step down.

5          PROSPECTIVE JUROR:  Thank you.

6       (Juror 0063 steps down.)

7          MR. PIERCE:  Your Honor, we would move to strike for

8     cause.  She indicated she had very sort of negative feelings

9     about what happened on January 6 and --

10         THE COURT:  Let's hear what the government has to say.

11         MR. VALENTINI:  Your Honor, the juror was forthright in

12    her answers and she expressed feelings about what happened on

13    January 6.  That is not uncommon.  That was of course a

14    disturbing event.  I think her answers to the follow-up

15    questions about her ability to set those aside and follow

16    instructions seemed generally to alleviate any concern about

17    any feelings that she may have brought to court today.

18       The question is whether a juror will be able to set aside

19    those feelings in the jury room, if selected, and based on the

20    instructions the Court is going to give to these jurors, we

21    think that while some answers did suggest that this potential

22    juror had some feelings going into the jury selection process,

23    she'll be able to put them aside.  Thank you.

24         THE COURT:  All right.  I'm going to strike her for

25    cause.  She crossed the line -- and I'm not saying this in a

1    negative way -- when she said she was not confident she could

2    set those feelings aside.  And if you're not confident that

3    you can, then I'm going to strike you for cause.

4       Next juror, please.

5       (Juror 1857 steps up.)

6       THE COURT:  This is juror 1857, and she's answered yes

7    to a few questions.  We'll start with No. 10, and that is

8    legal training.  For you or someone close to you?

9       PROSPECTIVE JUROR:  Yeah.  I just said yes because I

10   know a lot of lawyers as friends.

11      THE COURT:  Are any of the lawyers that you know who

12   are either relatives or close friends practicing criminal law?

13      PROSPECTIVE JUROR:  Don't know that for sure.

14      THE COURT:  Have any of them, to your knowledge, from

15   discussions you've had with them, been involved in any of the

16   events regarding the January 6 matters on the Capitol?

17      PROSPECTIVE JUROR:  No.  Not that I know of.

18      THE COURT:  You've served on a grand jury previously?

19      PROSPECTIVE JUROR:  D.C.  Yeah.

20      THE COURT:  D.C. Superior Court.

21      PROSPECTIVE JUROR:  I guess that's what it is.

22      THE COURT:  Across the street.

23      PROSPECTIVE JUROR:  Yeah.  The one where it's two

24   months long and you go every day.

25      THE COURT:  You understand that the role of a juror and

1    the standard that the juror is applying is different there in

2    the grand jury than it is as a trial juror.

3            PROSPECTIVE JUROR:  Yes.

4            THE COURT:  No. 17, you or someone close to you has

5    worked for law enforcement?

6            PROSPECTIVE JUROR:  That's not what I remember 17

7    being.  Sorry.

8            THE COURT:  Have you or a family member or close friend

9    ever worked in any capacity for any other type of law

10    enforcement agency, Department of Justice, Homeland

11    Security --

12            PROSPECTIVE JUROR:  Oh, FBI.  That's when you said FBI.

13    Yes.  I have friends who have worked at the FBI, yes.

14            THE COURT:  Any of those friends involved in the

15    January 6 matters?

16            PROSPECTIVE JUROR:  No.

17            THE COURT:  Discuss with you views on criminal law

18    enforcement?

19            PROSPECTIVE JUROR:  No.

20            THE COURT:  No. 22.  The charges in this case or the

21    nature of the charges in this case make it difficult for you

22    to be a fair and impartial juror?

23            PROSPECTIVE JUROR:  I live less than a mile from the

24    Capitol, so I was there at my house during that time.  Yes, it

25    was very unnerving.

1          THE COURT:  All right.  Now, this is probably going to

2     affect some of the other questions you answered yes to, but

3     I'll ask you this question:  You have some feelings.  You live

4     fairly close by, so potentially were impacted.  The question

5     is whether can you set aside those feelings, and if selected

6     as a juror, decide the case based solely on the evidence you

7     hear in the courtroom fairly and impartially.

8          PROSPECTIVE JUROR:  I mean, I would try to do that,

9     yes, if I was selected.

10          THE COURT:  We would all like to believe we can do

11     that.  What I want to ask you is whether you have a sufficient

12     degree of confidence that not only would you try but that you

13     could succeed in setting aside those feelings and decide the

14     case based on the evidence you hear in the courtroom fairly

15     and impartially.  Because that's what the defendants are

16     entitled to.

17          PROSPECTIVE JUROR:  Right, yes, yes.  Totally.  I think

18     it would be difficult.

19          THE COURT:  All right.  That's still not quite

20     answering my question.

21          PROSPECTIVE JUROR:  Sorry.  You want a yes or a no.

22          THE COURT:  No, I don't need a yes or a no absolute.

23     I'm searching for a yes or no to whether you have sufficient

24     confidence that even though it's difficult, you would be able

25     to set aside those feelings and decide the case fairly and

1    impartially based on the evidence.

2              PROSPECTIVE JUROR:  Yes.  I could set aside my feelings

3    for things.  Yes.

4              THE COURT:  All right.  So some of these other

5    questions are going to affect that same thing.  You watched

6    live coverage.

7              PROSPECTIVE JUROR:  Yes.

8              THE COURT:  And that impacted you, obviously.

9              PROSPECTIVE JUROR:  Yes.

10             THE COURT:  And you have seen some of the congressional

11   hearings.

12             PROSPECTIVE JUROR:  Yes, I have.  I watched them.

13             THE COURT:  Closely?

14             PROSPECTIVE JUROR:  The ones that I could, yes.

15             THE COURT:  Now, having watched that, and sometimes

16   during those proceedings there is quote-unquote evidence

17   presented.  Would you be able to set aside anything you saw

18   there and decide this case just based on what you see here, in

19   other words, the evidence presented in this courtroom?

20   Because there are lots of things that happened on January 6

21   that don't involve these three individuals.

22             PROSPECTIVE JUROR:  Correct.  Yes.

23             THE COURT:  And they will be tried based on their

24   conduct.

25             PROSPECTIVE JUROR:  Right.

1          THE COURT:  Not on the conduct of other people, even

2    though it's at the same place at the same time.

3          PROSPECTIVE JUROR:  Yes.  Yes.

4      Yes, I could listen to that and not listen to what it was

5    before.

6          THE COURT:  And you've already indicated you have

7    strong feelings.  You also have strong feelings about people

8    who believe that the 2020 presidential election was stolen.

9          PROSPECTIVE JUROR:  Yes.

10         THE COURT:  But again, I'll ask you, could you set that

11   aside -- I don't know that you'll hear any evidence on that in

12   this case, but you may.  Could you set aside your feelings

13   about people who believe that the 2020 presidential election

14   was stolen and instead decide this case based solely on the

15   evidence that you hear in the courtroom, and do so fairly and

16   impartially?

17         PROSPECTIVE JUROR:  I don't know that I have confidence

18   in myself to do that.

19         THE COURT:  So you think if, for example -- I'm not

20   saying this is true, but just for example, if one of the

21   defendants in the case did express the view during examination

22   that she believed that the 2020 presidential election was

23   stolen, you would not be able to set aside your disagreement

24   with that and decide the case -- it didn't really have --

25   doesn't really turn on that belief, but that may be relevant

1   evidence.  You would not be able to set aside your feelings on

2   that?

3           PROSPECTIVE JUROR:  Okay.  Yeah.  I guess we're all

4   entitled to our beliefs, so yeah, I would be able to listen

5   impartially and hear what the evidence has to say.

6           THE COURT:  Okay.  I think I've covered it, so

7   questions from the government.

8           MR. VALENTINI:  No questions from the government.

9           THE COURT:  From defense.

10          MR. PIERCE:  Yes, Your Honor.  Thank you very much.

11  Good morning, ma'am.

12          PROSPECTIVE JUROR:  Good morning.

13          MR. PIERCE:  With respect to your occupation, you list

14  an entity, I believe it's called D.C. access.

15          PROSPECTIVE JUROR:  Yes.

16          MR. PIERCE:  Could you tell us what that is?

17          PROSPECTIVE JUROR:  We're a small business on Capitol

18  Hill.  We're an internet provider.

19          MR. PIERCE:  Does that provide services to the

20  government if you're aware?

21          PROSPECTIVE JUROR:  No.  No.  Small business and

22  residential internet.

23          MR. PIERCE:  And you mentioned you had some friends in

24  the FBI?  Approximately, like, how many?  A few?

25          PROSPECTIVE JUROR:  A few, yeah.  And some of them are

1    retired now, so.

2        MR. PIERCE:  Okay.  Do you think that you would take

3    the testimony of an FBI agent as more credible than another

4    witness based on your friendship with them?

5        PROSPECTIVE JUROR:  No.

6        MR. PIERCE:  Okay.  Now, you mentioned that you were --

7    I believe you said unnerved, I think is the word you used --

8    on January 6.

9        PROSPECTIVE JUROR:  Yes.

10       MR. PIERCE:  Because you live near there?

11       PROSPECTIVE JUROR:  I do live near there, yes.

12       MR. PIERCE:  And you were there in your residence that

13   day?

14       PROSPECTIVE JUROR:  In my residence, yes.

15       MR. PIERCE:  What were your exact feelings that day?

16       PROSPECTIVE JUROR:  I felt like perhaps people who were

17   at the Capitol might decide to come into the neighborhood and

18   do other harm to those of us who were at home.

19       MR. PIERCE:  Okay.  And you said you watched some of

20   the January 6 committee hearings?

21       PROSPECTIVE JUROR:  Yes.

22       THE COURT:  What conclusions, if any, did you reach

23   based on watching those about people who went inside the

24   Capitol?

25       PROSPECTIVE JUROR:  I don't know that I reached any

1    conclusions.  I was listening to it more for what was going

2    on, I guess, for the facts there of what they were talking

3    about.  Yeah.  I'm not sure.  Sorry.

4         MR. PIERCE:  Okay.  And with respect to folks who think

5    that the election was stolen or that there were, you know,

6    sort of massive fraud issues with the 2020 election, what are

7    your views of those folks or that viewpoint?

8         PROSPECTIVE JUROR:  I mean, I think we have a system

9    that works for us and we have to follow it, and when it

10   doesn't come out your way, maybe that -- that doesn't mean

11   that something went wrong.  It might just mean that it didn't

12   come out your way.  So, yeah, I think it's -- I don't agree

13   with that viewpoint.

14        MR. PIERCE:  No further questions, Your Honor.

15        THE COURT:  All right.  Thank you very much.  You may

16   step down.

17        PROSPECTIVE JUROR:  Thank you.

18      (Juror 1857 steps down.)

19        THE COURT:  All right.  Anything before we bring in the

20   next juror?

21        MR. PIERCE:  Yes, Your Honor.  We would move to strike

22   her for cause.  I think an individual who was living there and

23   was fearful that the people that were inside the Capitol might

24   come and cause harm to her --

25        THE COURT:  People didn't come.

1          MR. PIERCE:  Understood.  She indicated that she, with

2     respect to people who thought the election was stolen, which

3     there definitely will be some evidence of that with respect to

4     these defendants in this case --

5          THE COURT:  Every juror that we have is going to

6     believe either the election wasn't stolen or the election was

7     stolen.  I can't be excluding every juror who has a belief one

8     side or the other, and I think we've explored with her whether

9     she could set aside her views and decide the case based on the

10    evidence that she hears in the courtroom.

11         MR. PIERCE:  She did say she did not have confidence

12    that she could be fair in that regard.

13         THE COURT:  I think ultimately she indicated a

14    sufficient level of confidence.  She is in my view another

15    close call but falls on the side of indicating a sufficient

16    level of confidence that she could set aside her views,

17    whether it be on the 2020 presidential election or on the

18    events on the Capitol on January 6, and decide the case based

19    on the evidence fairly and impartially.

20      So I will not strike her for cause.  And we'll do one more

21    juror before we take a break.

22      (Juror 1298 steps up.)

23         THE COURT:  This is juror 1298.  We will start with

24    question 44 and the question mark.

25         PROSPECTIVE JUROR:  On Saturday I have airline tickets

1    to get to San Francisco.  They were made a long time ago.  My

2    jury service was June 30 and July 14.  I figured I was okay.

3    It's my son's birthday on Sunday and we're supposed to have a

4    party with his fiancée.  So I don't know if that qualifies for

5    how you said it, but it would be an expense and I just thought

6    I'd tell you that.

7         THE COURT:  All right.  Anybody want to raise any

8    questions at this time?

9         MR. VALENTINI:  Not for the government.

10        MR. PIERCE:  Were there any other answers?

11        THE COURT:  There were, but I'm not planning on

12   addressing them.

13        MR. PIERCE:  No, Your Honor.

14        THE COURT:  All right.  Thank you.  You can step down.

15        PROSPECTIVE JUROR:  Okay.

16      (Juror 1298 steps down.)

17        THE COURT:  I think there's a good chance that we'll be

18   done by Saturday, but there's a possibility we won't.  And I

19   think if someone has prepurchased airline tickets for a

20   legitimate purpose, then we're going to go ahead and strike

21   them.

22      Let's go ahead and take our break.  Let's just take a

23   10-minute break and we'll resume in 10 minutes.  Thank you

24   all.

25      Oh, wait.  I think that we can probably -- well, we won't

1    excuse anyone including the -- well, yes, we will.  Because

2    we're going to get to one of the people that we initially

3    struck because of Department of Justice employment, and she's

4    going to be wondering why we jumped over her.  So let's go

5    ahead -- Chashawn, let's go ahead and excuse those three

6    jurors.  On the list they're numbers 11, 32, and 37.  Their

7    juror numbers are 2174, 290, and 627.

8              THE DEPUTY CLERK:  Yes, Your Honor.

9              THE COURT:  So you can go ahead and excuse them.

10             THE DEPUTY CLERK:  Okay.

11             THE COURT:  Thank you.  See you in 10 minutes.

12        (Recess from 11:30 a.m. to 11:47 a.m.)

13             THE COURT:  All right.  Let's bring in the next juror.

14        (Juror 0202 steps up.)

15             THE COURT:  If I could have your card.  Thank you very

16    much.  This is juror 0202.  She's answered yes to a couple of

17    questions, starting with legal training.  Is that you or

18    someone close to you or both?

19             PROSPECTIVE JUROR:  I'm a retired lawyer.

20             THE COURT:  Where did you practice?

21             PROSPECTIVE JUROR:  The Office of Attorney General for

22    the District.  I was in legal counsel division.

23             THE COURT:  Did you do any criminal work?

24             PROSPECTIVE JUROR:  No.

25             THE COURT:  Did you litigate cases in court?

1            PROSPECTIVE JUROR:  I did earlier in my career, I did
2       some civil.
3            THE COURT:  All right.  And No. 25, you saw the events
4       as they transpired on TV on January 6, 2021.
5            PROSPECTIVE JUROR:  I saw some of it.
6            THE COURT:  Would you say that you followed it closely
7       or more intermittently or sporadically?
8            PROSPECTIVE JUROR:  You mean the day that it happened?
9            THE COURT:  On the day it happened, yes.
10           PROSPECTIVE JUROR:  No, I just saw part of it.  I
11      didn't realize it was going on.  I did see part of it.
12           THE COURT:  And you also saw some of the congressional
13      hearings.
14           PROSPECTIVE JUROR:  Some of them.
15           THE COURT:  But you have not answered that you have
16      strong feelings that would prevent you from being a fair and
17      impartial juror.
18           PROSPECTIVE JUROR:  No.  As to the individuals, no.
19           THE COURT:  All right.
20         All right.  Questions for this juror.
21           MR. VALENTINI:  No questions from the government.
22           THE COURT:  Mr. Pierce?
23           MR. PIERCE:  Just a few.
24         Good morning, ma'am.
25           PROSPECTIVE JUROR:  Good morning.

1          MR. PIERCE:  Just to clarify, you said you worked in

2     the Attorney General's Office.

3          PROSPECTIVE JUROR:  They call it the office of attorney

4     general now.  It used to be corporation counsel.

5          MR. PIERCE:  So you're referring to D.C.

6          PROSPECTIVE JUROR:  D.C.

7          MR. PIERCE:  Okay.  And do you feel that, despite your

8     time working in that office, that you would be able to be fair

9     to criminal defendants regardless of --

10          PROSPECTIVE JUROR:  Yeah.  I didn't have any criminal

11     involvement in my work there.  At the end it was legal

12     counsel, but I did do some civil action in court but never any

13     criminal.

14          MR. PIERCE:  Okay.  Thank you very much.

15          THE COURT:  Thank you very much.  You may step down.

16          PROSPECTIVE JUROR:  Thank you.

17       (Juror 0202 steps down.  Juror 0086 steps up.)

18          THE COURT:  This is juror 0086.  He's answered yes to a

19     couple of questions.  We'll start with legal training.  Is

20     that you or someone close to you?

21          PROSPECTIVE JUROR:  Someone close to me.  I have a

22     sister who is in nonprofit law and a brother-in-law who is a

23     legal -- or a law professor.

24          THE COURT:  Do you know what your brother-in-law

25     teaches?

1          PROSPECTIVE JUROR:  Legal tech.

2          THE COURT:  Legal tech.  All right.

3      You've indicated in response to the questions that you have

4      formed specific opinions concerning defense attorneys,

5      prosecutors, law enforcement officers, or accused persons that

6      would affect you in deciding this case.

7          PROSPECTIVE JUROR:  I can't remember if that was the

8      one specifically to this, but I read extensively for work

9      about the January 6th events, as well as similar events in

10     other countries.  And I don't know how that may affect my

11     ability to think impartially about it.

12         THE COURT:  Tell us a little bit about -- when you say

13     you've read extensively for your work, tell us a little bit

14     about why, for your work, you have analyzed the events of

15     January 6.

16         PROSPECTIVE JUROR:  I do intelligence analysis in the

17     private sector, and I focus on global events but regularly

18     review reports for domestic events as well.  So, for instance,

19     if a client wants to have a conference somewhere, what are the

20     different threats that could face them, especially if the

21     client has said things in favor of a group or -- so reading

22     and thinking about white nationalism and other extremist

23     groups is sort of a regular thing for me.

24         THE COURT:  So -- and this relates to some of the other

25     questions that you may have answered yes to.

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  There are a lot of people, even outside of

3     their work, who have done a lot of thinking and reading about

4     the January 6th events.  You've done some, indeed perhaps even

5     a lot, relating not just to your personal interest or

6     interests regarding political issues of the country, but also

7     with respect to your work responsibilities.

8         The question ultimately is, based on all that assessment,

9     do you think that you would be able to set aside not only the

10     views that you might have come to but also the information

11     that you've studied and learned, and if selected as a juror

12     decide the case solely based on the evidence presented in the

13     courtroom, setting aside any preconceived views, and decide

14     the case fairly and impartially as a juror with respect to

15     these three individuals who are subject to these proceedings?

16        I know that was a long question, but I think you understand

17     it.

18          PROSPECTIVE JUROR:  Yes.  I -- I understand the

19     responsibility, and I -- while if selected I would certainly

20     commit to do that, I'm unsure about my formed opinions and how

21     I could -- how those may affect me.

22          THE COURT:  Because those opinions are not what I would

23     say is more casual for many people, but instead are opinions

24     that are based on very active and intense study of the

25     situation and factors that may be relevant to the situation on

1      January 6.

2              PROSPECTIVE JUROR:  Correct.

3              THE COURT:  All right.  There are other questions that

4      he's answered yes to.  Does the government feel we need to go

5      on to those other questions?

6              MR. VALENTINI:  No.  I don't think there's any need for

7      that.

8              THE COURT:  And the defense doesn't as well?

9              MR. PIERCE:  Correct, Your Honor.

10             THE COURT:  All right.  Thank you very much.  You may

11     step down.

12         (Juror 0086 steps down.)

13             THE COURT:  Do I have a request from either side to

14     strike juror 0086?

15             MR. PIERCE:  We would move to strike, Your Honor.

16             THE COURT:  Is there agreement from the government?

17             MR. VALENTINI:  There is no objection.

18             THE COURT:  Next juror, please.  We will strike juror

19     0086 for cause.

20         (Juror 0077 steps up.)

21             THE COURT:  This is juror 0077, and he's answered yes

22     to a few questions.  We'll start with legal training.  Is that

23     you or someone close to you?

24             PROSPECTIVE JUROR:  My undergrad degree had an

25     interdisciplinary program, legal affairs, in it.

1    Communications law --

2         THE COURT:  So you're not an attorney?

3         PROSPECTIVE JUROR:  No.

4         THE COURT:  But you have some legal educational

5    training.

6         PROSPECTIVE JUROR:  If you count undergraduate

7    coursework.

8         THE COURT:  Okay.  And you or someone close to you has

9    worked for a law enforcement agency?

10        PROSPECTIVE JUROR:  Yes.  I have a friend who is a

11   current active agent in the FBI.  I think he's stationed in

12   San Diego right now.  I have a friend who's in the Secret

13   Service in their financial crimes sector.

14        THE COURT:  Do you know if either of them have worked

15   on anything relating to the January 6 events?

16        PROSPECTIVE JUROR:  No.  No, sir.

17        THE COURT:  All right.  Does your acquaintance with

18   them, is it such that you think it would influence you as a

19   juror?

20        PROSPECTIVE JUROR:  I don't believe so.

21        THE COURT:  No. 25.  You followed the events on January

22   6 as they were occurring on TV?

23        PROSPECTIVE JUROR:  Yes.

24        THE COURT:  And No. 27.  You've also followed the

25   congressional hearings.

1          PROSPECTIVE JUROR:  I've seen coverage, yes.

2          THE COURT:  Are you confident that notwithstanding what

3     you've seen in that coverage, both of the hearings and of the

4     events of January 6, that you could set aside that and decide

5     this case if selected as a juror solely on the basis of the

6     evidence presented in the courtroom fairly and impartially?

7          PROSPECTIVE JUROR:  I believe so.

8          THE COURT:  All right.  Any questions for this juror?

9          MR. VALENTINI:  Good morning.  My name is Francesco

10    Valentini.  I'm one of the prosecutors in this case.  If I

11    could ask you very briefly, what do you do for a living?

12         PROSPECTIVE JUROR:  I work for the D.C. government,

13    particularly the Department of Buildings.  I do agency

14    performance management.

15         MR. VALENTINI:  What type of tasks do you carry out as

16    part of that in your work?

17         PROSPECTIVE JUROR:  So the fundamentals are all key

18    performance indicators, workload measures, strategic

19    initiatives and standard operating procedures for my agency.

20    I'm in charge of managing those, amongst other duties as

21    needed.  But that's the baseline, headline.

22         MR. VALENTINI:  How long have you been working there?

23         PROSPECTIVE JUROR:  I joined January of 2020.  We were

24    DCRA at the time and the agency has since split.  Now I'm

25    Department of Buildings as of October.

1          MR. VALENTINI:  Thank you very much.  I have no further

2     questions.

3          THE COURT:  Mr. Pierce.

4          MR. PIERCE:  Just very quickly.  Good morning, sir.

5       Just to confirm, so despite your -- I think you said you

6     have a friend in the FBI?

7          PROSPECTIVE JUROR:  A friend who's a current agent in

8     the FBI, yes.

9          MR. PIERCE:  And you work at the D.C. --

10         PROSPECTIVE JUROR:  D.C. government, Department of

11    Buildings.

12         MR. PIERCE:  And you feel you would be able to evaluate

13    the testimony of, let's say, FBI agents or police officers or

14    government employees the same as other witnesses despite that

15    relationship and your job?

16         PROSPECTIVE JUROR:  I believe so, yes.

17         MR. PIERCE:  Okay.  Thank you very much, sir.

18         THE COURT:  All right.  Thank you very much.  You may

19    step down.

20       (Juror 0077 steps down.  Juror 0363 steps up.)

21         THE COURT:  Good morning.  If I could have your card,

22    please.  Thank you.

23       This is juror 0363.  He's answered yes to a couple of

24    questions.  We'll start with you or someone close to you has

25    been involved in the prosecution or defense of a criminal

1        case?

2                PROSPECTIVE JUROR:  Yes.

3                THE COURT:  Tell us -- is that you or someone close to

4        you?

5                PROSPECTIVE JUROR:  Me.

6                THE COURT:  Tell us what that is.

7                PROSPECTIVE JUROR:  I've been called on a couple of

8        cases in district court as well as I'm also an expert witness

9        and I've been called in a lot of military courts around the

10       country for prosecution and defense.

11               THE COURT:  You're a doctor?

12               PROSPECTIVE JUROR:  Yes.

13               THE COURT:  And you're a professor at Howard

14       University?

15               PROSPECTIVE JUROR:  Yes, I am.

16               THE COURT:  Tell us a little bit about what your areas

17       of medical expertise are.

18               PROSPECTIVE JUROR:  Medical expertise is in the area of

19       pharmacology.  I'm a pharmacologist and neuropharmacologist is

20       what actually I do.  And most of the cases I've testified in

21       or have provided expert witness in is in the area of either

22       drug abuse or DUIs or information like that, for the most

23       part.  Any type of drug.  Toxicology is also the same thing,

24       is what I do.

25               THE COURT:  Have you been called as an expert witness

1    by the prosecution in a criminal case?

2              PROSPECTIVE JUROR:  Yes.  It was a military case in

3    Hawaii.

4              THE COURT:  Have you been called as an expert witness

5    by the defense in a criminal case?

6              PROSPECTIVE JUROR:  Yes.  Most of the time it's on the

7    defense.

8              THE COURT:  All right.  I'll leave that for any

9    follow-up questioning that counsel may have.  You've served on

10   a grand jury.

11             PROSPECTIVE JUROR:  Last year at this exact time.

12             THE COURT:  In Superior Court or in federal court?

13             PROSPECTIVE JUROR:  Superior Court.

14             THE COURT:  Anything about that experience that would

15   make it difficult for you to be a fair and impartial juror if

16   selected in this case?

17             PROSPECTIVE JUROR:  No.  Not really.

18             THE COURT:  You understand that the standard that is

19   being applied in the grand jury is different than the standard

20   in a trial jury.

21             PROSPECTIVE JUROR:  Yes.

22             THE COURT:  You've also served as a trial juror.

23             PROSPECTIVE JUROR:  Yes.

24             THE COURT:  How long ago was that?

25             PROSPECTIVE JUROR:  On a trial jury?

1          THE COURT:  Yes.

2          PROSPECTIVE JUROR:  That was before COVID.  Probably

3    2018, 2019.

4          THE COURT:  Only one time?

5          PROSPECTIVE JUROR:  No.  I've been on four other

6    trials.  Four in district court, Superior Court, and once in

7    federal court.

8          THE COURT:  I'm not going to cover each of them

9    individually, but let's cover two of them.  What was the most

10   recent time?  Was that in Superior Court or in federal court?

11         PROSPECTIVE JUROR:  Superior Court.

12         THE COURT:  And was it a criminal case or a civil case?

13         PROSPECTIVE JUROR:  Criminal case.

14         THE COURT:  What was the subject matter?  You don't

15   have to tell me the outcome, but what was the subject matter

16   of the case?  Murder, drugs?

17         PROSPECTIVE JUROR:  No.  This one was a rape case.

18         THE COURT:  And was the jury able to reach a verdict?

19         PROSPECTIVE JUROR:  Yes, it was.

20         THE COURT:  Anything about that experience that would

21   make it difficult for you to be fair and impartial if selected

22   here?

23         PROSPECTIVE JUROR:  No.

24         THE COURT:  And the federal case, how long ago was

25   that?

1    PROSPECTIVE JUROR:  That one's been a long time, and I
2    don't really remember that one.
3    THE COURT:  All right.  Was it in this courthouse?  Was
4    it in D.C.?
5    PROSPECTIVE JUROR:  Yes.  It was in D.C.  It was here.
6    It was in this courthouse.
7    THE COURT:  You don't remember the subject matter?
8    PROSPECTIVE JUROR:  No.  It's been too long ago.
9    THE COURT:  Was there anything about that experience
10    that you remember that would make it difficult for you to be
11    fair and impartial if selected as a juror?
12    PROSPECTIVE JUROR:  No.  Oh, I remember now.  That was
13    a civil case.  It was a civil case dealing with accounting and
14    accounting practices.  Now I remember it.
15    THE COURT:  Do you remember whether the jury reached a
16    verdict?
17    PROSPECTIVE JUROR:  I don't remember.
18    THE COURT:  Do you remember whether you've ever been on
19    a jury where the jury did not reach a verdict?
20    PROSPECTIVE JUROR:  No.  In all cases we all reached a
21    verdict.
22    THE COURT:  All right.  You followed the events of
23    January 6 on TV.
24    PROSPECTIVE JUROR:  Yes.
25    THE COURT:  Would you say closely or sporadically?

1    PROSPECTIVE JUROR:  It wasn't very close at all.  Just

2    what was on the news for the most part.  I didn't follow it, I

3    didn't Google it, I didn't go into any details in it.

4        THE COURT:  And if selected as a juror in this case,

5    would you be able to set aside any views that you may have

6    formed about the January 6 events and decide the case solely

7    based on the evidence presented in the courtroom as a fair and

8    impartial juror?

9        PROSPECTIVE JUROR:  Yes.

10        THE COURT:  All right.  Questions from counsel.

11        MR. VALENTINI:  Good morning.

12        PROSPECTIVE JUROR:  Good morning.

13        MR. VALENTI:  I'm Francesco Valentini.  I'm one of the

14    prosecutors in this case.  I just want to ask you a couple of

15    follow-up questions.  The first one has to do with your

16    experience testifying as an expert in court.  You mentioned

17    that you have testified in several other cases about

18    pharmacology?

19        PROSPECTIVE JUROR:  Yes.

20        MR. VALENTINI:  And I believe you said most of the

21    cases in which you testified, you testified for the defense?

22        PROSPECTIVE JUROR:  Most of them have been for the

23    defense.  I have testified for the prosecution as well.

24        MR. VALENTINI:  Okay.  And generally speaking, how does

25    it happen that you're contacted about a case?

1          PROSPECTIVE JUROR:  Say that again?

2          MR. VALENTINI:  In these cases in which you've

3     testified as an expert, you were retained by either the

4     prosecution or the defense.  Right?

5          PROSPECTIVE JUROR:  Yes.

6          MR. VALENTINI:  So how does it happen?  What is the

7     process whereby you are hired or retained as an expert?

8          PROSPECTIVE JUROR:  Primarily two ways.  One, I'm on a

9     list, particularly with the military courts when they need an

10    expert witness, particularly dealing anything with drugs or

11    toxicology.  And they'll call me from anywhere in the country.

12       On the other side, I'm also listed in the SEAK, S-E-A-K, as

13    an expert witness in pharmacology and toxicology.

14         MR. VALENTINI:  I'm sorry.  You used an acronym?

15         PROSPECTIVE JUROR:  It's called SEAK.  That's what

16    actually they call it.  S-E-A-K.  That's why I spelled it out.

17         MR. VALENTINI:  Do you know what it stands for?

18         PROSPECTIVE JUROR:  It doesn't stand for anything.

19    Just S-E-A-K, SEAK.

20         MR. VALENTINI:  Okay.  And let me ask you a couple

21    follow-up questions about your prior jury service.  You

22    mentioned you served in about 2018 in a criminal case in

23    Superior Court.  And that was a rape case?

24         PROSPECTIVE JUROR:  Yes.

25         MR. VALENTINI:  And you said before that the jury in

 1    that case was able to reach a verdict?

 2              PROSPECTIVE JUROR:  Yes.

 3              MR. VALENTI:  Do you remember the verdict was guilty or

 4    not guilty?

 5              THE COURT:  I don't usually do that.  We're just going

 6    to stick with whether the jury reached a verdict.

 7              MR. VALENTINI:  Did you serve on any other criminal

 8    cases that you said?

 9              PROSPECTIVE JUROR:  Yeah.  A couple other criminal

10    cases.  They were dealing -- it's been so long, I can't

11    remember the exact details, but the jury did -- they had a

12    final decision on it.

13              MR. VALENTINI:  In all cases?

14              PROSPECTIVE JUROR:  Yes.

15              MR. VALENTINI:  Thank you very much.

16              THE COURT:  Mr. Pierce?

17              MR. PIERCE:  I have no questions, Your Honor.  Thank

18    you, sir.

19              THE COURT:  Thank you, Doctor.  You may step down.

20              PROSPECTIVE JUROR:  Thank you.

21         (Juror 0363 steps down.  Juror 1192 steps up.)

22              THE COURT:  All right.  This is juror 1192.  Do I

23    understand from your card that you've only answered yes to one

24    question?

25              PROSPECTIVE JUROR:  Yes.

1           THE COURT:  Just No. 16.  And question 16 is whether

2     you or someone close to you has ever worked for the Capitol

3     Police, the Metropolitan Police, or the Secret Service.

4           PROSPECTIVE JUROR:  Yes.

5           THE COURT:  Have you?

6           PROSPECTIVE JUROR:  I do work within law enforcement

7     and I have family that work with the Metropolitan Police

8     Department.

9           THE COURT:  Let's start with you.  Have you actually

10    worked for law enforcement?

11          PROSPECTIVE JUROR:  Yes.

12          THE COURT:  For whom?  Which agency?

13          PROSPECTIVE JUROR:  I work with Metropolitan Police

14    Department as an evidence technician.

15          THE COURT:  Do you still work there?

16          PROSPECTIVE JUROR:  Yes.

17          THE COURT:  Okay.  Do you get called as a witness ever?

18          PROSPECTIVE JUROR:  No.

19          THE COURT:  So you just process evidence.

20          PROSPECTIVE JUROR:  Mm-hmm.

21          THE COURT:  In any number of different kinds of cases,

22    it could be a drug case, an assault case, could be a murder

23    case?

24          PROSPECTIVE JUROR:  Mm-hmm.

25          THE COURT:  I think everyone will wonder whether,

1       working for the Metropolitan Police Department, you would tend

2       to believe a police officer's testimony more likely just

3       because they're a police officer.  In other words, just

4       because a witness happens to be working in law enforcement,

5       would you give their testimony more credence?  Would you tend

6       to believe them because they're wearing the uniform?

7                   PROSPECTIVE JUROR:  Yes.

8                   THE COURT:  All right.

9           Follow-up questions?

10                  MR. VALENTINI:  Not from the government.

11                  THE COURT:  Mr. Pierce.

12                  MR. PIERCE:  No need at this point, Your Honor.

13                  THE COURT:  Thank you very much.  You may step down.

14                  PROSPECTIVE JUROR:  Thank you.

15          (Juror 1192 steps down.)

16                  THE COURT:  Is there a request to strike juror 1192 for

17      cause?

18                  MR. PIERCE:  Yes, Your Honor.

19                  THE COURT:  Any objection?

20                  MR. VALENTINI:  The government will not oppose.

21                  THE COURT:  All right.  We will strike juror 1192 for

22      cause.

23          Next juror, please.

24          (Juror 1737 steps up.)

25                  THE COURT:  This is juror 1737.  And we'll start with

1    legal training.  Is that you or someone close to you?

2         PROSPECTIVE JUROR:  Myself, my mother, and I have a

3    cousin who practices law in the state of Tennessee.

4         THE COURT:  All right.  Let's talk about yourself

5    first.  We always like to talk about ourselves first.  Are you

6    a lawyer?

7         PROSPECTIVE JUROR:  I've graduated law school, but I

8    don't practice.

9         THE COURT:  Have you ever practiced?

10        PROSPECTIVE JUROR:  No.

11        THE COURT:  And why don't you tell us what you've --

12   what you do currently in terms of your employment, and if it's

13   not something you've been doing for a long time, what you've

14   done previous to that.

15        PROSPECTIVE JUROR:  Previously I've been a creative in

16   tech, Apple.  I've done a number of things.

17        THE COURT:  I'm sorry.  I didn't understand.

18        PROSPECTIVE JUROR:  I've done a number of things, but

19   that's the most recent.

20        THE COURT:  Okay.  And you said that others close to

21   you have legal training.  Any of them -- any relatives who

22   practice law in the criminal law context?

23        PROSPECTIVE JUROR:  My cousin in the state of

24   Tennessee, he's actually done -- I know of at least one of

25   these cases.

1          THE COURT:  And do you discuss criminal law matters

2     with him frequently?

3          PROSPECTIVE JUROR:  I mean, just -- nothing in depth,

4     but I knew that he had a case, and I know the outcome of the

5     case.

6          THE COURT:  All right.  Switching to the events of

7     January 6.  You watched those on TV?

8          PROSPECTIVE JUROR:  Yes.

9          THE COURT:  And you watched some of the congressional

10    hearings as well?

11         PROSPECTIVE JUROR:  Yes.

12         THE COURT:  And with respect to any feelings that

13    you've formed regarding the events of January 6, my question

14    is whether you could set aside those feelings and anything

15    you've learned through watching on TV, and if selected as a

16    juror in this case, decide the case based on the evidence

17    presented in the courtroom as a fair and impartial juror.

18         PROSPECTIVE JUROR:  I think I could.  I've had

19    concerns.  I don't exactly believe the narrative that folks

20    were tourists in the Capitol, but aside from that, I think I

21    could objectively look at it.

22         THE COURT:  And you are confident that you would do

23    your best and would succeed in setting aside any preexisting

24    views you might have and decide the case based on the evidence

25    you heard in the courtroom?

 1          PROSPECTIVE JUROR:  Yes.

 2          THE COURT:  And with respect to the 2020 presidential

 3     election and the views of some that that election was stolen,

 4     you have some views on that as well, I take it.

 5          PROSPECTIVE JUROR:  Yes.

 6          THE COURT:  My question to you -- and your view is you

 7     disagree, I take it, with those who believe that the 2020

 8     presidential election was stolen.

 9          PROSPECTIVE JUROR:  Absolutely.

10          THE COURT:  Again my question is whether,

11     notwithstanding those beliefs, you could set aside those

12     views, listen to the evidence presented in the courtroom, and

13     based solely on that evidence, decide as a fair and impartial

14     juror whether these three individuals are guilty or not guilty

15     of the offenses they are charged with.

16          PROSPECTIVE JUROR:  I believe so.

17          THE COURT:  Questions from the government?

18          MR. VALENTINI:  No questions from the government.

19          THE COURT:  From the defense?

20          MR. PIERCE:  Just a few, Your Honor.

21       Good afternoon, sir.  I think I just probably didn't catch

22     this when you were saying it, but you mentioned a cousin in

23     Tennessee who's a lawyer.

24          PROSPECTIVE JUROR:  Yes.

25          THE COURT:  Did you say he was involved in -- I thought

1    you said "one of these cases."

2         PROSPECTIVE JUROR:  A January 6 case I know of.  I

3    don't know of any others, just one.  And we didn't discuss

4    anything at length.  I just knew he was involved in one.  And

5    I know the outcome of it.

6         MR. PIERCE:  Do you know if he was on the prosecution

7    or the defense side?

8         PROSPECTIVE JUROR:  Defense.

9         MR. PIERCE:  Okay.  And then you mentioned a narrative

10    about folks being tourists in the Capitol.

11         PROSPECTIVE JUROR:  Right.

12         MR. PIERCE:  And what I took your answers to mean was

13    that you're aware that there is some narrative out there that

14    there were some people who were at the Capitol, inside the

15    Capitol, who were simply there as tourists, and what you're

16    saying is basically you don't buy that narrative.  Is that --

17         PROSPECTIVE JUROR:  Yes.  I've heard the narrative that

18    essentially all of the people in the Capitol on that day were

19    basically just tourists that were milling around.  I don't buy

20    the narrative.

21         MR. PIERCE:  If the evidence were to show in this case

22    that in fact the defendants were essentially tourists and they

23    were milling around --

24         PROSPECTIVE JUROR:  Okay.

25         MR. PIERCE:  -- do you feel confident that you would be

1      able to accept that despite your preexisting sort of

2      inclination to not buy that narrative?

3               PROSPECTIVE JUROR:  I could.  Yeah.

4               MR. PIERCE:  That's all I have.  Thank you very much,

5      sir.

6               PROSPECTIVE JUROR:  Okay.

7               THE COURT:  All right.  Thank you, Mr. Pierce.

8          Thank you, sir.  You may step down.

9               PROSPECTIVE JUROR:  Thank you.

10         (Juror 1737 steps down.  Juror 1061 steps up.)

11              THE COURT:  This is juror 1061.

12         Let's start with question No. 42.  Are there any vision,

13     language, or hearing or other physical issues that might

14     interfere with your ability to hear or understand the evidence

15     in the case?

16              PROSPECTIVE JUROR:  Just vision.  I would just need to

17     see things up close to make sure that I see it clearly.  I

18     have astigmatism and wear contact lenses, but would just want

19     to make sure that I have good vision for anything.

20              THE COURT:  Well, we appreciate your candor and the

21     answer, but you would make sure you could see whatever --

22              PROSPECTIVE JUROR:  Yeah.  Just from far away.

23              THE COURT:  So back to the first questions.  No. 10.

24     Legal training.  Do you have legal training or someone close

25     to you?

1          PROSPECTIVE JUROR:  I do not.  My husband.

2          THE COURT:  Is he a lawyer?

3          PROSPECTIVE JUROR:  He's not practicing but he does

4     regulations in law.

5          THE COURT:  Has he ever practiced?

6          PROSPECTIVE JUROR:  Mostly policy, so no.  I don't

7     believe he was in a court.

8          THE COURT:  He's never been a practicing lawyer

9     handling cases in a court, for example.

10          PROSPECTIVE JUROR:  Correct.

11          THE COURT:  Even on policy issues, any having to deal

12     with criminal law enforcement policy?

13          PROSPECTIVE JUROR:  No.

14          THE COURT:  All right.  You've answered yes to a couple

15     of other questions.  The nature of the charges in this case.

16     Do you think the nature of the charges would make it difficult

17     for you to be a fair and impartial juror?

18          PROSPECTIVE JUROR:  I answered yes to that one?  I

19     thought --

20          THE COURT:  You did answer yes to that one.  And we

21     understand you may have views that you've formed.

22          PROSPECTIVE JUROR:  Yeah.  I would only say I'm a D.C.

23     resident and was affected like most people with the nature of

24     the --

25          THE COURT:  Let's jump to the chase on that one.

1    Because you saw some of the events transpiring on January 6 on

2    television, I take it.

3              PROSPECTIVE JUROR:  Yes.

4              THE COURT:  Would you say you watched it closely or

5    intermittently?

6              PROSPECTIVE JUROR:  No.  I watched it for a solid two

7    or three hours as it transpired.

8              THE COURT:  And you've probably formed some views with

9    respect to those events.  The question for you is are you

10    confident that you could set aside those views and if selected

11    as a juror in this case make a decision based solely on the

12    evidence that you heard in the courtroom and the instructions

13    on the law that I gave you, and do so fairly and impartially

14    as a juror?

15              PROSPECTIVE JUROR:  Yes.

16              THE COURT:  And is that true also with respect to any

17    feelings that you may have or opinions that you may have

18    respecting people who believe that the 2020 presidential

19    election was stolen?  For instance, if that came up in the

20    case, in the trial, could you set aside any views that you

21    have with respect to that and decide, based solely on the

22    evidence you heard in the courtroom, whether these three

23    individuals are guilty or not guilty of the charges that they

24    face?

25              PROSPECTIVE JUROR:  Yes.

1          THE COURT:  All right.  With that, for the government.

2          MR. VALENTINI:  Good morning.

3          PROSPECTIVE JUROR:  Good morning.

4          THE COURT:  It's afternoon now, Mr. Valentini.

5          MR. VALENTINI:  I stand corrected.  Good afternoon.

6          PROSPECTIVE JUROR:  Yes.

7          MR. VALENTINI:  My name's Francesco Valentini.  I'm one

8   of the prosecutors in this case.  I just wanted to ask you a

9   couple of follow-up questions.  The first -- and I hope it's

10  not too personal -- you mentioned your vision, that you have

11  astigmatism.  We expect that there will be a lot of video

12  played in this case.  So if you are selected as a juror,

13  you'll probably be sitting in one of those seats and the video

14  that is played in the courtroom will be played on one of those

15  screens that are in between every other seat.

16         PROSPECTIVE JUROR:  Yeah.

17         MR. VALENTINI:  Do you think that if you're sitting in

18  one of those seats and the video is played on one of those

19  screens, that's a distance at which you are confident you can

20  see clearly?

21         PROSPECTIVE JUROR:  Yes.

22         MR. VALENTINI:  The other question, the other area I

23  wanted to follow up on very briefly is you mentioned that your

24  husband is trained as a lawyer but does not practice as a

25  lawyer and he practices in policy?

1              PROSPECTIVE JUROR:  Mm-hmm.

2              MR. VALENTINI:  What areas of policy does he practice

3      in?

4              PROSPECTIVE JUROR:  Energy regulation and law.

5              MR. VALENTINI:  Thank you very much.  No further

6      questions.

7              THE COURT:  Mr. Pierce.

8              MR. PIERCE:  Good afternoon, ma'am.  Just one quick

9      question or couple questions.  You work for Deloitte

10     Consulting; is that right?

11             PROSPECTIVE JUROR:  Yes.

12             MR. PIERCE:  Have you been involved at all in

13     Deloitte's work with respect to the management of the

14     discovery process in the January 6 cases?

15             PROSPECTIVE JUROR:  No.

16             MR. PIERCE:  Did you know anybody who has been?

17             PROSPECTIVE JUROR:  No.

18             MR. PIERCE:  Okay.  Thank you, Your Honor.

19             THE COURT:  Thank you.

20        And thank you, and you may step down.

21             PROSPECTIVE JUROR:  Okay.

22        (Juror 1061 steps down.  Juror 0369 steps up.)

23             THE COURT:  This is juror 0369.  Let me jump to

24     question No. 44.  And that is your availability over the

25     course of the next week or so.  You have something that might

1      create a problem with that?

2              PROSPECTIVE JUROR:  Yes.  I'm a mother.  I have a

3      two-year-old and the time conflicts with her school schedule.

4              THE COURT:  So let me hear you explain it a little bit.

5      When would it create a problem for you?

6              PROSPECTIVE JUROR:  She got to be at school by eight

7      o'clock and I have to pick her up by 4:00.

8              THE COURT:  And there's nothing that you could arrange

9      in order to allow you to be here until five o'clock?

10             PROSPECTIVE JUROR:  No.

11             THE COURT:  Because you have no one you can rely on.

12             PROSPECTIVE JUROR:  No.

13             THE COURT:  Absolutely not.

14             PROSPECTIVE JUROR:  Absolutely not.

15             THE COURT:  So your job doesn't require you to work

16     beyond four o'clock?

17             PROSPECTIVE JUROR:  I actually work from home.

18             THE COURT:  You work from home.

19        All right.  Any follow-up questions?

20             MR. VALENTINI:  No, Your Honor.

21             MR. PIERCE:  No, Your Honor.

22             THE COURT:  All right.  Thank you very much.

23         (Juror 0369 steps down.  Juror 2119 steps up.)

24             THE COURT:  This is juror 2119, and we'll go to

25     question 23.  So do you live or work near the Capitol?

 1          PROSPECTIVE JUROR:  Yes.  I work for the National

 2   Association of Manufacturers in Washington, D.C., previously

 3   spent about eight years working in Congress, both for the

 4   House and the Senate.

 5          THE COURT:  When did you start work at the National

 6   Association of Manufacturers?

 7          PROSPECTIVE JUROR:  2018.

 8          THE COURT:  2008 or '18?

 9          PROSPECTIVE JUROR:  2018.

10          THE COURT:  And your work on the Hill before that, was

11   it on both the House side and the Senate side?

12          PROSPECTIVE JUROR:  Four years in the House and four

13   years in the Senate.

14          THE COURT:  Like to keep things even, huh?

15          PROSPECTIVE JUROR:  Yeah.

16          THE COURT:  And do you think you have a pretty intimate

17   familiarity with the Capitol area?

18          PROSPECTIVE JUROR:  I worked for two years for Senator

19   John Cornyn in his whip's office in the Capitol building

20   itself.

21          THE COURT:  All right.  You were present at the Capitol

22   on January 6, 2021, or was someone close to you present?

23          PROSPECTIVE JUROR:  A number of my former colleagues

24   were.  I live on Capitol Hill, so I was a couple blocks away,

25   but I do know people who were physically in the Capitol during

1    the event.

2        THE COURT:  And you watched some of the events

3    transpiring on January 6 --

4        PROSPECTIVE JUROR:  Yes.  Actively, yes.

5        THE COURT:  Actively watched it?

6        PROSPECTIVE JUROR:  Actively watched it.  Oh, yeah.

7    Texted with people that were in the building.

8        THE COURT:  And you watched the congressional hearings

9    to some extent after that.

10       PROSPECTIVE JUROR:  Followed them somewhat on Twitter,

11   things like that.  Yeah.

12       THE COURT:  So let's ask a couple of questions that

13   aren't exactly the way they're formulated here.  First with

14   respect to your acquaintances who might have been on the Hill

15   at the Capitol on that date, do you think that your knowledge

16   and friendship with them and even your communications at the

17   time with them would make it difficult for you to be a fair

18   and impartial juror in this case?

19       PROSPECTIVE JUROR:  I don't believe so, no.

20       THE COURT:  And you may have formed some opinions with

21   respect to those events.  The question is whether you would be

22   able to set aside those opinions and listen to the evidence

23   here in the courtroom and decide the case solely on the basis

24   of that evidence fairly and impartially as a juror.

25       PROSPECTIVE JUROR:  Absolutely.

1          THE COURT:  What about with respect to the issue of

2     whether the 2020 presidential election was stolen?  If you

3     have any views on that, would you be able to set those aside

4     and again listen to the evidence in the case and decide the

5     case based -- with respect to these three individuals, based

6     solely on the evidence you heard in the courtroom?

7          PROSPECTIVE JUROR:  I do not believe the election was

8     stolen.

9          THE COURT:  But could you set aside --

10         PROSPECTIVE JUROR:  Oh, yes.

11         THE COURT:  -- that view and decide the case based

12     solely on the evidence you heard in the courtroom?

13         PROSPECTIVE JUROR:  Yes.

14         THE COURT:  All right.  Follow-up questions?

15         MR. VALENTINI:  No questions, Your Honor.

16         THE COURT:  Mr. Pierce?

17         MR. PIERCE:  Just a few.  Thank you, Your Honor.

18       Good afternoon, sir.  About how many former colleagues

19     would you say were in the Capitol that day?

20         PROSPECTIVE JUROR:  The entire Capitol complex or the

21     Capitol building itself?

22         MR. PIERCE:  Let's take the entire complex.

23         PROSPECTIVE JUROR:  Gosh, it would be close to 50,

24     probably.  I mean, within the Capitol building itself I could

25     name off probably at least three or so.

1          MR. PIERCE:  And I assume some of these people you're
2     close friends with?
3          PROSPECTIVE JUROR:  Yes.
4          MR. PIERCE:  How many would you say you were texting
5     with during the day?
6          PROSPECTIVE JUROR:  I was not personally texting with,
7     but I was, through various text chains, was hearing directly
8     from people that were within the Capitol building.
9          MR. PIERCE:  But you did not send any communications to
10    them --
11         PROSPECTIVE JUROR:  Absolutely not.  No.
12         MR. PIERCE:  And without getting into details of what
13    they were texting, what were they expressing, generally
14    speaking?  You know, fear?  Did somebody get injured?  What
15    was the thrust of it?
16         PROSPECTIVE JUROR:  Just general shock I think.
17         MR. PIERCE:  And certainly appreciate your assertive
18    answers that you can be fair in this case.  In light of your
19    personal connections with a lot of people that were there,
20    what is it that makes you feel so strongly that you can in
21    fact be fair in this case?
22         PROSPECTIVE JUROR:  Just my own personal candor and
23    personality.
24         MR. PIERCE:  All right.  Fair enough.
25       Thank you, Your Honor.

1          THE COURT:  Thank you very much.  You may step down.

2          PROSPECTIVE JUROR:  Okay.  Thank you.

3        (Juror 2119 steps down.  Juror 2021 steps up.)

4          THE COURT:  This is juror 2021.  And we'll start with

5   question No. 24.  You or someone close to you was on the

6   Capitol on January 6, 2021?

7          PROSPECTIVE JUROR:  I believe the question was do you

8   live next to the Capitol or nearby it.

9          THE COURT:  That was the previous question, 23.

10          PROSPECTIVE JUROR:  So it should be 23.

11          THE COURT:  So do you live or work near the Capitol?

12          PROSPECTIVE JUROR:  Yes.  I live in Southeast.

13          THE COURT:  You live on the Hill?

14          PROSPECTIVE JUROR:  I live near Eastern Market.

15          THE COURT:  Was that true on January 6, 2021?

16          PROSPECTIVE JUROR:  No.  I live there now.

17          THE COURT:  All right.  But at the time, January 6, you

18   did not live in that area.

19          PROSPECTIVE JUROR:  Uh-uh.

20          THE COURT:  You did see some of the events of January

21   6, 2021, on TV as they were occurring?

22          PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Would you say you followed it closely or

24   off and on?

25          PROSPECTIVE JUROR:  Not really closely at all.

1          THE COURT:  And have you formed strong views with

2     respect to those activities?

3          PROSPECTIVE JUROR:  I wouldn't say so.

4          THE COURT:  Whatever your views are, are you confident

5     you could set them aside, and if selected as a juror decide

6     the case based on the evidence you heard in the courtroom as a

7     fair and impartial juror?

8          PROSPECTIVE JUROR:  Yes.

9          THE COURT:  And No. 34.  So if you're selected as a

10     juror, you're going to be instructed not to seek out any media

11     coverage of the case or of these defendants or hearings or

12     other things with respect to January 6, particularly through

13     the media, through your investigation and so forth.  Would you

14     have difficulty following that instruction?

15          PROSPECTIVE JUROR:  I think so.  Mostly because it's

16     probably going to interest me, and I follow social media

17     pretty heavily.  So probably would end up seeing something

18     about it.

19          THE COURT:  Well, you might see something, I understand

20     that.  The real question is whether you would seek information

21     relating to these defendants or this case on social media or

22     other -- television, etc.  The fact that you might come across

23     it because you do follow social media is a different question.

24     The question really is would you seek it out if told not to.

25          PROSPECTIVE JUROR:  I think it would be hard to not

1    seek it out, yes.

2        THE COURT:  Because you just like to follow social

3    media.

4        PROSPECTIVE JUROR:  That and I think that it would just

5    interest me knowing more about it since I didn't really follow

6    it as it was happening.

7        THE COURT:  I know it would interest you; it might

8    interest all of us.  But in order to be a juror in this case

9    you need to sort of put blinders on so that you can decide the

10    case based solely on the evidence presented in the courtroom,

11    not based on one's own investigation with respect to the

12    facts.

13        PROSPECTIVE JUROR:  Right.

14        THE COURT:  And the question for you is, if told that's

15    what you have to do as a juror, whether you could follow that

16    instruction or whether, no, you couldn't put those blinders on

17    and you think that you would go ahead and disregard that

18    instruction and do your own investigation.

19        PROSPECTIVE JUROR:  I think I would look more into it,

20    yes.

21        THE COURT:  I'm sorry.  Say that again?

22        PROSPECTIVE JUROR:  I think I would look more into it,

23    yes.

24        THE COURT:  All right.

25      Questions?

1              MR. VALENTINI:  Good afternoon.

2              PROSPECTIVE JUROR:  Good afternoon.

3              MR. VALENTINI:  I'm Francesco Valentini.  I'm one of

4      the prosecutors in this case.  You mentioned that you follow

5      social media pretty heavily?

6              PROSPECTIVE JUROR:  Yes.

7              MR. VALENTINI:  And which social media do you follow?

8              PROSPECTIVE JUROR:  Instagram and Facebook.

9              MR. VALENTINI:  Any particular sources on Facebook or

10     Instagram that you follow?

11             PROSPECTIVE JUROR:  None that I can really name off the

12     top.  It's mostly just things that have been reblogged or

13     reposted.

14             MR. VALENTINI:  Let me also ask you, what is it you do

15     for a living?

16             PROSPECTIVE JUROR:  I am a tech writer.

17             MR. VALENTINI:  And as part of that writing, has

18     that -- has any of that writing been relating in any way to

19     the events of January 6, the Capitol, anything like that?

20             PROSPECTIVE JUROR:  No.

21             MR. VALENTINI:  Thank you.

22             THE COURT:  Mr. Pierce, anything?

23             MR. PIERCE:  No questions, Your Honor.

24             THE COURT:  Thank you very much.  You may step down.

25             PROSPECTIVE JUROR:  No problem.

1    (Juror 2021 steps down.)

2         THE COURT:  Mr. Pierce?

3         MR. PIERCE:  We would move to strike for cause,

4    Your Honor, in light of his express statement that he would

5    not follow the Court's instructions.

6         MR. VALENTINI:  We're not going to oppose that request.

7         THE COURT:  We'll go ahead and strike 2021 for cause

8    because of his candor that he does not believe he could follow

9    the Court's instruction to avoid media and his own

10   investigation.

11       So we're going to take our lunch break.  We're making

12   progress.  I wouldn't say we're making rapid progress.  We're

13   about 50/50 on strikes and jurors.  I think a little better

14   than 50/50 but not much.  So we've got some work to do this

15   afternoon.  But I'm inclined to go ahead and release those

16   that were stricken for cause rather than having them sit here

17   for the rest of the afternoon.  Any objection to that?

18        MR. VALENTINI:  No, Your Honor.

19        MR. PIERCE:  No objection.

20        THE COURT:  All right.  And we could -- why don't we

21   bring them into the courtroom and release them so that I can

22   thank them.  So that would be the jurors -- I'll read off

23   their juror numbers:  0063, 1298, 0086, 1192, I think 2174 has

24   already been released, and then 0369 and 2021.  If we could

25   just bring those six jurors in, I'll go ahead and excuse them.

1    And I won't bring in the entirety of the jury panel because
2    it takes so long to get them in and get them seated, and we'll
3    just excuse them for lunch now.
4    And would you, as you excuse them, please remind them not
5    to discuss the case among themselves or with anyone else and
6    ask them to be back ready to go at 1:45.  Okay?
7    (Deputy clerk exits, reenters.)
8    (Court conferring.)
9    THE COURT:  All right.  They've been released, those
10    six.  So it's a total of seven that were released.  Everybody
11    else has been told to be back at 1:45, so I'll tell you as
12    well to be back at 1:45.  I'll see you then thank you.
13    And I'll give you till 1:50, so you have a full hour.  It's
14    going to take five minutes to get them organized anyway.
15    Thank you.
16    (Lunch recess from 12:49 p.m. to 1:59 p.m.)
17    THE COURT:  All right.  Good afternoon, everyone.
18    Let's proceed with the next juror.
19    (Juror 0317 steps up.)
20    THE COURT:  This is juror 0317, and we have a couple of
21    questions to go over with him.  We'll start with question
22    No. 11.  You or someone close to you has been involved in the
23    prosecution or defense of a criminal case?
24    PROSPECTIVE JUROR:  Yes, Your Honor.
25    THE COURT:  Is that you or someone close to you?

1          PROSPECTIVE JUROR:  Myself.

2          THE COURT:  Tell me about it a little bit.

3          PROSPECTIVE JUROR:  2003, 2004 -- I'm afraid I don't

4     recall the exact year -- I was arrested for a DUI in West

5     Virginia.

6          THE COURT:  For a what?

7          PROSPECTIVE JUROR:  A DUI.

8          THE COURT:  And you said that was in 2003?

9          PROSPECTIVE JUROR:  2003, '4, I don't recall

10    specifically.

11         THE COURT:  And the handling of that matter, did it

12    leave you with any feelings or views that law enforcement or

13    the court system, if it wound up in the court system, handled

14    the matter inappropriately?

15         PROSPECTIVE JUROR:  No, Your Honor.

16         THE COURT:  No residual hard feelings against anybody?

17         PROSPECTIVE JUROR:  No.

18         THE COURT:  And then question -- you or someone close

19    to you has been the victim of, a witness to, or arrested for a

20    criminal offense.  The same matter?

21         PROSPECTIVE JUROR:  Yes, sir.

22         THE COURT:  25.  You did follow the events on January 6

23    on television?

24         PROSPECTIVE JUROR:  Yes, Your Honor.

25         THE COURT:  Would you say closely or off and on?

1            PROSPECTIVE JUROR:  Off and on.

2            THE COURT:  And you've also seen some of the TV

3      coverage of the congressional hearings.

4            PROSPECTIVE JUROR:  Yes, Your Honor.

5            THE COURT:  Having seen all that, let me ask you a

6      couple questions.  Some of them repeat these questions to a

7      certain extent.  I assume that you've formed some views about

8      the matters on January 6.

9            PROSPECTIVE JUROR:  Yes, Your Honor.

10            THE COURT:  The question is whether you can set aside

11      those views and if selected as a juror here you would be able

12      to decide the case based on the evidence received in the

13      courtroom with respect to these three gentlemen and make a

14      decision fairly and impartially based on that evidence.

15            PROSPECTIVE JUROR:  I believe so, Your Honor.

16            THE COURT:  Let me see if we can take you one step

17      further than belief.

18            PROSPECTIVE JUROR:  Okay.

19            THE COURT:  The question in my mind is whether you're

20      confident you can do so.  Not absolutely sure, but confident

21      that you could do so.  You would try hard to do so and you're

22      confident you'd be able to do so.

23            PROSPECTIVE JUROR:  Yes.  I'd say I'm confident.

24            THE COURT:  Okay.  With that, let me turn it over to

25      counsel for any questions they may have.

1          MR. VALENTINI:  Good afternoon.  My name is Francesco

2    Valentini, and I'm one of the prosecutors in this case.

3       What do you do for a living?

4          PROSPECTIVE JUROR:  I'm an IT consultant, primarily in

5    the public sector.

6          MR. VALENTINI:  How long have you been involved in that

7    industry?

8          PROSPECTIVE JUROR:  I graduated from college in 2005

9    with a degree in computer science, so basically since I

10   graduated.

11         MR. VALENTINI:  I have no further questions.

12         THE COURT:  Mr. Pierce.

13         MR. PIERCE:  Thank you, Your Honor.

14      Good afternoon, sir.  You mentioned you did reach some

15   views after watching some of the events of January 6 and

16   watching some of the committee hearings.

17         PROSPECTIVE JUROR:  Yes.

18         MR. PIERCE:  Could you please just articulate what

19   those views were.

20         PROSPECTIVE JUROR:  I thought the January 6 events were

21   terrible.  I thought they were disgraceful.  Yeah.  I had a

22   very negative view upon the actions of the individuals who

23   participated in the January 6 events.

24         MR. PIERCE:  Do you, despite that, do you really

25   feel --

1          THE COURT:  I think he's answered that twice already.

2     We're not going to repeat things that have already been

3     answered.

4          MR. PIERCE:  Thank you very much.  That's all I have.

5          THE COURT:  You may step down.  Thank you.

6          PROSPECTIVE JUROR:  Thank you.

7       (Juror 0317 steps down.  Juror 1365 steps up.)

8          THE COURT:  This is juror 1365.  You've indicated that

9     you or someone close to you lives near or works near the

10    Capitol.

11         PROSPECTIVE JUROR:  Yeah.  I live in Penn Quarter.

12         THE COURT:  That was true at the time of January 6,

13    2021?

14         PROSPECTIVE JUROR:  In 2021, I lived in Chinatown.

15         THE COURT:  Okay.  And you followed the events of

16    January 6 on TV as they were occurring?

17         PROSPECTIVE JUROR:  I saw it on the news.

18         THE COURT:  You were at home or at work?

19         PROSPECTIVE JUROR:  At home.

20         THE COURT:  You've formed some views with respect to

21    those events, I assume?

22         PROSPECTIVE JUROR:  Yeah.

23         THE COURT:  Question for you is whether you're

24    confident that if selected as a juror in this case you could

25    set aside whatever views you have, listen to the evidence

1    presented in the courtroom, and decide the case based on that

2    evidence as a fair and impartial juror.  Are you confident you

3    could do so?

4         PROSPECTIVE JUROR:  Yes.

5         THE COURT:  All right.  Questions for this prospective

6    juror from the government?

7         MR. VALENTINI:  No questions.

8         MR. PIERCE:  No questions, Your Honor.

9         THE COURT:  All right.  Thank you very much.  You may

10   step down.

11        PROSPECTIVE JUROR:  Thank you.

12      (Juror 1365 steps down.  Juror 0538 steps up.)

13        THE COURT:  This is juror 0538.  And let's start with

14   question No. 44 about your availability.  Do you think there

15   would be some reason that you might not be available over the

16   course of the next week to participate as a juror in this

17   trial?

18        PROSPECTIVE JUROR:  The next week, yeah, I'm fine.  If

19   it extends, I have a conference at the end of the month.

20        THE COURT:  At the end of the month?

21        PROSPECTIVE JUROR:  Yeah.

22        THE COURT:  Okay.  I don't think that'll be a problem.

23   So let's go over some of the other questions.  You know

24   someone else on the jury?

25        PROSPECTIVE JUROR:  Yes.  Neighbor.  Or in the

1    neighborhood.  Same church.

2         THE COURT:  The question I have for you is whether that

3    would affect your ability to decide the case for yourself

4    based on your individual judgment?

5         PROSPECTIVE JUROR:  No.

6         THE COURT:  Would you tend to listen more to that

7    person's views than you would to another juror's views?

8         PROSPECTIVE JUROR:  No.

9         THE COURT:  All right.  You've indicated you might have

10   some difficulty following the requirement of the law that

11   individuals are presumed innocent unless and until the

12   government proves their guilt beyond a reasonable doubt?

13        PROSPECTIVE JUROR:  I have my, I guess, opinions

14   from --

15        THE COURT:  We understand -- maybe I should ask you a

16   more general question.  You have -- like everyone, you have

17   opinions, and presumably, having watched on TV the events of

18   January 6, you may have some strongly held views about those

19   events.

20     The question for you is whether, if selected as a juror in

21   this case, you could set aside those preexisting views, listen

22   to the evidence presented in the courtroom with respect to

23   this case and these three individuals, and decide the case

24   based solely on that evidence as a fair and impartial juror.

25   Are you confident you could do so?

1          PROSPECTIVE JUROR:  I'm confident I could do so.

2          THE COURT:  All right.  You or someone close to you has

3     legal training?

4          PROSPECTIVE JUROR:  I was prelaw in undergrad.  That

5     was a long time ago.

6          THE COURT:  Long time ago.  Undergrad was a long time

7     ago for many of us.

8       You've served as a juror previously?

9          PROSPECTIVE JUROR:  I have.

10          THE COURT:  How many times?

11          PROSPECTIVE JUROR:  Pretty much every two years I get

12     called.

13          THE COURT:  Let's deal with the -- specifically with

14     the last time if you remember it.  Was it in Superior Court or

15     federal court?

16          PROSPECTIVE JUROR:  I think it was -- if I tell you

17     the --

18          THE COURT:  Across the street in a different building?

19          PROSPECTIVE JUROR:  I think it was here.  If I tell you

20     the judge's name, would that help?

21          THE COURT:  You can go ahead and say the judge's name.

22          PROSPECTIVE JUROR:  It was Judge Howell, Beryl Howell.

23          THE COURT:  Yes.  That was here.  So the first question

24     for you is was that a case involving January 6?

25          PROSPECTIVE JUROR:  No.  Negative.

1          THE COURT:  So a couple questions.  And let me just ask

2     the questions and answer them specifically.  Was it a criminal

3     case or a civil case?

4          PROSPECTIVE JUROR:  It was a civil case.

5          THE COURT:  What was the general subject matter?

6     Discrimination --

7          PROSPECTIVE JUROR:  Yeah.  Employment discrimination.

8          THE COURT:  Was the jury able to reach a verdict?

9          PROSPECTIVE JUROR:  We were.

10          THE COURT:  Was there anything about that experience

11     that would make it difficult for you to serve as a fair and

12     impartial juror in this case?

13          PROSPECTIVE JUROR:  No.  Negative.

14          THE COURT:  So you previously served as a juror in the

15     Superior Court, I take it.  On criminal cases?

16          PROSPECTIVE JUROR:  Not in Superior Court.  I think it

17     was district court then on a criminal case.

18          THE COURT:  What kind of criminal case?

19          PROSPECTIVE JUROR:  I think it was -- I take it back.

20     It was a civil case.  They kind of all blend in together.

21          THE COURT:  I understand.  What was the subject matter

22     of the next most recent case as you recall it?

23          PROSPECTIVE JUROR:  It was a case where -- I was an

24     alternate, then we were let go.

25          THE COURT:  You were let go before the jury

1    deliberated?

2             PROSPECTIVE JUROR:  Correct.

3             THE COURT:  Was there anything about that experience

4    that would make it difficult for you to serve as a fair and

5    impartial juror in this case?

6             PROSPECTIVE JUROR:  No.

7             THE COURT:  Speaking generally about all the cases that

8    you've been a juror on, was the jury able to reach a verdict

9    in each of those cases?

10            PROSPECTIVE JUROR:  Yes.

11            THE COURT:  And is there anything about those

12   experiences in any one of those cases that would make it

13   difficult for you to serve as a fair and impartial juror in

14   this case?

15            PROSPECTIVE JUROR:  No.

16            THE COURT:  All right.  We'll move on from there.

17       You or someone close to you has worked for law enforcement?

18            PROSPECTIVE JUROR:  Yeah.

19            THE COURT:  You?

20            PROSPECTIVE JUROR:  I work for the U.S. Coast Guard.

21            THE COURT:  Tell us what your job is with the Coast

22   Guard.

23            PROSPECTIVE JUROR:  I'm a analyst/division chief.

24            THE COURT:  Analyzing what kinds of things?  Financial?

25   Budget?

 1            PROSPECTIVE JUROR:  Terrorist activities.

 2            THE COURT:  Do you ever get involved in any follow-up

 3    with respect to any matters in terms of litigation?

 4            PROSPECTIVE JUROR:  No.  Negative.

 5            THE COURT:  All right.  The nature of the charges in

 6    this case.  Would those charges make it difficult for you to

 7    be a fair and impartial juror?

 8            PROSPECTIVE JUROR:  Could be, yes.

 9            THE COURT:  And that's because of your views with

10    respect to the events of January 6?

11            PROSPECTIVE JUROR:  Yes.

12            THE COURT:  But again, would you be able to set aside

13    those views, even though it might be difficult, would you be

14    able to set aside those views, listen to the evidence, and if

15    selected as a juror, make a decision based upon that evidence

16    that you heard in the courtroom --

17            PROSPECTIVE JUROR:  Yes.

18            THE COURT:  -- fairly and impartially?

19            PROSPECTIVE JUROR:  Yes.

20            THE COURT:  You've already indicated you followed the

21    events of January 6 on television.  Correct?

22            PROSPECTIVE JUROR:  Correct.

23            THE COURT:  And you have formed some strong opinions

24    about the events of January 6, and indeed you have some

25    opinions with respect to the 2020 presidential election and

1    those who believe that it was stolen.

2              PROSPECTIVE JUROR:  I do.

3              THE COURT:  On that specific subject, notwithstanding

4    your views, could you set them aside, listen to the evidence

5    in this case, even if it included evidence relating to

6    someone's views about the 2020 election, set that aside and --

7    you wouldn't set aside the evidence you heard in the case, set

8    aside your views, and decide the case based on the evidence in

9    a fair and impartial way?

10             PROSPECTIVE JUROR:  I could.

11             THE COURT:  Okay.  See what else we need to cover.

12   There's one that was sort of misplaced and I didn't see it.

13   We may have covered it already, but let me make sure.  Excuse

14   me for the delay while I turn pages.

15       Someone who's worked for the Capitol Police, Metropolitan

16   Police, or Secret Service?

17             PROSPECTIVE JUROR:  Yes.

18             THE COURT:  Is that a friend --

19             PROSPECTIVE JUROR:  A friend of the family was a former

20   Capitol Police officer.

21             THE COURT:  Do you think your friendship with that

22   person would influence you in deciding this case if selected

23   as a juror?

24             PROSPECTIVE JUROR:  It could.

25             THE COURT:  Well, it could.  How so?

1          PROSPECTIVE JUROR:  He's a friend.  He was a former

2     Capitol Police officer.

3          THE COURT:  Was he involved in the January 6 --

4          PROSPECTIVE JUROR:  No.  He had left the service before

5     6 January.

6          THE COURT:  So let me ask a specific question.  If a

7     Capitol Police officer were a witness in this case, and indeed

8     that's likely to be the case, would you tend to believe that

9     witness just because they were a Capitol Police officer?

10          PROSPECTIVE JUROR:  Not just because they were a

11     Capitol Police officer, but --

12          THE COURT:  Would you assess -- I'm sorry.  I didn't

13     mean to interrupt.  Would you assess their testimony just as

14     you would any other witness?

15          PROSPECTIVE JUROR:  Yes.

16          THE COURT:  All right.  I think there's one last

17     question to cover, and that is -- well, I'll ask the question

18     since you answered it yes:  Do you know of any reason why you

19     may be prejudiced for or against the government, for or

20     against any witness, or for or against the defendants because

21     of the nature of the charges or otherwise?  Is that the same

22     basic position that you've formed some views with respect to

23     the January 6th events?

24          PROSPECTIVE JUROR:  Yes.  Same.

25          THE COURT:  But you think you could set aside those

1    views and decide this case based on the evidence that you

2    heard.

3              PROSPECTIVE JUROR:  Yes.

4              THE COURT:  Anything from the government?

5              MR. VALENTINI:  No questions.

6              THE COURT:  From the defense.

7              MR. PIERCE:  Yes.  Thank you, Your Honor.

8         Good afternoon, sir.  You said in connection with working

9    with the U.S. Coast Guard you do some work -- you said you're

10   an analyst?

11             PROSPECTIVE JUROR:  I am.

12             MR. PIERCE:  Is that essentially, would that be

13   described as an intelligence analyst?

14             PROSPECTIVE JUROR:  I'm not an intel analyst, except

15   that I do -- my work covers intel.  I work with the intel

16   community.

17             MR. PIERCE:  Understood.  And you mentioned that it

18   relates to terrorist activities?

19             PROSPECTIVE JUROR:  Correct.

20             MR. PIERCE:  Would that relate to domestic terrorist

21   activities, international, both?

22             PROSPECTIVE JUROR:  Both.  Do you need to know my

23   office?

24             MR. PIERCE:  Well, so you specifically, do you do

25   analysis work with respect to what we here call domestic

1    terrorist activities?

2            PROSPECTIVE JUROR:  I cover everything.

3            MR. PIERCE:  Everything.

4            PROSPECTIVE JUROR:  Foreign and domestic.

5            MR. PIERCE:  Okay.  You mentioned a couple times how --

6    with respect to questions about the defendants being presumed

7    innocent, charges being -- difficulty being fair and impartial

8    about the charges.  We've heard a couple times about your

9    views of January 6, you referenced.  What are those views?

10   Your views.

11           PROSPECTIVE JUROR:  What do you mean specifically?

12           MR. PIERCE:  So in the discussion here, you answered

13   yes to a few questions.

14           PROSPECTIVE JUROR:  Right.

15           MR. PIERCE:  And generally speaking, you explained to

16   the judge that the reason that you answered yes was based on

17   your views of January 6.  So I'm just asking you if you can

18   articulate what those views are.

19           THE COURT:  I guess the question's asking, just to

20   rephrase it a little bit, is with respect to the events on the

21   Capitol on January 6, you've indicated that you've formed some

22   fairly strong views with respect to those events, but that you

23   could set aside those views if selected as a juror and decide

24   the case.  What he's asking is, okay, give us a little bit

25   more of a flavor of what those views are that you've formed.

1          PROSPECTIVE JUROR:  I guess flat out I think the

2     January -- the people, I would call it a -- I would side with

3     the people calling it an insurrection.

4          MR. PIERCE:  Okay.  And with respect to -- you also

5     mentioned that there were some views you had regarding the

6     presidential election.  Let me back up.  Some views you had

7     with respect to people who thought that the presidential

8     election was stolen or there was fraud.

9        What is your -- what do you think about those people who

10     think that the presidential election was stolen?

11          PROSPECTIVE JUROR:  I think there's no evidence that

12     the presidential election was stolen.

13          MR. PIERCE:  All right.  No further questions.  Thank

14     you, sir.

15          THE COURT:  Thank you, sir.  You may step down.  We

16     appreciate it.

17        (Juror 0538 steps down.)

18          THE COURT:  Mr. Pierce is standing up as if he wants to

19     say something.

20          MR. PIERCE:  Yes, Your Honor.  We would move to strike

21     for cause.  I recognize it might be a little bit of an uphill

22     battle based on some of the answers you elicited from him

23     about his expressed willingness to be fair, but like, there

24     are multiple questions now that are kind of, you know,

25     threaded together that are of concern and kind of --

1          THE COURT:  The multiple questions all are

2     interrelated.

3          MR. PIERCE:  I understand.

4          THE COURT:  It's not like they're totally distinct

5     subject matters.

6          MR. PIERCE:  No, I understand.  But, you know, he

7     thinks January 6 was an insurrection, and I just feel with,

8     you know, saying that he -- I mean initially saying he might

9     have trouble being fair and impartial, saying he has trouble

10    with they're presumed innocent --

11         THE COURT:  You're going too fast for the court

12    reporter.

13         MR. PIERCE:  I apologize.

14      I just think that with him thinking it was an insurrection

15    and initially having those answers to those questions, I think

16    we can find jurors who are more fair for these defendants.  I

17    realize it might be an uphill battle, but we move to strike

18    for cause.

19         THE COURT:  I appreciate that.  I guess the bottom line

20    that I would express here is that we're not going to exclude

21    everyone who has formed views, strong views, with respect to

22    the January 6 events, whether they be in favor of what was

23    done on January 6 or feeling it was inappropriate, terming it

24    an insurrection or otherwise.  The issue ultimately is whether

25    I feel that they will set aside those views and try their very

1    best and believe that they will succeed in setting aside those

2    views in deciding the case based on the evidence in a fair and

3    impartial way.  And like some others, this witness has

4    answered -- I think convincingly -- that he would do so.  So I

5    will not strike him for cause.

6         Next juror, please.

7         (Juror 1191 steps up.)

8         THE COURT:  This is juror 1191, and I'm going to start

9    with question 43, which is any medication that might interfere

10   with your ability to give full attention to the case.

11        PROSPECTIVE JUROR:  I take dextroamphetamine and

12   fluoxetine, and sometimes they make me drowsy, sometimes they

13   don't.

14        THE COURT:  But you hold down a job.

15        PROSPECTIVE JUROR:  Yeah.

16        THE COURT:  And you're able to complete that job.

17        PROSPECTIVE JUROR:  Yeah.

18        THE COURT:  And if you feel you couldn't pay sufficient

19   attention, would you be willing to indicate that you need a

20   break?

21        PROSPECTIVE JUROR:  Yeah.

22        THE COURT:  Okay.  So returning to some of the other

23   questions.  A law enforcement witness, do you believe you

24   might tend to believe that that witness was more or less

25   likely to be truthful just because they were in law

1    enforcement?

2          PROSPECTIVE JUROR:  I would like to believe that they'd

3    be more truthful, but I also think there's some instances now

4    where we can't always assume that and some might be more

5    willing to lie if it protects them.

6          THE COURT:  All right.  But the question really is for

7    you and your perception.  And that is, if a law enforcement

8    witness was on the stand, would you tend to believe or

9    disbelieve that witness, even before the first word came out

10    of their mouth, simply because they're in law enforcement?  Or

11    would you listen to their testimony like the testimony of

12    anyone else and assess it based on what you heard and what you

13    saw?

14          PROSPECTIVE JUROR:  Sorry.  I misinterpreted that.  I'd

15    probably listen to it, but I'd also be more prone to believing

16    them a little bit, just slightly, just because of their status

17    of being a police officer.

18          THE COURT:  Slightly believing them.  How slightly?

19    Because if it's too much more than slightly, then it could be

20    a problem because you would be favoring effectively one side

21    or the other because the law enforcement witnesses will be --

22          PROSPECTIVE JUROR:  I mean, it's not more than

23    slightly, but I think their status as being a law enforcement

24    official has to be taken into consideration.

25          THE COURT:  You would expect them to be truthful.

1              PROSPECTIVE JUROR:  Right.

2              THE COURT:  If you heard something from that witness

3     that you questioned or didn't believe was truthful, would you

4     follow through on that suspicion in terms of your assessment

5     of the case and the evidence?

6              PROSPECTIVE JUROR:  I'm not sure, to be honest.

7              THE COURT:  All right.  We appreciate the honesty.

8          The nature of the charges here, would that give you some

9     pause about your ability to be fair and impartial?

10             PROSPECTIVE JUROR:  Probably not, no.

11             THE COURT:  You think you could decide the case fairly

12    and impartially --

13             PROSPECTIVE JUROR:  Yes.

14             THE COURT:  -- even though the charges relate to the

15    January 6 events.

16             PROSPECTIVE JUROR:  Yeah.

17             THE COURT:  And you followed those events on TV when

18    they were occurring?

19             PROSPECTIVE JUROR:  Yes.  Yes.

20             THE COURT:  Would you say closely or off and on?

21             PROSPECTIVE JUROR:  Off and on, but I've seen coverage

22    of it since then, like just hearing it in the background on

23    TV, because the news is almost always on in my household,

24    whether I want it to be or not.

25             THE COURT:  I take it you don't control it all the

 1      time.  And you have fairly strong views about those events?

 2           PROSPECTIVE JUROR:  Yes.

 3           THE COURT:  Are you confident that, notwithstanding

 4      those views that you have, are you confident that you could

 5      set aside those views if selected as a juror and listen to the

 6      evidence presented in the courtroom and decide the case based

 7      on that evidence as a fair and impartial juror?

 8           PROSPECTIVE JUROR:  I want to say yes, but I'm honestly

 9      not sure.  I think there's a lot of complexities to this

10      matter.  So I'm just not sure.

11           THE COURT:  So if I asked you whether you were

12      confident that you could set aside your views and decide the

13      case based on the evidence presented in the courtroom --

14           PROSPECTIVE JUROR:  With the key word being

15      "confident," probably not.

16           THE COURT:  All right.  Questions from either side?

17           MR. VALENTINI:  I don't think we see a need for further

18      questioning on the government's side.

19           THE COURT:  Mr. Pierce?

20           MR. PIERCE:  No, Your Honor.  Thank you.

21           THE COURT:  All right.  Thank you very much.  We

22      appreciate it.

23        (Juror 1191 steps down.)

24           THE COURT:  Do I have a motion to strike juror 1191 for

25      cause?

1          MR. PIERCE:  Yes, Your Honor.  We would move to strike

2     for cause on the basis that she indicated she would tend to

3     believe law enforcement more so, and also that she was not

4     confident that she could be fair based on the nature of the

5     charges.

6          THE COURT:  From the government?

7          MR. VALENTINI:  Recognizing this is a close case, we

8     would not oppose the request to strike the juror.

9          THE COURT:  And we will strike juror 1191 for cause.

10       Next juror, please.

11       (Juror 0783 steps up.)

12          THE COURT:  This is juror 0783.  First, legal training.

13     Do you have any legal training or is it someone close to you?

14          PROSPECTIVE JUROR:  No.  I am a lawyer.

15          THE COURT:  Are you a practicing lawyer at this time?

16          PROSPECTIVE JUROR:  I am retired.

17          THE COURT:  And where did you work during your career?

18          PROSPECTIVE JUROR:  Most recently at the World Bank.

19          THE COURT:  For how long at the World Bank?

20          PROSPECTIVE JUROR:  I was there for nine years.

21          THE COURT:  What kind of law at the World Bank or even

22     before that would you say that you were practicing?

23          PROSPECTIVE JUROR:  I did international project finance

24     and political risk insurance.

25          THE COURT:  Did you ever, during your legal career,

1    handle any criminal matters?

2            PROSPECTIVE JUROR:  No.

3            THE COURT:  All right.  You've been a juror before.

4            PROSPECTIVE JUROR:  Yes.

5            THE COURT:  How many times?

6            PROSPECTIVE JUROR:  Just once.

7            THE COURT:  How recently was that?

8            PROSPECTIVE JUROR:  More than eight years ago.

9            THE COURT:  Was it in D.C.?

10           PROSPECTIVE JUROR:  Yes.  It was at the petit court, a

11   medical malpractice case.

12           THE COURT:  In Superior Court across the street?

13           PROSPECTIVE JUROR:  Yeah.

14           THE COURT:  And don't tell me the outcome, but was the

15   jury able to reach a verdict in that medical malpractice case?

16           PROSPECTIVE JUROR:  Yes, they did.

17           THE COURT:  Anything about that experience that would

18   make it difficult for you to be a fair and impartial juror if

19   selected here?

20           PROSPECTIVE JUROR:  No.

21           THE COURT:  You followed the events of January 6 on TV

22   as they were occurring.

23           PROSPECTIVE JUROR:  No.

24           THE COURT:  No.  Let me ask the question... did you

25   watch live news coverage of the events at the U.S. Capitol on

1    January 6 or have you watched --

2            PROSPECTIVE JUROR:  I have seen clips --

3            THE COURT:  -- since then video of news coverage --

4            PROSPECTIVE JUROR:  Yes.

5            THE COURT:  So you didn't watch it on that day, but

6    afterwards.  So I'll ask you this one question.  You may have

7    formed some views with respect to the events on January 6.

8    It's difficult for anyone not to have formed views if they

9    follow the news even minimally.

10       The question for you is this:  Notwithstanding those views,

11   would you be able to set those views aside, and if selected as

12   a juror in this case listen to the evidence presented in the

13   courtroom and decide the case based on that evidence fairly

14   and impartially as a juror?

15           PROSPECTIVE JUROR:  Yes.

16           THE COURT:  All right.

17       Questions.

18           MR. VALENTINI:  Good afternoon.

19           PROSPECTIVE JUROR:  Good afternoon.

20           MR. VALENTINI:  I'm one of the prosecutors in this

21   case.  I just have one follow-up question, and just an answer

22   to something the judge asked you just now and I just didn't

23   catch your answer.  I think the judge asked you which area did

24   you practice in as a lawyer at the World Bank.  And I believe

25   you said project finance, which I more or less understand, and

1    I did not catch the second part of your answer.

2            PROSPECTIVE JUROR:  Political risk insurance.

3            MR. VALENTINI:  Political risk insurance.  Could you

4    explain what that is?

5            PROSPECTIVE JUROR:  It's insurance against -- it's

6    international projects get insured, our investors get insured

7    against expropriation, restrictions on transfer of funds,

8    political violence.

9            MR. VALENTINI:  Let me ask another follow-up question.

10   Have you ever practiced in the area of criminal law?

11           PROSPECTIVE JUROR:  No.

12           MR. VALENTINI:  Okay.  Thank you.

13           THE COURT:  Mr. Pierce.

14           MR. PIERCE:  Just very briefly.  Good afternoon, sir.

15           PROSPECTIVE JUROR:  Hello.

16           MR. PIERCE:  With respect to the views that you have

17   reached on January 6 based on seeing clips, etc., are those

18   views negative towards the folks who were at the Capitol, on

19   the Capitol grounds or inside the Capitol building?

20           PROSPECTIVE JUROR:  Yes.

21           MR. PIERCE:  How much so?

22           PROSPECTIVE JUROR:  I'm not sure I understand your

23   question.  The people who engaged in destructive behavior are

24   not people that I admire very much.  I don't know how -- I

25   mean, that's a negative view.  Yes.

1          MR. PIERCE:  Would you have -- do you have that view of

2     every person that --

3          PROSPECTIVE JUROR:  I have that view of Pussy Riot, I

4     have that view of the people who are spraying the Degas

5     paintings in the museums, and I have that view of people who

6     climb up and break windows in the Capitol.  Yeah, all people

7     who behave in a destructive manner.

8          THE COURT:  Mr. Pierce, I won't allow you to ask a

9     specific question with regard to specific activity.

10         MR. PIERCE:  So with respect to individuals -- let's

11    say the evidence shows there were individuals who went inside

12    the Capitol and did not engage in any destructive activity.

13    Would you hold the same negative views towards those

14    individuals?

15         PROSPECTIVE JUROR:  As to whether or not they created

16    destructive activity, no, because they didn't.

17         MR. PIERCE:  Okay.  Thank you very much.

18         THE COURT:  All right.  Thank you, sir.  We appreciate

19    it.

20        (Juror 0783 steps down.  Juror 0761 steps up.)

21         THE COURT:  This is juror 0761.  I'll start with legal

22    training.  Is that you or someone close to you?

23         PROSPECTIVE JUROR:  Someone close to me.

24         THE COURT:  How close?

25         PROSPECTIVE JUROR:  Father and brother and sister.

1          THE COURT:  Let's start with your father.  Still
2     practicing law?
3          PROSPECTIVE JUROR:  Still practicing law.
4          THE COURT:  Does he practice criminal law at all?
5          PROSPECTIVE JUROR:  No.
6          THE COURT:  What kind of law does he practice?
7          PROSPECTIVE JUROR:  He is family law.
8          THE COURT:  Brother.
9          PROSPECTIVE JUROR:  Brother is employment law, still
10    practicing.
11         THE COURT:  And sister.
12         PROSPECTIVE JUROR:  No longer practicing.
13         THE COURT:  All right.  Did she ever practice criminal
14    law?
15         PROSPECTIVE JUROR:  No.
16         THE COURT:  All right.  And what happened to you?
17    You're not a lawyer.
18         PROSPECTIVE JUROR:  There's six of us so, you know.
19         THE COURT:  I'm sure that question is asked within your
20    family on occasion.  So you followed the events of January 6
21    as they were occurring on television?
22         PROSPECTIVE JUROR:  I watched it on television, yes.
23         THE COURT:  Would you say you watched it closely that
24    day or off and on?
25         PROSPECTIVE JUROR:  Once I watched it, it was on, yeah,

1    probably for a couple of hours.

2         THE COURT:  And I assume you've formed some views with

3    respect to those events.

4         PROSPECTIVE JUROR:  At the time, probably really just

5    trying to understand what was happening, was more really in

6    the moment.

7         THE COURT:  To the extent that you have any views on

8    those events, are you confident that you would be able to set

9    those views aside if selected as a juror, listen to the

10   evidence presented in the courtroom, and decide the case with

11   respect to these three individuals fairly and impartially

12   based on that evidence?

13        PROSPECTIVE JUROR:  I do.  Yes.

14        THE COURT:  All right.

15      Questions?

16        MR. VALENTINI:  Government has no questions.

17        THE COURT:  Mr. Pierce?

18        MR. PIERCE:  I have no questions, Your Honor.  Thank

19   you.

20        THE COURT:  Thank you very much.  You may step down.

21        PROSPECTIVE JUROR:  Thank you.

22      (Juror 0761 steps down.  Juror 1239 steps up.)

23        THE COURT:  This is juror 1239.  He's answered yes to a

24   couple of questions.  We'll start with the nature of the

25   charges.  Do you think the nature of the charges in this case

1   with respect to these three individuals would affect your

2   ability to be a fair and impartial juror?

3           PROSPECTIVE JUROR:  The nature of the charges?

4           THE COURT:  Yes.

5           PROSPECTIVE JUROR:  I think my experience with January

6   6, I still have a lot of strong emotions about what happened

7   that day.

8           THE COURT:  Did you have personal experience with it or

9   just as one of many of us just viewing the events on

10  television?

11          PROSPECTIVE JUROR:  I wasn't there that day, but my job

12  at the time was to pay close attention to the election and

13  what was going on, and I was actually meant to be there that

14  day or had planned to be there ahead of time, but then wasn't

15  able to go.

16          THE COURT:  Who were you working for at the time?

17          PROSPECTIVE JUROR:  I was working for a Japanese

18  corporation called Itochu, and I was a research analyst

19  focused on politics and trade and that sort of thing.

20          THE COURT:  Before I ask you the question that matters

21  most, let me cover one or two other things.  You did see the

22  events as they transpired --

23          PROSPECTIVE JUROR:  I followed them live all day, yeah.

24          THE COURT:  And you followed them pretty closely?

25          PROSPECTIVE JUROR:  Correct.  Yes.

1          THE COURT:  And you followed it since then to some

2     extent, the congressional hearings and other --

3          PROSPECTIVE JUROR:  A little bit.  Not as closely

4     because I've changed jobs and it no longer requires me to do

5     that.

6          THE COURT:  Would you say you have fairly strong views,

7     feelings or opinions with respect to the events on January 6?

8          PROSPECTIVE JUROR:  Yes.

9          THE COURT:  And you also have some strong feelings with

10    respect to people who believe that the 2020 presidential

11    election was stolen?

12         PROSPECTIVE JUROR:  Yes.

13         THE COURT:  Let me then ask you this question, and I'll

14    break it into two parts.  First with respect to your feelings

15    about the events on January 6.  My question is whether you are

16    confident that you could set aside any views that you have,

17    preexisting views, if selected as a juror, listen to the

18    evidence presented in the courtroom with respect to these

19    three gentlemen, and decide the case based on that evidence

20    fairly and impartially as a juror.  Are you confident that you

21    could do that?

22         PROSPECTIVE JUROR:  Um, I think that's difficult for me

23    to answer.

24         THE COURT:  Well, I understand it's difficult for you

25    to answer.

1          PROSPECTIVE JUROR:  I guess -- yeah.  Then the answer
2     would probably have to be no.
3          THE COURT:  Because even if you tried, you're not
4     confident that you --
5          PROSPECTIVE JUROR:  I can't -- yeah, I'm not confident
6     I would be able to remove my emotions from that day from the
7     decision-making.
8          THE COURT:  And why do you think your emotions are more
9     acute than those of other people?  What is it that in your job
10    or otherwise gives rise to that?  Or is it just that you feel
11    very strongly about it?
12         PROSPECTIVE JUROR:  I think that day I followed the
13    events.  I think, you know, leading up to that I was heavily
14    involved in the election and kind of tracking everything that
15    was happening, and it was a very intense moment and, you know,
16    that day was a very intense day, and it just -- I think there
17    were other things that happened in my personal life that made
18    that time very intense so I have some, you know, emotions from
19    that time that just I think might make it difficult.
20         THE COURT:  Hard to set it aside?
21         PROSPECTIVE JUROR:  Yeah.
22         THE COURT:  All right.  Questions?
23         MR. VALENTINI:  No questions from the government.
24         MR. PIERCE:  No, Your Honor.  Thank you.
25         THE COURT:  All right.  Thank you very much.  You may

1    step down.  Appreciate it.

2        (Juror 1239 steps down.)

3            THE COURT:  All right.  Do I have a motion?

4            MR. PIERCE:  Yes, Your Honor.  We move to strike for

5    cause.

6            MR. VALENTINI:  Government does not oppose the motion

7    based on the answers.

8            THE COURT:  All right.  I will strike juror 1239 for

9    cause based on his candid responses.

10       Next juror, please.

11       (Juror 0289 steps up.)

12           THE COURT:  This is juror 0289.  She has a couple of

13   questions she's responded positively to, or affirmatively to.

14       Do you live near or work near the Capitol?

15           PROSPECTIVE JUROR:  I live in Capitol Hill on

16   Independence Avenue.

17           THE COURT:  All right.  Is that where you lived at the

18   time of the January 6, 2021, events?

19           PROSPECTIVE JUROR:  Yes.

20           THE COURT:  Were you at home at the time?

21           PROSPECTIVE JUROR:  I was in the afternoon.  Not in the

22   morning, yes.

23           THE COURT:  And do you think that your proximity to the

24   events, geographical proximity, made you particularly worried

25   about the events?

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Do you think that that worry would affect

3     you if selected as a juror in this case?  In other words,

4     would you have a hard time not remembering how worried you

5     were at the time?

6          PROSPECTIVE JUROR:  No.  I don't think -- no.

7          THE COURT:  Do you think if you were selected as a

8     juror you could listen to the evidence and make a decision

9     based on the evidence that you heard in the courtroom?

10         PROSPECTIVE JUROR:  I would hope so.  I think the next

11    question was the one about -- that I think I had the more

12    concern --

13         THE COURT:  We'll get there.  We'll get there.

14         PROSPECTIVE JUROR:  Okay.

15         THE COURT:  So you followed the events as they occurred

16    on TV.

17         PROSPECTIVE JUROR:  Yes.

18         THE COURT:  And you've followed the events since then,

19    the congressional hearings and otherwise.

20         PROSPECTIVE JUROR:  Yes.

21         THE COURT:  And you do have some strong feelings or

22    opinions about the events.

23         PROSPECTIVE JUROR:  Yes.

24         THE COURT:  All right.  So ultimately, this is the

25    question:  Are you confident that if selected as a juror in

1    this case you could set aside any preexisting views that you

2    have and listen to the evidence presented in the courtroom

3    with respect to these three individuals and decide the case

4    based on that evidence fairly and impartially as a juror?

5         PROSPECTIVE JUROR:  I'm not sure that I could.  I would

6    like to say that I could, but I've been thinking about it all

7    day and I'm not really sure that I could be impartial.

8         THE COURT:  I need to explore that a little bit because

9    that's not an atypical answer.  I'm not looking for an

10   absolute answer, but I am searching for whether you are

11   confident, whether you believe that you could, not just try,

12   but you believe that you would succeed in setting aside any

13   beliefs formed generally with respect to January 6, and if

14   selected as a juror listen to the evidence with respect to

15   these three men and decide the case based on that evidence in

16   a fair and impartial manner.

17     So, again, the question is are you reasonably confident

18   that you could do that?

19        PROSPECTIVE JUROR:  I don't think I am reasonably

20   confident.

21        THE COURT:  You don't think you would be?

22        PROSPECTIVE JUROR:  I don't think I am.

23        THE COURT:  You think you couldn't shake the views that

24   you have formed with respect to January 6.

25        PROSPECTIVE JUROR:  I couldn't shake the feelings that

1    it elicited in me.

2            THE COURT:  And you think that those feelings would

3    affect your assessment of the evidence and decision with

4    respect to the guilt or innocence for the conduct that they're

5    alleged to have engaged in with respect to these three

6    defendants?

7            PROSPECTIVE JUROR:  I'm -- I'm -- sorry not to just

8    give a short answer.

9            THE COURT:  That's all right.  We're looking for

10   candor, not brevity.

11           PROSPECTIVE JUROR:  Right.  I feel like I can't

12   imagine -- I kind of feel like if things have gotten this far

13   for these charges, that there must be enough evidence and, you

14   know, and so in my mind I would find it hard to see, you know,

15   what might disprove that.

16           THE COURT:  That's a somewhat different question, but

17   an important one in any criminal case.  Just because someone

18   has been indicted or charges otherwise have been brought

19   against them does not establish their guilt.

20           PROSPECTIVE JUROR:  Right.

21           THE COURT:  It's a standard that the government has to

22   meet just to bring the charges.  But in order to convict on

23   those charges is a higher standard.  So if you believe that

24   just because the charges have been brought they are guilty,

25   then that's a different issue and I need to explore that with

1    you if that's your belief.

2         PROSPECTIVE JUROR:  I guess I -- I believe that there's

3    a lot of work that has gone into perhaps this situation in

4    particular.

5         THE COURT:  You mean the January 6 situation?

6         PROSPECTIVE JUROR:  Yes.  Yes.  And the -- you know, to

7    find people who were there who broke the law.  So I don't

8    think it comes lightly to get to that point.  I mean, I don't

9    know.  Having not sat through the trial yet, I don't know what

10   evidence there might be that could disprove that.  I just know

11   I'm already leaning in one direction.

12        THE COURT:  All right.  Any follow-up questions?

13        MR. VALENTINI:  Good afternoon.  My name is Francesco

14   Valentini.  I'm one of the prosecutors in this case.

15     Let me follow up on some of the questions the judge was

16   just asking you.  If you're selected as a juror in this case,

17   before the jury retires to begin deliberations, the judge will

18   instruct you as to what the law is and what law you are

19   required to apply as a juror in this case.  And for each

20   charge the judge, I expect, will give you a set of elements

21   that the jury -- and only if the jury finds each of those

22   elements can the jury and should the jury convict, find the

23   defendants guilty.

24        THE COURT:  And finds them guilty beyond a reasonable

25   doubt.

1          MR. VALENTINI:  Of course.  That is not unlike any

2     other criminal case.  Is there something about your feelings

3     about January 6 that would make it impossible to follow those

4     directions if you are selected as a juror in this case?

5          PROSPECTIVE JUROR:  I don't think that it's impossible.

6     I just think it would be challenging.  I'm just trying to be,

7     you know, fair.  Would I want to be completely open-minded?  I

8     would like to think I would go in completely open-minded and,

9     yes, you're guilty -- sorry, you're innocent until proven

10     guilty.  And I've believed that my whole life, I mean, that's

11     how I've been raised so I would hope I would go into a

12     situation like that.  This was a particularly powerful event

13     and so, you know, that's why I have doubts.

14          MR. VALENTINI:  Thank you.

15          THE COURT:  Anything, Mr. Pierce?

16          MR. PIERCE:  Just very quickly, Your Honor.

17        Good afternoon, ma'am.  And thank you for your forthright

18     answers.  You would not come into this trial open-minded about

19     the defendants, would you?

20          PROSPECTIVE JUROR:  I would want to, and I would hope

21     that I could, but I can't say a hundred percent that I would.

22          MR. PIERCE:  Thank you very much.  Appreciate it.

23          THE COURT:  Thank you very much.  You may step down.

24          PROSPECTIVE JUROR:  Thanks.

25        (Juror 0289 steps down.)

1          THE COURT:  Do I have a motion?

2          MR. PIERCE:  Yes.  We move to strike for cause,

3     Your Honor.

4          THE COURT:  Government?

5          MR. VALENTINI:  Your Honor, this is a close case.  For

6     much of the questioning I got the impression that the

7     prospective juror was referring more to feelings as opposed to

8     a general inability to be objective in assessing the evidence.

9     However, we will not oppose the request of the defense to

10    strike this juror.

11         THE COURT:  I have the same feeling that this is a

12    close case, but it does seem to me that she falls just over

13    the border.  And without objection, I will strike juror 0289

14    for cause.

15      (Juror 0643 steps up.)

16         THE COURT:  This is juror 0643.  And you followed the

17    events of January 6 on that day or only after that day?

18         PROSPECTIVE JUROR:  After that day.

19         THE COURT:  You've seen TV, video and so forth.

20         PROSPECTIVE JUROR:  Videos and...

21         THE COURT:  And I assume that you've formed some views

22    or opinions with respect to January 6 and those events.

23         PROSPECTIVE JUROR:  Not really.

24         THE COURT:  Not really strong opinions.

25         PROSPECTIVE JUROR:  Not really strong.  But for me to

express myself in English is a little bit challenging than in

Spanish.  So I understand everything.  The only thing is

challenging for me to speak in English, fluent.

THE COURT:  All right.  So let me ask you two

questions.  The first question is whether you would be able to

set aside any views that you do have, and if selected as a

juror in this case, listen to the evidence in the courtroom

and decide the case based on that evidence fairly and

impartially?

PROSPECTIVE JUROR:  Yes.

THE COURT:  And the second question is, do you think

that your limitations in expressing yourself in English would

make it hard for you to speak up as a juror when -- if you

were selected as a juror, when the jury was deliberating on

the case and discussing the case?  Would you be willing to

speak up and say, well, this is what I think?

PROSPECTIVE JUROR:  Yes.  I can do that.

THE COURT:  All right.

Questions.

MR. VALENTINI:  No questions from the government.

MR. PIERCE:  Good afternoon, ma'am.

PROSPECTIVE JUROR:  Good afternoon.

MR. PIERCE:  So I understand your answer to this last

question the judge asked you is that you would be willing to

speak up.

1    PROSPECTIVE JUROR:  I willing.  Yes.  I think I can.  I

2    understand everything.

3    MR. PIERCE:  Yes.

4    PROSPECTIVE JUROR:  It will be challenging for me to

5    express, but I can writing too.  I can express myself by

6    writing better than speak up.  But I understand everything.

7    MR. PIERCE:  So, again, and I understand you're saying

8    you would be willing to and I certainly appreciate that.  But

9    what you're pointing out about your language issues is more so

10   that it would be -- it could be challenging for you orally to

11   articulate what your views are to other members of the jury.

12   PROSPECTIVE JUROR:  Yes.  I think it will be a little

13   bit challenging.

14   MR. PIERCE:  Okay.  No further questions.  Thank you,

15   Your Honor.

16   THE COURT:  Thank you very much, ma'am.

17   PROSPECTIVE JUROR:  Thank you.

18   (Juror 0643 steps down.)

19   THE COURT:  All right.  Next juror, please.

20   (Juror 1855 steps up.)

21   THE COURT:  This is juror 1855.  We'll start with

22   No. 42, and that is that you have a vision, language, or

23   hearing problem or some other difficulty that could interfere

24   with your ability to hear or understand evidence in the case?

25   PROSPECTIVE JUROR:  My vision isn't that well.  I'm

1    nearsighted.

2            THE COURT:  But will you be able to see videos that are

3    played as part of the evidence in the case?  You'll have a

4    monitor right there in front of you if you were selected as a

5    juror.

6            PROSPECTIVE JUROR:  Oh.  Then yes.

7            THE COURT:  All right.  Are you currently employed?

8            PROSPECTIVE JUROR:  No.

9            THE COURT:  Have you been employed before?

10           PROSPECTIVE JUROR:  Yeah.

11           THE COURT:  Where have you worked?

12           PROSPECTIVE JUROR:  Worked at a movie theater in March,

13   till March.

14           THE COURT:  For how long did you work there?

15           PROSPECTIVE JUROR:  Eight months.

16           THE COURT:  And before that did you work anywhere?

17           PROSPECTIVE JUROR:  Yes.  But it was -- it was a time

18   gap in between that too.

19           THE COURT:  I'm sorry.  I can't hear you.

20           PROSPECTIVE JUROR:  It was a time gap between that too.

21           THE COURT:  That former job, what was that?  Just tell

22   us what kind of work it was.

23           PROSPECTIVE JUROR:  I worked in the movie theater.

24           THE COURT:  The other time was in a movie theater too?

25           PROSPECTIVE JUROR:  No.  It was -- it was like a line

1    cook job.

2            THE COURT:  All right.  Questions from the government?

3    He's not answered yes to any other questions.

4            MR. VALENTINI:  Good afternoon.  My name is Francesco

5    Valentini, one of the prosecutors in this case.

6            PROSPECTIVE JUROR:  Hi.

7            MR. VALENTINI:  In response to the judge's questions,

8    you said that you recently worked in a movie theater.

9            PROSPECTIVE JUROR:  Yes.

10           MR. VALENTINI:  And you worked there for about eight

11   months?

12           PROSPECTIVE JUROR:  Yes.

13           MR. VALENTINI:  And before that there was -- you worked

14   as a line cook before.

15           PROSPECTIVE JUROR:  Yes.

16           MR. VALENTINI:  Was that at a restaurant.

17           PROSPECTIVE JUROR:  Yes.

18           MR. VALENTINI:  But there was a time gap between these

19   two employments, between these two jobs?

20           PROSPECTIVE JUROR:  Yes.

21           MR. VALENTINI:  So were you off work for a little bit?

22           PROSPECTIVE JUROR:  Yeah.  I was unemployed for a

23   while.

24           MR. VALENTINI:  When you say a while, do you remember

25   how long it was, more or less?

1          PROSPECTIVE JUROR:  Maybe like four to five months

2     maybe.

3          MR. VALENTINI:  How long do you remember -- and I

4     understand it was some time ago, but do you remember how long

5     you were employed as a line cook for?

6          PROSPECTIVE JUROR:  I wasn't there that long.  I think

7     it was like two months.

8          MR. VALENTINI:  Okay.  Two months.  Again, before that,

9     did you have any other jobs before?

10          PROSPECTIVE JUROR:  Yeah.  Yeah, I worked at -- it was

11     like during the summer, like, I worked at the stadium as a

12     concession stand worker.

13          MR. VALENTINI:  Have you heard of the events of January

14     6, 2021, at the Capitol?

15          PROSPECTIVE JUROR:  No.

16          MR. VALENTINI:  Okay.  Have you ever served as a juror

17     in another case?

18          PROSPECTIVE JUROR:  No.

19          MR. VALENTINI:  How about a situation like this?  Have

20     you ever been called up for jury duty where you were asked

21     questions like you're being asked questions today?  Has that

22     ever happened to you?

23          PROSPECTIVE JUROR:  No.  Never.

24          MR. VALENTINI:  I have no further questions.  Thank

25     you.

1          THE COURT:  Mr. Pierce?

2          MR. PIERCE:  Good afternoon, sir.  Do you feel --

3   having not been involved with these kind of situations before,

4   right, jury service, right?

5          PROSPECTIVE JUROR:  Never.

6          MR. PIERCE:  In light of that, do you feel confident

7   that if you're selected for the jury and you're asked to hear

8   the evidence, you're given instructions by the judge and

9   you're asked to go back and deliberate with your fellow

10  jurors, do you feel confident that you will, if you have views

11  of the evidence and the -- and what the judge instructs you

12  on, that you will be comfortable in articulating those views

13  as assertively as necessary to get your views across to the

14  other jurors?

15         PROSPECTIVE JUROR:  Um, not really, no.

16         MR. PIERCE:  And why is that?

17         PROSPECTIVE JUROR:  Um, well...

18     (Pause.)

19         THE COURT:  So what Mr. Pierce is asking you is, if

20  you're selected as a juror and you sat in that jury box for

21  three days and listened to the evidence, and then I instructed

22  you on the law and sent you back with the other jurors to

23  decide whether these three men were guilty or innocent of the

24  charges against them, would you be able to talk to the other

25  jurors and tell the other jurors your views and speak up and

1     state, well, I think this or I think that?  Would you be

2     comfortable doing that?

3          PROSPECTIVE JUROR:  Oh, yeah.  So it's just my

4     individual views about it?  It's not like a collective?  Or it

5     is a collective?

6          THE COURT:  It is a collective.  The jury makes a

7     decision together, but each juror has to agree with that

8     decision, so each juror has to express their views.

9          PROSPECTIVE JUROR:  So I just express -- like would I

10    be able to express like how I feel about the situation?

11         THE COURT:  About the case based on the evidence that's

12    presented, yes.  Would you be comfortable doing that with the

13    other jurors?

14         PROSPECTIVE JUROR:  Yes.

15         THE COURT:  You're making a little bit of an expression

16    that indicates to me yes but maybe not real comfortable?

17         PROSPECTIVE JUROR:  Yeah.

18         THE COURT:  All right.

19         MR. PIERCE:  No further questions, Your Honor.

20         THE COURT:  All right.  Thank you, sir.

21       Well, let me ask you one follow-up.

22         PROSPECTIVE JUROR:  Okay.

23         THE COURT:  So the events of January 6, 2021, do you

24    know what I'm referring to?

25         PROSPECTIVE JUROR:  Is this the -- like the -- I don't

1    know how to describe it.  It's like when -- like was it when

2    like the Capitol was like raided or something?  During the --

3         THE COURT:  So what do you know about it?  Do you know

4    much about that?  Have you followed the news about those

5    events?

6         PROSPECTIVE JUROR:  It was like during the election,

7    right?

8         THE COURT:  Yeah.  It was two and a half years ago.

9         PROSPECTIVE JUROR:  I watched some of it on the news.

10   Didn't really dive into it too much, but yeah.

11        THE COURT:  Have you formed any strong views about

12   whether what happened was good or bad or right or wrong?

13        PROSPECTIVE JUROR:  Um -- I think yeah, at the time I

14   did.  Yeah.

15        THE COURT:  Do you have any strong views now?

16        PROSPECTIVE JUROR:  Not really, no.

17        THE COURT:  Whatever your views may be, would you be

18   able to set those aside and listen to the evidence in the case

19   and make a decision based on the evidence?

20        PROSPECTIVE JUROR:  Yes.

21        THE COURT:  All right.  You may step down.  Thank you.

22        PROSPECTIVE JUROR:  Okay.  Thank you.

23      (Juror 1855 steps down.)

24        THE COURT:  Anything before we move on to the next

25   juror?

1          MR. PIERCE:  We would move to strike.

2          THE COURT:  You've got to come to the microphone.  The

3     court reporter can't hear you, Mr. Pierce.

4          MR. PIERCE:  We would move to strike for cause,

5     Your Honor.  I think his answers and also his demeanor makes

6     it clear he would have real trouble really standing up for

7     what he thinks and would just be swayed with whatever the

8     group consensus is.

9          THE COURT:  I think he came out of his shell a little

10    bit.  If the question is whether he's informed about the

11    events, there's nothing that requires that jurors be informed

12    about events.  So that is not a reason to strike him.

13         MR. PIERCE:  I don't think, Your Honor -- and perhaps I

14    wasn't clear.  I don't think the fact that he's uninformed

15    about the events is an issue.  I think from -- I just think

16    from a -- whether it's a strength of personality standpoint or

17    youth standpoint or lack of confidence standpoint, I don't

18    think he's going to meaningfully engage in deliberations based

19    on what we heard from him.

20         THE COURT:  The government's view.

21         MR. VALENTINI:  Your Honor, we would not oppose the

22    request to strike the juror on the latter grounds that's been

23    articulated.  We do share a concern that the juror was not

24    confident that he would be able to or -- be able or willing to

25    engage in deliberations in the jury room.  And that is the

1    nature of our concern, and that's why we're not opposing the

2    request to strike.

3         THE COURT:  All right.  With each side having that

4    view, I will go ahead and strike the juror.  It's not on the

5    basis of his lack of knowledge about the January 6th events,

6    but rather on his hesitance with respect to participation as a

7    juror during deliberations.  And for that reason, we will go

8    ahead and strike juror 1855 for cause.

9         Next juror, please.

10        (Juror 0603 steps up.)

11        THE COURT:  All right.  This is juror 0603.  Let's

12   start at the back end.  Do you feel that you might not be

13   available for a jury trial over the course of the next week?

14        PROSPECTIVE JUROR:  No, sir, because I work overnight

15   in La Plata at Walmart, and I work from 10:00 to 7:30 in the

16   morning.  That's where I came from this morning.  I also have

17   to move.  My mother -- I stay with my mother now.  My mother's

18   moving to Virginia and I have to move.  I'm packing my things

19   now.  So I won't be available because I have to move.

20        THE COURT:  And you've also circled question 45, which

21   is the last question.

22        PROSPECTIVE JUROR:  Yes.

23        THE COURT:  Why was that?

24        PROSPECTIVE JUROR:  Because I have a lot of things

25   going on, and doing this -- I'm just beginning to get myself

1    back together.  I have a lot of bills to pay, and I'm just now

2    getting back on my feet, and I have to work.  I'm just feeling

3    uncomfortable doing this.  I never did this before.  I'm very

4    uncomfortable.

5              THE COURT:  Have you been a juror before?

6              PROSPECTIVE JUROR:  No.

7              THE COURT:  Have you been called to jury duty before?

8              PROSPECTIVE JUROR:  No.

9              THE COURT:  Never?

10             PROSPECTIVE JUROR:  No.

11             THE COURT:  Have you lived in the District of Columbia

12    for all your life?

13             PROSPECTIVE JUROR:  Yes.

14             THE COURT:  So I guess I'll ask the question this way:

15    With all the things going on in your life, and with your

16    employment on the late shift and your mother moving and your

17    having to move yourself, if you were selected as a juror, do

18    you think that you would be distracted by all those worries

19    and concerns?

20             PROSPECTIVE JUROR:  Yes.  Because I have to get a lot

21    of things done.  And right now I'm very tired because the way

22    I work and stuff, I stock a lot and I'm on my feet and I'm

23    very tired.  I haven't been able to get any sleep for the last

24    two, three weeks because I've been packing.  I just don't feel

25    comfortable.

1           THE COURT:  All right.  Any follow-up questions?

2           MR. VALENTINI:  No, Your Honor.

3           MR. PIERCE:  No, Your Honor.  Thank you.

4           THE COURT:  Thank you very much.

5           PROSPECTIVE JUROR:  You're welcome.

6           THE COURT:  You may step down.

7        (Juror 0603 steps down.)

8           THE COURT:  Do I have a motion with respect to juror

9    0603?

10          MR. PIERCE:  We move to strike for cause based on her

11   personal circumstances, Your Honor.

12          THE COURT:  All right.  Hoping that the court reporter

13   caught what you said --

14          MR. PIERCE:  We would move to strike for cause based on

15   her personal circumstances, Your Honor.

16          MR. VALENTINI:  The government doesn't oppose the

17   request.

18          THE COURT:  We will go ahead and strike juror 0603 for

19   cause on that basis.  And bring the next juror in, please.

20   And we'll take a break in a couple minutes.

21        (Juror 1664 steps up.)

22          THE COURT:  This is juror 1664.  And you've been a

23   juror in cases before.

24          PROSPECTIVE JUROR:  I have.

25          THE COURT:  How often?

1          PROSPECTIVE JUROR:  How often in D.C.?  Well, this is

2     my third jury duty in three years.

3          THE COURT:  Third in three years?

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Well, thank you.  And my apologies that the

6     system is that demanding of you.

7        Let's -- it's the third in three years.  And have you been

8     a juror before that as well?

9          PROSPECTIVE JUROR:  Yeah.  I've been here for 25 years.

10         THE COURT:  Let's deal with the last two times.

11         PROSPECTIVE JUROR:  Okay.

12         THE COURT:  Were they both in Superior Court or was one

13    here as well?

14         PROSPECTIVE JUROR:  Superior.

15         THE COURT:  Both criminal cases?

16         PROSPECTIVE JUROR:  Yes.

17         THE COURT:  Tell me the general subject matter of each

18    case.  Drugs, murder?

19         PROSPECTIVE JUROR:  The last one was pled out before

20    the jury actually started.  So I was in the jury but didn't

21    participate.

22         THE COURT:  And the other one?

23         PROSPECTIVE JUROR:  The other one was a fight in Union

24    Station, something like that.

25         THE COURT:  So it was an assault charge?

1          PROSPECTIVE JUROR:  Yeah, an assault charge.

2          THE COURT:  You don't have to tell me the outcome, but

3    was the jury able to reach a verdict in that case?

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  And is there anything about either of those

6    experiences as a juror that would make it difficult for you to

7    be fair and impartial as a juror in this case?

8          PROSPECTIVE JUROR:  No.

9          THE COURT:  Is there anything about any of your

10   experiences as a juror in other cases that would make it

11   difficult for you to be fair and impartial as a juror if you

12   were selected in this case?

13         PROSPECTIVE JUROR:  No.

14         THE COURT:  All right.  You have indicated that the

15   nature of the charges -- I'm sorry.  I'm looking at the wrong

16   question.  You or someone close to you has worked for a law

17   enforcement agency?

18         PROSPECTIVE JUROR:  Yeah.  I work for the Financial

19   Crimes Enforcement Network which is technically a law

20   enforcement, national security agency.

21         THE COURT:  It focuses on national security in the law

22   enforcement --

23         PROSPECTIVE JUROR:  It's focused on anti-money

24   laundering, yeah, national security.

25         THE COURT:  How long have you worked there?

1          PROSPECTIVE JUROR:  Over 20 years.

2          THE COURT:  Do you think that your employment there

3    would make it difficult for you to be fair and impartial as a

4    juror in this case?

5          PROSPECTIVE JUROR:  No.

6          THE COURT:  You live or work close to the Capitol?  Is

7    that right?

8          PROSPECTIVE JUROR:  I was detailed to the Senate

9    Banking Committee for almost two years recently.

10          THE COURT:  Recently.

11          PROSPECTIVE JUROR:  Yeah.

12          THE COURT:  What about on January 6, 2021?

13          PROSPECTIVE JUROR:  Technically I had just started as a

14    detail.

15          THE COURT:  Were you on the Capitol --

16          PROSPECTIVE JUROR:  No.

17          THE COURT:  Do you think that your detail and work with

18    the congressional committee would make it difficult for you to

19    be fair and impartial in this case?

20          PROSPECTIVE JUROR:  No.

21          THE COURT:  You followed the events -- well, you

22    weren't present at the Capitol on January 6.

23          PROSPECTIVE JUROR:  No.

24          THE COURT:  And you didn't have any family that were

25    present.

1          PROSPECTIVE JUROR:  Correct.

2          THE COURT:  What about close friends?

3          PROSPECTIVE JUROR:  No, I did not.

4          THE COURT:  You followed the events on January 6 or

5     only after January 6?

6          PROSPECTIVE JUROR:  I don't understand the question.

7          THE COURT:  Did you follow the events as they were

8     occurring on television?

9          PROSPECTIVE JUROR:  Oh, no, I did not.

10         THE COURT:  But you've seen coverage of the events

11    since then.

12         PROSPECTIVE JUROR:  Correct.

13         THE COURT:  And you've also seen coverage of the

14    congressional hearings.

15         PROSPECTIVE JUROR:  Yeah.  I live in D.C.  It's hard to

16    miss.

17         THE COURT:  Now, whatever opinions you may have formed

18    with respect to the events of January 6, the question for you

19    is this:  Are you confident that you could set aside those

20    opinions and if selected as a juror in this case listen to the

21    evidence presented in the courtroom, make a decision based on

22    that evidence fairly and impartially as a juror?

23         PROSPECTIVE JUROR:  Yes.

24         THE COURT:  All right.

25       Questions.

1          MR. VALENTINI:  The government does not have any

2     questions.

3          THE COURT:  Mr. Pierce.

4          MR. PIERCE:  No questions, Your Honor.  Thank you.

5          THE COURT:  Thank you very much, sir.  You may step

6     down.

7       (Juror 1664 steps down.  Juror 0501 steps up.)

8          THE COURT:  This is juror 0501.  Ma'am, you've been a

9     juror before.  Is that correct?

10         PROSPECTIVE JUROR:  Yes.

11         THE COURT:  Frequently?

12         PROSPECTIVE JUROR:  No.

13         THE COURT:  I'm going to ask you to speak loudly into

14    the microphone.  And when was the last time you were a juror?

15         PROSPECTIVE JUROR:  I'm going to say maybe five years

16    ago, but not in this type of court.

17         THE COURT:  Over across the street in Superior Court.

18    Do you remember what kind of case that was?  Was it a criminal

19    case or a civil case?

20         PROSPECTIVE JUROR:  Civil.

21         THE COURT:  I'm sorry?

22         PROSPECTIVE JUROR:  Civil.

23         THE COURT:  What was the general subject matter?  Was

24    it an employment case?  Was it a contract, a car accident?

25    What kind of case was it?

1            PROSPECTIVE JUROR:  I think it was a domestic.

2            THE COURT:  A domestic case.  You don't have to tell me

3      what the outcome was, but was the jury able to reach a

4      verdict?

5            PROSPECTIVE JUROR:  Yes.

6            THE COURT:  And was there anything about that

7      experience that would make it difficult for you to be fair and

8      impartial as a juror in this case?

9            PROSPECTIVE JUROR:  No.

10            THE COURT:  Say it orally so he can pick it up.

11            PROSPECTIVE JUROR:  No.

12            THE COURT:  Thank you.  And your other service as a

13      juror, have you ever served on a criminal case?

14            PROSPECTIVE JUROR:  It may have been over 10 years or

15      15 years ago.

16            THE COURT:  So any of those experiences as a juror, do

17      any of those times that you were a juror make it difficult for

18      you to be fair and impartial if selected as a juror in this

19      case?

20            PROSPECTIVE JUROR:  No.

21            THE COURT:  And with respect to the events of January

22      6, 2021, did you follow those events on television on that day

23      or only after that day?

24            PROSPECTIVE JUROR:  I would say a little bit that day

25      and a little bit after.

1          THE COURT:  All right.  And you may have formed some

2     views with respect to those events.  What I want to know is

3     the following:  Are you confident that you could set aside

4     whatever views you have formed, and if selected as a juror,

5     listen to the evidence presented in the courtroom and decide

6     the case with respect to these three gentlemen fairly and

7     impartially as a juror based on that evidence?

8          PROSPECTIVE JUROR:  Yes.

9          THE COURT:  All right.  Questions?

10          MR. VALENTINI:  No questions, Your Honor.

11          MR. PIERCE:  Just very briefly.

12     Good afternoon, ma'am.  Do you have strong views about what

13     happened on January 6?

14          PROSPECTIVE JUROR:  I'm not sure of your question.

15          THE COURT:  Well, the judge referenced the notion that

16     you may have some views on January 6 and he asked whether you

17     could be fair despite that.  And I think you answered yes.

18          PROSPECTIVE JUROR:  Correct.

19          MR. PIERCE:  Appreciate the answer.  I'm just probing a

20     little bit, sort of, do you have very strong views about what

21     happened on January 6, one way or another?

22          PROSPECTIVE JUROR:  I'm not sure.  No, I don't think

23     so.

24          MR. PIERCE:  Okay.  Thank you, Your Honor.

25          THE COURT:  I have one more question, ma'am.  I know

1    you're retired.  Did you work before you retired?

2           PROSPECTIVE JUROR:  Yes.

3           THE COURT:  What did you do?

4           PROSPECTIVE JUROR:  Computer support tech.

5           THE COURT:  I'm sorry.  I can't understand you.

6           PROSPECTIVE JUROR:  Computer support tech.

7           THE COURT:  Computer support tech.  All right.  Thank

8    you very much.

9           PROSPECTIVE JUROR:  I have a question.

10          THE COURT:  Okay.  Let Mr. Pierce ask the question he

11   wants to ask.

12          MR. PIERCE:  Obviously, this case is very important to

13   the defendants and to the government.  So do you -- just kind

14   of observing the back and forth with the judge, and sometimes

15   it's a little bit hard to hear you just with the volume of

16   your voice.  And I just wanted to make sure -- and maybe it's

17   the proximity to the microphone.

18     I want to make sure you feel confident that if you're

19   selected to be on the jury and you listen to the evidence,

20   hear the judge's instructions, and you go back to the jury

21   deliberation room, do you feel confident that you would be

22   able to have a vigorous back and forth with the other jurors

23   regarding your views of the case?

24          PROSPECTIVE JUROR:  Yes.

25          MR. PIERCE:  Okay.  Thank you.

```
 1              THE COURT:  Ma'am, you had a question.

 2              PROSPECTIVE JUROR:  Yes.  One of the questions, I don't

 3    remember the number, but was asking did I live near the

 4    Capitol.  What is the precipity [sic] of the Capitol do you

 5    mean?  Like how far away or how close?

 6              THE COURT:  How far you lived or worked away from the

 7    Capitol?

 8              PROSPECTIVE JUROR:  Yes.

 9              THE COURT:  Did you have something you wanted to

10    tell us?

11              PROSPECTIVE JUROR:  I just wanted to know how close

12    do you mean?  Because I do live in Capitol Hill.

13              THE COURT:  You do live in Capitol Hill?

14              PROSPECTIVE JUROR:  Yes, sir.

15              THE COURT:  All right.  I think that that probably

16    would qualify as being close, and I'm glad you raised it.  So

17    I'll just ask you this:  Did you feel particularly vulnerable

18    or worried because of where you lived, that the events could

19    impact you?

20              PROSPECTIVE JUROR:  More so of my grandchildren.

21              THE COURT:  Are they in the same area with you?

22              PROSPECTIVE JUROR:  They live with me.

23              THE COURT:  All right.  But nothing did happen on that

24    day.

25              PROSPECTIVE JUROR:  No.  Because I guess prior to, it
```

1    was like, couldn't go down certain streets, blocked off, so

2    that was concerning.  So.

3              THE COURT:  All right.  We appreciate that, and I'm

4    glad you raised it.  Thank you.

5         All right.  You may step down.

6         (Juror 0501 steps down.)

7              MR. PIERCE:  Your Honor?

8              THE COURT:  Yes, Mr. Pierce.

9              MR. PIERCE:  Again, I am always candid when I know it

10   might be a little bit of an uphill battle.  We would move to

11   strike for cause based on the concerns she had for her

12   grandchildren and also sort of the, you know, sort of the

13   ability to speak in a volume that could be heard and follow

14   things as rapidly as they might occur.  So we would move to

15   strike for cause.

16             THE COURT:  On the latter, it seemed to me that she was

17   sufficiently understanding the questions and responding to

18   them, and there's no requirement -- well, there's no

19   disqualification for being soft-spoken.

20        And with respect to the living close to the Capitol and

21   having concerns for her grandchildren, I don't think that's an

22   unusual concern for a grandmother and didn't seem to be

23   something that would affect her judgment and ability to be a

24   fair and impartial juror.  And therefore I will not strike her

25   for cause.

1          Let's bring in one last juror before we take a break.

2          (Juror 1714 steps up.)

3          THE COURT:  All right.  This is juror 1714.  And she

4   has responses to a few questions.  First is legal training.

5   Is that you or someone close to you?

6          PROSPECTIVE JUROR:  Most of my friends are lawyers.

7          THE COURT:  All right.  Speak into the microphone

8   rather than to me.

9          PROSPECTIVE JUROR:  I'm sorry.  Most of my friends are

10  lawyers.

11         THE COURT:  And that's not unusual in Washington.  My

12  question for you is whether any of those close friends who are

13  lawyers practice, to your knowledge, practice criminal law.

14         PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Have any of them been involved in any

16  January 6-related cases?

17         PROSPECTIVE JUROR:  No.

18         THE COURT:  And when you say some, one or more does

19  practice criminal law, as a prosecutor or as a defense lawyer?

20         PROSPECTIVE JUROR:  Defense.

21         THE COURT:  And with big firms, small firms?

22         PROSPECTIVE JUROR:  Oh, no.  She's independent.

23         THE COURT:  Independent.

24         PROSPECTIVE JUROR:  Mostly court-appointed.

25         THE COURT:  Do you think -- does she have any outsized

1    influence on you so that you would tend to favor the defense

2    perspective?

3              PROSPECTIVE JUROR:  No.

4              THE COURT:  All right.  Someone close to you has been

5    involved in the prosecution or defense of a criminal case.  Is

6    that the same person?

7              PROSPECTIVE JUROR:  Yes.

8              THE COURT:  All right.  You've served as a juror

9    before.

10             PROSPECTIVE JUROR:  Yes.

11             THE COURT:  Frequently?

12             PROSPECTIVE JUROR:  Numerous times, yes.  In both

13   federal and Superior Court.

14             THE COURT:  All right.  Let's try to remember the most

15   recent occasion.  Was it in Superior Court or this court?

16             PROSPECTIVE JUROR:  It was Superior Court.

17             THE COURT:  And how long ago was that, approximately?

18             PROSPECTIVE JUROR:  It was pre-pandemic.  So right

19   around --

20             THE COURT:  Four or five years ago.

21             PROSPECTIVE JUROR:  Right around 2019, 2020.

22             THE COURT:  With respect to that occasion, do you

23   remember whether it was a criminal case or a civil case?

24             PROSPECTIVE JUROR:  It was a criminal case.

25             THE COURT:  Okay.  Don't tell me the outcome, but tell

1    me the general subject matter.

2          PROSPECTIVE JUROR:  Trespass at the Senate.

3          THE COURT:  Trespass of the Senate.

4          PROSPECTIVE JUROR:  Mm-hmm.

5          THE COURT:  And that occurred independent of the

6    January 6 events, obviously.

7          PROSPECTIVE JUROR:  Correct.  Correct.

8          THE COURT:  Was the jury able to reach a verdict in the

9    case?

10          PROSPECTIVE JUROR:  Yes.  Although I was an alternate.

11    So I was not in the negotiations.

12          THE COURT:  So you were not there at the end.  Anything

13    about that experience that would make it difficult for you to

14    be fair and impartial?

15          PROSPECTIVE JUROR:  No.

16          THE COURT:  Federal court.  How long ago was that?

17          PROSPECTIVE JUROR:  Probably eight or 10 years.

18          THE COURT:  What kind of case was it?

19          PROSPECTIVE JUROR:  I sat on I think three juries

20    during two weeks, all of which were possession of a gun in the

21    commission of a crime.

22          THE COURT:  And you sat on each of those three juries?

23          PROSPECTIVE JUROR:  Yeah.

24          THE COURT:  You were very popular.  Was the jury able

25    to reach a verdict in each of those cases?

1          PROSPECTIVE JUROR:  There may have been one that hung,

2     but at least two, yes.

3          THE COURT:  Anything about those experiences that would

4     make it difficult for you to be a fair and impartial juror if

5     selected in this case?

6          PROSPECTIVE JUROR:  I don't think so.  The experience

7     of doing that many that quickly was kind of weird, but.

8          THE COURT:  It's kind of unusual.

9       All right.  From any of your jury experiences -- I'm

10    asking -- this is sort of repetitive, but from any of those

11    experiences, is there anything that would make it difficult

12    for you to be a fair and impartial juror if selected?

13         PROSPECTIVE JUROR:  No.

14         THE COURT:  You or someone close to you has worked for

15    a law enforcement agency?

16         PROSPECTIVE JUROR:  I worked for a very small office of

17    the Department of Treasury that was a law enforcement agency.

18    Very small.  And I was not a law enforcement officer myself.

19         THE COURT:  What's the name of that agency or entity?

20         PROSPECTIVE JUROR:  The Office of the Special Inspector

21    General for the Troubled Asset -- I don't even remember what

22    TARP is anymore -- Troubled Asset Rescue Program.

23         THE COURT:  All right.  So let's move to the January 6

24    events.  At that time did you live near the Capitol?

25         PROSPECTIVE JUROR:  Yes.  I live on Capitol Hill.

1      THE COURT:  Did that make you acutely concerned about

2   the events?

3      PROSPECTIVE JUROR:  Yes.

4      THE COURT:  And do you think that that sticks with you

5   today so that it might affect your ability to be a fair and

6   impartial juror?

7      PROSPECTIVE JUROR:  I do not know.  I would not think I

8   could judge an individual with -- the conduct of a large group

9   of people does not necessarily reflect the conduct of an

10   individual.

11      THE COURT:  So let me rephrase that a different way.

12   Are you confident that you would be able to listen to the

13   evidence and make a decision with respect to these three

14   individuals based on what they are alleged to have done and

15   what the evidence shows?

16      PROSPECTIVE JUROR:  I think so.

17      THE COURT:  Now, you observed the events of January 6

18   on TV on that day?

19      PROSPECTIVE JUROR:  Yes.

20      THE COURT:  And thereafter?

21      PROSPECTIVE JUROR:  Yes.

22      THE COURT:  Would you say you were a close observer or

23   an off and on observer?

24      PROSPECTIVE JUROR:  Pretty close.

25      THE COURT:  And you've also observed some of the

1    congressional hearings.

2        PROSPECTIVE JUROR:  Yes.

3        THE COURT:  And I take it that you formed some opinions

4    with respect to those events.

5        PROSPECTIVE JUROR:  Yes.

6        THE COURT:  And you also have an opinion with respect

7    to people who believe the 2020 presidential election was

8    stolen.

9        PROSPECTIVE JUROR:  Yes.

10        THE COURT:  All right.  On those two issues -- I'll ask

11    them independently -- but first with respect to your views and

12    opinions regarding the January 6 events.  Are you confident

13    that if you were selected as a juror you would be able to set

14    aside those preexisting views, listen to the evidence

15    presented in the courtroom, and make a decision with respect

16    to these three individuals and the charges they face based on

17    that evidence as a fair and impartial juror?

18        PROSPECTIVE JUROR:  Yes.

19        THE COURT:  And with respect to the beliefs about the

20    2020 presidential election, the same basic question:  Could

21    you set aside your personal views about people who believe the

22    2020 presidential election was stolen, and if selected as a

23    juror, decide this case with respect to these three

24    individuals based on the evidence presented and the charges

25    brought and the instructions that I gave you as a fair and

1    impartial juror?

2             PROSPECTIVE JUROR:  I think so.

3             THE COURT:  And then question No. 30 is whether you

4    would have difficulty putting aside what you've already

5    learned about the January 6th events on media, social media,

6    television, etc., whether you could put that aside and make a

7    decision about these individuals in this case based on the

8    evidence presented.

9             PROSPECTIVE JUROR:  The individuals based on that

10   evidence.  Yes.

11            THE COURT:  All right.  With that, any questions?  Oh,

12   I'll ask one other question.

13            PROSPECTIVE JUROR:  Sure.

14            THE COURT:  You're retired?

15            PROSPECTIVE JUROR:  Yes.

16            THE COURT:  Other than the brief time in the small

17   office of the Treasury Department, what was your occupation

18   for most of your career?

19            PROSPECTIVE JUROR:  For approximately 30 years I was a

20   journalist, a business writer and editor, mostly at *The*

21   *Washington Post*.  Followed by that, roughly 10 years as a

22   writer and editor in various federal government offices.

23            THE COURT:  Did you ever have occasion to deal in depth

24   with criminal law issues?

25            PROSPECTIVE JUROR:  No.

1          THE COURT:  All right.  Questions.

2          MR. VALENTINI:  Good afternoon.  My name is Francesco

3     Valentini.  I'm one of the prosecutors in this case.  Just a

4     very brief follow-up question on something the judge just

5     asked you a minute ago.  You said you worked as a journalist

6     for a number of years.

7          PROSPECTIVE JUROR:  Yes.

8          MR. VALENTINI:  Is there a specific area you covered or

9     a specific field or industry that you covered?

10          PROSPECTIVE JUROR:  Yes.  As a business writer I wrote

11     mostly about commercial real estate, some residential real

12     estate, and general personal finance, stock-markety kind of

13     things.

14          MR. VALENTINI:  Thank you very much.  I have no further

15     questions.

16          THE COURT:  Mr. Pierce.

17          MR. PIERCE:  Thank you, Your Honor.

18       Good afternoon, ma'am.  So when did you stop working at *The*

19     *Washington Post*?

20          PROSPECTIVE JUROR:  July 1, 2009.

21          THE COURT:  Not that that date sticks in her mind.

22       (Laughter.)

23          MR. PIERCE:  Do you still have friends or former

24     colleagues who work at *The Washington Post*?

25          PROSPECTIVE JUROR:  Most of the people I worked with

1    are also retired.

2              MR. PIERCE:  Have you had any discussions with anyone

3    at *The Washington Post* about January 6?

4              PROSPECTIVE JUROR:  No.

5              MR. PIERCE:  You mentioned I think after you were done

6    with *The Washington Post* that you did some journalism in, did

7    you say different government offices?

8              PROSPECTIVE JUROR:  Mostly I was a writer and editor at

9    various Treasury Department offices.

10             MR. PIERCE:  And either at *The Washington Post* or when

11   you were at the Treasury offices or other government offices,

12   was the law or legal issues ever one of the topics that you

13   covered?

14             PROSPECTIVE JUROR:  Not really.  Mostly financial

15   issues.

16             MR. PIERCE:  And you mentioned that you were a juror on

17   a case -- I believe you mentioned you were a juror in a case

18   that involved trespass to the Senate?

19             PROSPECTIVE JUROR:  Yes.

20             MR. PIERCE:  And did that case involve allegations of

21   people actually going into the Senate chamber?

22             PROSPECTIVE JUROR:  They were protesting the ACA

23   changes.

24             MR. PIERCE:  Oh, the Affordable Care Act.

25             PROSPECTIVE JUROR:  Yes.

1          MR. PIERCE:  And I apologize if I missed the answer if

2     the judge asked you.  Was there a verdict that was reached?

3          PROSPECTIVE JUROR:  Yes.

4          MR. PIERCE:  Do you feel that -- so in that case,

5     obviously, you received some instructions from that judge

6     regarding the applicable law.

7          PROSPECTIVE JUROR:  Mm-hmm.

8          MR. PIERCE:  Do you feel that despite that experience

9     that you would be able to sort of set that aside and just

10    listen to the instructions that are given by Judge Bates in

11    this case?

12         PROSPECTIVE JUROR:  Sure.  Yeah.  Yeah.

13         MR. PIERCE:  Do you feel like you would -- do you feel

14    like you would -- that your experience with prior -- a prior

15    case that involves similar legal issues perhaps --

16         THE COURT:  Perhaps.  We don't know that.

17         MR. PIERCE:  Perhaps.  -- lead you to try to use that

18    experience to sway other jurors on the case?

19         PROSPECTIVE JUROR:  I don't really see that they -- I

20    don't know.

21         MR. PIERCE:  You mentioned you lived on Capitol Hill,

22    and I think the phrase you used -- and please correct me if I

23    get it wrong -- that you were, I think you said acutely

24    concerned.

25         PROSPECTIVE JUROR:  Yeah.

 1          MR. PIERCE:  And that's because you were there on

 2     Capitol Hill that day.

 3          PROSPECTIVE JUROR:  I live on Capitol Hill five blocks

 4     from the Capitol.

 5          MR. PIERCE:  Okay.  And then finally -- and I'll just

 6     break this up into two parts.  It sounds like from the answers

 7     that you do have strong views about what happened on

 8     January 6.

 9          PROSPECTIVE JUROR:  Yeah.

10          MR. PIERCE:  And what are those views?

11          PROSPECTIVE JUROR:  Do I have to answer that?

12          THE COURT:  I allow a general question where you can

13     say, well, I -- you know, in a couple of words.  But I don't

14     think you should feel that you need to delve into your

15     personal views at any length.  But if you could just tell him

16     whether you thought the events were bad in whatever language

17     you want to use, you can do that.

18          PROSPECTIVE JUROR:  Five people died during the

19     desecration of the Capitol five blocks from my house.  Yes, I

20     have opinions.

21          MR. PIERCE:  And who is it your understanding that

22     died?

23          THE COURT:  Well, we're not going to delve into it at

24     length, Mr. Pierce.

25          MR. PIERCE:  Okay.  Thank you, Your Honor.  The final

1     question is you -- I believe you mentioned you also had some

2     strong views about individuals who felt that the 2020 election

3     was stolen.

4             PROSPECTIVE JUROR:  Yes.

5             MR. PIERCE:  And what are your views about those

6     individuals?

7             PROSPECTIVE JUROR:  I don't understand how somebody can

8     believe in a lie like that.

9             MR. PIERCE:  Okay.  Thank you very much, Your Honor.

10        Thank you, ma'am.

11            MR. VALENTINI:  May I ask just one very brief follow-up

12    question?  Very different topic.  You mentioned you worked at

13    the Department of the Treasury at some periods of time, and at

14    first it was my understanding that you only worked with, I

15    think in D.C. there, for SIGTARP.  Right?

16            PROSPECTIVE JUROR:  I worked at SIGTARP, I also worked

17    at the Office of Financial Research, which is also part of

18    Treasury.

19            MR. VALENTINI:  My question is, did you ever work at

20    the Office of Foreign Asset Control?

21            PROSPECTIVE JUROR:  No.

22            MR. VALENTINI:  Thank you.

23            PROSPECTIVE JUROR:  They were upstairs.

24            THE COURT:  All right.  Thank you very much.  You may

25    step down.

1          PROSPECTIVE JUROR:  Thank you.

2       (Juror 1714 steps down.)

3          THE COURT:  All right.  Mr. Pierce.

4          MR. PIERCE:  Move to strike for cause, Your Honor.

5    Sort of, number one, sort of the degree of emotional hostility

6    she displays honestly with respect to January 6 and people who

7    think --

8          THE COURT:  Emotional hostility?  Hostility to whom?

9          MR. PIERCE:  In my own view, she is so overtly hostile

10   that I think it would be impossible for her to be fair and --

11   and when you asked her, you know, she said she was acutely

12   concerned and she does not know if that would affect her being

13   fair, she said I think so.  She prevaricated a lot in your,

14   you know, in the formation of your questions regarding sort of

15   her confidence and her ability to be fair and set that aside.

16   I just think -- I don't think it's fair to the defendants to

17   have this juror on the jury.

18         THE COURT:  Well, I don't have the same sense of this

19   juror that you seem to have, Mr. Pierce, but I'll listen to

20   the government if the government has something it wants to

21   say.

22         MR. VALENTINI:  Your Honor, we don't have much to add.

23   I think the juror was very definitive when asked about the

24   relevant legal standard, which is would you be able to be a

25   fair and impartial juror if you're selected as a juror in this

1  case, and that should be the end of the inquiry.  The fact

2  that someone walks into jury duty with some views is not

3  improper in and of itself, and this juror has made clear that

4  she will be able to be fair and impartial.

5      THE COURT:  And I agree with that, and also the

6  hostility that the defense counsel is noting seems to me to be

7  most likely from a single question that he asked, that she

8  didn't really want to answer, that I said, no, you're going to

9  have to give him a little bit of an answer out of respect to

10  the question he's asking.  And she was just, I would say not

11  hostile but blunt in terms of what her sense of it was.  And

12  that bluntness does not disqualify her as a juror.  I

13  therefore will not strike her for cause.

14    We're now going to take a break.  We'll take a 15-minute

15  break.  Mr. Wayne, if no one else, deserves it because we've

16  been going for a while and I've stretched it a little far.

17  We're at 18 now, so we only need four more jurors.  So I think

18  we're going to get the jury selection finished this afternoon

19  but we probably won't get much else done this afternoon.

20      MR. VALENTINI:  Thank you, Your Honor.  And to that

21  point, I was going to ask if it would be permissible,

22  understanding that maybe there's some outside chance that

23  we'll get opening statements done, but would it be okay with

24  the Court if we're to tell our first witness that she no

25  longer --

1          THE COURT:  You can release witnesses.  We will not get

2     to any witnesses today.

3          MR. VALENTINI:  Thank you, Your Honor.

4          THE COURT:  All right.  See you in 15 minutes.

5       (Recess from 3:43 p.m. to 4:01 p.m.)

6       (Juror 1289 steps up.)

7          THE COURT:  This is juror 1289.  You answered yes to

8     question No. 7, which was the question regarding the

9     presumption of innocence, and whether you would have any

10    difficulty following that requirement of the law, which is

11    that a defendant, including these three defendants, are

12    presumed innocent unless and until the government proves their

13    guilt beyond a reasonable doubt.

14         PROSPECTIVE JUROR:  I put a question mark because I

15    didn't catch it when you were reading it.  But I don't have

16    any problem, now that you read it.

17         THE COURT:  All right.  You also answered yes to

18    question No. 10, which is some legal training either you or

19    someone close to you has.

20         PROSPECTIVE JUROR:  Yes.

21         THE COURT:  Who is that?

22         PROSPECTIVE JUROR:  My aunt.

23         THE COURT:  Your aunt is a lawyer?

24         PROSPECTIVE JUROR:  She's in school for it.

25         THE COURT:  I'm sorry?

1          PROSPECTIVE JUROR:  She's in school.  School.

2          THE COURT:  And then the question, whether you've

3     formed specific opinions concerning defense attorneys,

4     prosecutors, law enforcement officers, or accused persons that

5     could affect you in deciding the case.

6          PROSPECTIVE JUROR:  I work in the field.  I'm an

7     officer myself in parking.  So that's why I chose that

8     question.

9          THE COURT:  Okay.  And so you or someone close to you

10    has worked for a law enforcement agency.

11         PROSPECTIVE JUROR:  Yes.

12         THE COURT:  And that includes your work?

13         PROSPECTIVE JUROR:  Yes.

14         THE COURT:  And tell us about that.

15         PROSPECTIVE JUROR:  Which part?  Me or the relative?

16         THE COURT:  You.  I'm sorry.

17         PROSPECTIVE JUROR:  Okay.  Well, I work in the field.

18    I work for the District of Columbia.  I'm a parking officer.

19         THE COURT:  Others may be having trouble understanding

20    you.

21         PROSPECTIVE JUROR:  Can you all hear me?  I'm sorry.

22    Is that better?  Okay.  I work on the public side.  I work for

23    parking enforcement, so I'm in the field eight hours a day,

24    five days a week.

25         THE COURT:  Making friends that whole time, right?

1           PROSPECTIVE JUROR:  Yes.  Some like me, some don't like
2      me.
3           THE COURT:  All right.  Do you think that that work
4      would make it so that you would be prejudiced one way or
5      another with respect to law enforcement?  In other words,
6      would you tend to believe a law enforcement officer as a
7      witness just because the person worked in law enforcement?
8           PROSPECTIVE JUROR:  Yes.
9           THE COURT:  You would?
10          PROSPECTIVE JUROR:  Mm-hmm.
11          THE COURT:  So you wouldn't assess them like you would
12     any other witness?  You would give them the benefit of the
13     doubt because they were law enforcement?
14          PROSPECTIVE JUROR:  No.  I would still assess.
15          THE COURT:  I'm sorry?
16          PROSPECTIVE JUROR:  I would assess.  I would ask
17     questions, yeah.
18          THE COURT:  So you would listen to their testimony just
19     like you would anyone else.
20          PROSPECTIVE JUROR:  Yes.  Yes, sir.
21          THE COURT:  All right.  And I note that you didn't
22     answer yes to that question.  I sort of asked it and got an
23     answer, but now you've explained it and we'll move on.
24        But do you have specific opinions regarding defense
25     attorneys, prosecutors or accused persons that could affect

1    you in deciding the case if you were a juror?

2         PROSPECTIVE JUROR:  No.

3         THE COURT:  All right.  You've explained you work for a

4    law enforcement agency.  Does anyone else in your family work

5    for law enforcement?

6         PROSPECTIVE JUROR:  Yes.

7         THE COURT:  Who's that?

8         PROSPECTIVE JUROR:  I have an uncle works for the D.C.

9    jail.

10         THE COURT:  Okay.  Have you had -- you or someone close

11    to you had any experience with law enforcement or the

12    government or the courts that would make it difficult for you

13    to be fair and impartial?

14         PROSPECTIVE JUROR:  It shouldn't, no.

15         THE COURT:  Well, what is the experience that you're

16    thinking about?

17         PROSPECTIVE JUROR:  Just my field of work, the things

18    that I see every day and the people that I am in

19    communications with within the field.  I'm very close to MPD

20    because of the type of work that I do.  My neighbor works in

21    the court system, so I'm pretty much, not a hundred percent

22    educated, but educated to certain things that happens or

23    things that go on within the system.

24         THE COURT:  All right.  So even though you have that

25    knowledge and education and experience that relates to law

1    enforcement, the question for you is whether, if you're

2    selected as a juror in this case, you could put that aside,

3    listen to the evidence in the case that is presented in the

4    courtroom with respect to these three individuals, and the

5    instructions from the Court on the law, and decide the case

6    fairly and impartially as a juror.  Do you think you could do

7    that?

8        PROSPECTIVE JUROR:  Yes.  Yes.

9        THE COURT:  You've also indicated that you or someone

10    close to you has been the victim of or a witness to or

11    arrested for or charged with a criminal offense?

12        PROSPECTIVE JUROR:  Yes.

13        THE COURT:  And who is that?

14        PROSPECTIVE JUROR:  My son.

15        THE COURT:  And you don't have to give us too much in

16    the way of details, but just what kind of charge did he face?

17        PROSPECTIVE JUROR:  As a juvie he had a gun charge.

18        THE COURT:  All right.  Is there anything about the way

19    that he was treated in the criminal justice system or by the

20    courts that would make it difficult for you to be fair and

21    impartial as a juror in this case?

22        PROSPECTIVE JUROR:  No.  Not at all.  Even within his

23    process I was pretty much pleased how the system treated the

24    case.  And they were very fair.

25        THE COURT:  All right.  You followed the events on

1      January 6 on that day or just afterwards?

2           PROSPECTIVE JUROR:  On that day and a couple of days

3      after and then I stopped because it was just always on TV and

4      didn't want to keep looking at it over and over again.

5           THE COURT:  Now, you may have formed some opinions

6      about the events on January 6, but I'll ask you the same kind

7      of question that I just asked you a moment ago:  Whatever

8      those opinions are, do you think you could set those aside if

9      you're selected as a juror and listen to the evidence and

10     decide the case as a juror fairly and impartially based on the

11     evidence with respect to these three individuals?

12          PROSPECTIVE JUROR:  Yes.

13          THE COURT:  All right.  Questions.

14          MR. VALENTINI:  No questions, Your Honor.

15          THE COURT:  Mr. Pierce.

16          MR. PIERCE:  Thank you, Your Honor.

17       Good afternoon, ma'am.

18          PROSPECTIVE JUROR:  Good afternoon.

19          MR. PIERCE:  So I just want to explore a couple lines

20     of questioning that the judge asked you in just a little bit

21     more detail.

22          PROSPECTIVE JUROR:  Okay.

23          MR. PIERCE:  When the judge asked you in light of your

24     work experience and the things that you experience in the

25     field, when he initially asked you do you think that that

1    would lead you to -- I believe the question was lead you to

2    trust the testimony of law enforcement more so.  And correct

3    me if I'm wrong, but I heard you give a very definitive yes.

4         PROSPECTIVE JUROR:  I stated if, like did the judge ask

5    if the evidence, you know, proves, you know, and it gives me a

6    clear definition of the situation, then yes, I can make a

7    judgment based off of that clearly and put everybody aside and

8    look at what's presented in front of me.

9         MR. PIERCE:  Understood.  Follow-up question.  Would

10   you come into --

11        PROSPECTIVE JUROR:  Being judgmental off the break?

12   No.

13        MR. PIERCE:  That was my question.  And you mentioned

14   your uncle I believe works at the D.C. jail?

15        PROSPECTIVE JUROR:  Yes.

16        MR. PIERCE:  If you know, is that the one where there

17   are January 6 defendants that are detained pretrial?

18        PROSPECTIVE JUROR:  No.

19        MR. PIERCE:  And you also mentioned you were close with

20   some MPD officers?

21        PROSPECTIVE JUROR:  Yes.

22        MR. PIERCE:  To your knowledge, were any of them --

23        PROSPECTIVE JUROR:  No.

24        MR. PIERCE:  -- involved in January 6?

25        PROSPECTIVE JUROR:  No.  When I say that I'm close to

MPD, it's like within the area that I work in.  And I'm not
going to give a definite area or tell you, but I'll give you
the district.  It's Third District.  And Third District is
nowhere near the Capitol.  Third District police station.

MR. PIERCE:  And just a final question, just to
confirm.  So you feel like, in light of your experiences, your
work, you would not come into the trial if you're selected on
the jury with a bias toward the government.  You would come in
and you would be fair.

PROSPECTIVE JUROR:  Oh, yes.  I'm going to be fair.  I
work for the government.  I uphold the law as far as
government is concerned.  If you're parked illegal, I'm going
to give you a ticket.

MR. PIERCE:  I'm going to try to avoid that.  Thank you
very much.

PROSPECTIVE JUROR:  You're welcome.

THE COURT:  That sat him down.

(Laughter.)

Thank you very much.  You may step down.

PROSPECTIVE JUROR:  Thank you.

(Juror 1289 steps down.  Juror 0009 steps up.)

THE COURT:  This is juror 0009, and she's answered yes
to a couple of questions.  We'll start with who it is in the
courtroom that you know.

PROSPECTIVE JUROR:  I'm sorry.  If I marked that,

1    that's a mistake.

2        THE COURT:  Sitting over there?

3        PROSPECTIVE JUROR:  Izzy Jensen, yes.  My daughter --

4    were you there this morning when I came in?

5        THE COURT:  All right.  It's my understanding that your

6    daughter and one of my law clerks have been long-term friends.

7        PROSPECTIVE JUROR:  Since kindergarten.

8        THE COURT:  And therefore, you are in effect a friend

9    of the family.

10       PROSPECTIVE JUROR:  A friend of the family.  I'm a very

11   close friend of her mother.

12       THE COURT:  Now I'll ask you a question.  Does the fact

13   that you now realize you know someone in the courtroom, would

14   that have any influence on you if you were selected as a juror

15   in this case?

16       PROSPECTIVE JUROR:  No.  That would not.

17       THE COURT:  So let's move on to the question of

18   presumption of innocence.  And you've indicated that you might

19   have difficulty following the requirement that a defendant,

20   including these three gentlemen, are presumed innocent unless

21   and until the government proves their guilt beyond a

22   reasonable doubt.

23       PROSPECTIVE JUROR:  Yes.

24       THE COURT:  And why is that?  Give us a little bit of

25   an explanation, if you will.

1    PROSPECTIVE JUROR:  All right.  Here's my explanation.

2    I am not proud of this, but I do not think I can be impartial.

3    I found the January 6 events terrifying.  I turned on the TV,

4    I saw people hanging from statues in the Capitol and I cried.

5    And they were in there for hours doing I don't know what.  I

6    consider the whole movement behind Trump, the beliefs they

7    have, the propensity for violence to be reprehensible and

8    ruining our country.

9    THE COURT:  All right.  It sounds like you have very

10   strong views.

11   PROSPECTIVE JUROR:  Very strong.

12   THE COURT:  So I'm going to ask you this question:  Are

13   you confident that if you were selected as a juror in this

14   case you could set aside those views and listen to the

15   evidence in the case with respect to these three individuals

16   and decide the case based on that evidence fairly and

17   impartially, not based on your preexisting views?

18   PROSPECTIVE JUROR:  I am not confident.

19   THE COURT:  All right.  Anything further that anyone

20   thinks I should follow up on?

21   MR. VALENTINI:  No, Your Honor.  We don't think we need

22   to follow up.

23   MR. PIERCE:  No, Your Honor.  Thank you.

24   THE COURT:  Thank you very much.

25   (Juror 0009 steps down.)

1          THE COURT:  Mr. Pierce.

2          MR. PIERCE:  We move to strike for cause, Your Honor.

3          MR. VALENTINI:  Government does not oppose the request.

4          THE COURT:  And we will strike juror 0009 based on her

5     responses and move on to the next juror, please.

6        (Juror 0893 steps up.)

7          THE COURT:  This is juror 0893.  And let's talk about

8     the events of January 6.  Did you follow them on TV on the

9     date of January 6?

10         PROSPECTIVE JUROR:  No.

11         THE COURT:  Thereafter, have you followed the news?

12         PROSPECTIVE JUROR:  Not regularly, no.

13         THE COURT:  Not regularly.  But some?

14         PROSPECTIVE JUROR:  Only when it was presented to me.

15         THE COURT:  And I assume you might have some views that

16    you've formed with respect to the events of January 6?

17         PROSPECTIVE JUROR:  Sure, yeah.

18         THE COURT:  My question to you is whether, if you were

19    selected as a juror in this case, are you confident that you

20    could set aside those views, whatever they are, and decide

21    this case based on the evidence presented in the courtroom and

22    the instructions on the law that I give you, fairly and

23    impartially as a juror without considering your prior views

24    with respect to January 6.

25         PROSPECTIVE JUROR:  Yes, I could.

1          THE COURT:  And you're confident of that?

2          PROSPECTIVE JUROR:  I'm confident I would.

3          THE COURT:  And tell us where you're employed.

4          PROSPECTIVE JUROR:  I am employed by the U.S.

5     Department of Health and Human Services.

6          THE COURT:  In what capacity?  What do you do?

7          PROSPECTIVE JUROR:  I am a program analyst basically

8     planning for emergency response for bioterrorism incidents.

9          THE COURT:  All right.  Follow-up questions.

10         MR. VALENTINI:  Good afternoon.

11         PROSPECTIVE JUROR:  Good afternoon.

12         THE COURT:  I'm Francesco Valentini, one of the

13    prosecutors in this case.  The question for you is you

14    mentioned you did not follow the events of January 6 on

15    January 6.  But did you hear about the events at the Capitol

16    on January 6 --

17         PROSPECTIVE JUROR:  I did hear about it, but I did not

18    really look it up or follow it.  And by hearing about it, I

19    mean as I was walking down the street I noticed people were on

20    their phones watching it, but I didn't really pay much

21    attention or mind to it.

22         MR. VALENTINI:  Did there come a time after that when

23    you became more aware of the events at the Capitol?

24         PROSPECTIVE JUROR:  Yeah.  Yeah.  I mean, I'm well

25    aware of the events now.  I just wasn't actively seeking it

1    out.  I try not to follow the news too much, especially during

2    the lockdowns.  It wasn't such a beautiful thing to look at.

3          MR. VALENTINI:  And where do you usually receive your

4    news from?  What outlets?

5          PROSPECTIVE JUROR:  On my phone I would have the Google

6    News app.  But I uninstalled it, actually.

7          MR. VALENTINI:  Thank you.  I have no further

8    questions.

9          THE COURT:  Mr. Pierce.

10         MR. PIERCE:  Good afternoon, sir.  I just didn't catch

11   it.  Which news app?

12         PROSPECTIVE JUROR:  It was Google News.  It catalogs

13   different news sources, so it can highlight *Washington Post*,

14   *New York Times* or any other major sources.

15         MR. PIERCE:  Okay.  And you mentioned you hadn't really

16   followed it at the time except for when I think you used the

17   phrase "presented to you."  Were you just referring to what

18   you were just talking about in terms of seeing it on the news

19   randomly, or just somebody specifically that presented it to

20   you?

21         PROSPECTIVE JUROR:  Yeah, exactly, following it -- or

22   it would appear randomly as you're looking through major

23   articles.

24         MR. PIERCE:  And now that you are familiar with it to

25   some extent based on that, do you have strong views about that

1    day one way or another?

2             PROSPECTIVE JUROR:  I have strong views about the

3    overarching event but not necessarily of the people that took

4    place, if that makes sense.

5             MR. PIERCE:  You could set that aside with respect to

6    evaluating these specific defendants?

7             PROSPECTIVE JUROR:  Yeah.

8             MR. PIERCE:  Okay.  Thank you very much.

9             THE COURT:  Thank you very much, and you may step down.

10            PROSPECTIVE JUROR:  All right.  Thank you.

11       (Juror 0893 steps down.  Juror 1000 steps up.)

12            THE COURT:  This is juror 1000.  And she's answered yes

13   to a couple of questions.  We'll start at the beginning, and

14   that is you or someone close to you has had legal training.

15            PROSPECTIVE JUROR:  Yes.

16            THE COURT:  You?

17            PROSPECTIVE JUROR:  Yes.

18            THE COURT:  And what is that?

19            PROSPECTIVE JUROR:  I'm a lawyer.  I'm actually an

20   administrative law judge for the District.

21            THE COURT:  All right.

22            PROSPECTIVE JUROR:  And my husband is a judge associate

23   for Superior Court, and that's it.

24            THE COURT:  So two questions.  In your practice as a

25   lawyer, even before being an administrative law judge, have

1    you ever dealt with criminal cases?

2        PROSPECTIVE JUROR:  Yes.  I worked at the Public

3    Defender Service here for 17 years.

4        THE COURT:  And dealing with a wide variety of criminal

5    matters in that capacity?

6        PROSPECTIVE JUROR:  Yes.  Misdemeanors to serious

7    felonies.

8        THE COURT:  And your husband deals with criminal cases,

9    or has at some points during his career?

10        PROSPECTIVE JUROR:  Yes.  Because he also worked at the

11    Public Defender Service.

12        THE COURT:  Do you think that that experience on the

13    criminal law, focused generally from the defense side, and

14    your communications with your husband who has a similar

15    background, do you think that that would make it difficult for

16    you to be a fair and impartial juror in a case such as this

17    and to listen to the evidence and decide the case based on the

18    evidence?

19        PROSPECTIVE JUROR:  Of course.  Of course, I would be

20    able to decide the case based on the evidence.

21        THE COURT:  All right.  You have been involved, as you

22    said, in the prosecution or defense of criminal cases in the

23    past.

24        PROSPECTIVE JUROR:  Mm-hmm.

25        THE COURT:  You've also served on a grand jury?

1          PROSPECTIVE JUROR:  That's correct.

2          THE COURT:  Just once?

3          PROSPECTIVE JUROR:  Just once.

4          THE COURT:  D.C. or federal?

5          PROSPECTIVE JUROR:  D.C.

6          THE COURT:  And how long ago was that?

7          PROSPECTIVE JUROR:  Probably I would say about 10 years

8    ago I would think.

9          THE COURT:  And you understand that the role of the

10   grand jury and the standard for the grand jury is different

11   than for a trial jury.

12         PROSPECTIVE JUROR:  Yes, I do.

13         THE COURT:  And you've also served as a trial juror.

14         PROSPECTIVE JUROR:  Yes, I have.

15         THE COURT:  How many times?

16         PROSPECTIVE JUROR:  Just once for a civil case, many,

17   many, many years ago.

18         THE COURT:  Many years ago.  In D.C. Superior Court?

19         PROSPECTIVE JUROR:  Superior Court, yeah.

20         THE COURT:  What was the subject matter of the civil

21   case?

22         PROSPECTIVE JUROR:  You know what?  I think it was a

23   college something -- I remember a university being involved,

24   but other than that, I don't remember.

25         THE COURT:  Maybe an employment or something?

1          PROSPECTIVE JUROR:  I just can't remember.

2          THE COURT:  Do you remember, not what it was, but do

3     you remember whether the jury reached a verdict?

4          PROSPECTIVE JUROR:  The jury did not reach a verdict.

5          THE COURT:  Did not reach a verdict.  Anything about

6     that experience that would make it difficult for you to be a

7     fair and impartial juror if selected in this case?

8          PROSPECTIVE JUROR:  No.

9          THE COURT:  All right.  The events of January 6.  Did

10    you follow them on that date?

11         PROSPECTIVE JUROR:  Yeah.  I saw it on television.

12         THE COURT:  And have you followed it closely since

13    then?

14         PROSPECTIVE JUROR:  Just what's on the national news.

15         THE COURT:  And you've followed the congressional

16    hearings somewhat too.

17         PROSPECTIVE JUROR:  Yes.

18         THE COURT:  And I assume you've formed some opinions

19    with respect to the events on January 6.

20         PROSPECTIVE JUROR:  Yeah, I would say.

21         THE COURT:  My question for you is whether you are

22    confident that you could set aside those opinions that you

23    formed, and if selected as a juror in this case, listen to the

24    evidence presented in the courtroom and make a decision fairly

25    and impartially as a juror based on that evidence.

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  All right.  With that, questions?

3          MR. VALENTINI:  Government has no questions.

4          THE COURT:  Mr. Pierce.

5          MR. PIERCE:  No questions, Your Honor.  Thank you.

6          THE COURT:  Thank you very much.  You may step down.

7          PROSPECTIVE JUROR:  Thank you.

8        (Juror 1000 steps down.  Juror 0401 steps up.)

9          THE COURT:  This is juror 0401.  We'll start with legal

10    training.  You or someone close to you?

11          PROSPECTIVE JUROR:  Me and someone close to me.

12          THE COURT:  Let's start with you.

13          PROSPECTIVE JUROR:  A year of law school before I

14    withdrew in good standing.  I'm not a lawyer.  And then my

15    father-in-law was a partner at a big law firm and now has his

16    own practice.

17          THE COURT:  Do you know whether your father-in-law

18    previously or currently practices criminal law?

19          PROSPECTIVE JUROR:  He does not.  It's international

20    arbitration.

21          THE COURT:  So moving on, is it you or someone close to

22    you who's worked for a law enforcement agency?

23          PROSPECTIVE JUROR:  I currently work for a law

24    enforcement agency.

25          THE COURT:  And which agency is that?

1          PROSPECTIVE JUROR:  The U.S. Marshals.

2          THE COURT:  What do you do for them?

3          PROSPECTIVE JUROR:  I'm a statistician for them in

4     their investigative operations division.

5          THE COURT:  Okay.  And so what kind of things do you

6     do?

7          PROSPECTIVE JUROR:  Yes.  So I do resource allocation,

8     models for where to put people and money, and then I also help

9     with operational visualizations, so dashboards for operational

10    planning purposes.

11         THE COURT:  So you're part of a law enforcement agency.

12         PROSPECTIVE JUROR:  Yes.

13         THE COURT:  And you've obviously come in contact with

14    some other people in law enforcement.

15         PROSPECTIVE JUROR:  Yes.

16         THE COURT:  And the question is whether you believe

17    that the testimony of a law enforcement officer, from any law

18    enforcement agency, is more or less likely to be truthful

19    simply because that person as a witness is a law enforcement

20    officer.

21         PROSPECTIVE JUROR:  I tend to think that they would be

22    more truthful with their answers.  I think they have sworn a

23    duty to uphold the law, assuming that they are not maybe the

24    ones who are under investigation or part of the case.

25         THE COURT:  Now, you tend to believe that.

1        PROSPECTIVE JUROR:  Yes.

2        THE COURT:  The follow-up question to that is whether,

3    with a witness on the stand, you would nonetheless assess that

4    witness's testimony and do you think you could conclude that a

5    law enforcement officer was not telling the truth?

6        PROSPECTIVE JUROR:  I would like to think so, that I

7    would be able to tell whether or not they were telling the

8    truth, but I would like to think that they would also uphold

9    their oath.

10        THE COURT:  Would you try to assess that witness in

11    roughly the same manner that you would assess any other

12    witness, by listening to their testimony, sensing how they

13    were reacting on the witness stand, and reaching a conclusion

14    about the credibility or strength of whatever they were

15    testifying to?

16        PROSPECTIVE JUROR:  Yes.

17        THE COURT:  You or someone close to you has been the

18    victim of, a witness to, or arrested or charged with a

19    criminal offense?

20        PROSPECTIVE JUROR:  I had an uncle growing up who was

21    arrested for drug charges.

22        THE COURT:  Anything about the treatment of your uncle

23    in that circumstance that would make it difficult for you to

24    be fair and impartial as a juror?

25        PROSPECTIVE JUROR:  No.

1          THE COURT:  Did you live near the Capitol or work near

2     the Capitol on January 6, 2021?

3          PROSPECTIVE JUROR:  No, not near the Capitol.  In

4     Northwest D.C.

5          THE COURT:  Anyone close to you live or work close to

6     the Capitol?

7          PROSPECTIVE JUROR:  Not live or work, but I did know

8     first responders who were at the Capitol.

9          THE COURT:  Do you think knowing first responders and

10    the situation that they had to deal with would bias you in any

11    way and make it difficult for you to be fair and impartial if

12    selected as a juror?

13         PROSPECTIVE JUROR:  No.

14         THE COURT:  And you did follow the events of January 6

15    on that day?

16         PROSPECTIVE JUROR:  Yes.

17         THE COURT:  And you followed them somewhat thereafter?

18         PROSPECTIVE JUROR:  Somewhat, yes.

19         THE COURT:  Not closely.

20         PROSPECTIVE JUROR:  Not super closely.

21         THE COURT:  And you have watched the congressional

22    hearings, for example.

23         PROSPECTIVE JUROR:  Yes.  I've seen highlights of them.

24         THE COURT:  So from all that viewing and attention that

25    you've paid to it, I assume that you've formed some opinions

1    with respect to the events of January 6.

2            PROSPECTIVE JUROR:  Yes.

3            THE COURT:  My question to you is whether you are

4    confident that if selected as a juror you could set aside

5    those views and opinions, listen to the evidence presented in

6    the courtroom and fairly and impartially decide this case with

7    respect to these three defendants, setting aside those prior

8    views.

9            PROSPECTIVE JUROR:  Yes.

10           THE COURT:  Are you confident you could do that?

11           PROSPECTIVE JUROR:  Yes.

12           THE COURT:  All right.  Turn it over.  Any questions?

13           MR. VALENTINI:  The government does not have any

14   questions.

15           THE COURT:  Mr. Pierce.

16           MR. PIERCE:  Thank you, Your Honor.

17       Good afternoon, ma'am.  Do you know any U.S. Marshals or

18   other folks that work for the U.S. Marshals that have had any

19   connection with January 6?

20           PROSPECTIVE JUROR:  Yes.  Marshals who responded to the

21   events of January 6.

22           MR. PIERCE:  Okay.  And were those the people you were

23   referring to when you just mentioned that you knew some first

24   responders?

25           PROSPECTIVE JUROR:  Yes.

1          MR. PIERCE:  Anybody else besides the marshals that

2     you're referring to there?

3          PROSPECTIVE JUROR:  No.

4          MR. PIERCE:  Okay.  And to your knowledge, were any of

5     those individuals injured on January 6?

6          PROSPECTIVE JUROR:  No, they were not.

7          MR. PIERCE:  Or suffered any sort of -- if you know,

8     suffered any kind of long-term trauma or anything like that?

9          PROSPECTIVE JUROR:  Not that I'm aware of.

10          MR. PIERCE:  Did you have discussions with any of those

11     individuals about January 6?

12          PROSPECTIVE JUROR:  No.

13          MR. PIERCE:  Now, you did indicate -- you did indicate

14     at some point that you would like to think -- I think is the

15     way you put it -- you would like to think that law enforcement

16     officers being sworn to uphold the law would tend to be

17     truthful in their testimony.

18        Now, if an FBI agent gets up on the stand and testifies and

19     let's say later in the trial one of the defendants who's in

20     some criminal jeopardy of liability gets up and testifies,

21     would you come into that situation and tend to believe that

22     the FBI agent was being more credible than the defendant

23     simply because one is a law enforcement officer and one is a

24     criminal defendant?

25          PROSPECTIVE JUROR:  I think it would depend on the

1      testimony.  And potentially I would believe that the law

2      enforcement officer might be more credible.

3              MR. PIERCE:  Okay.  Thank you very much.

4              PROSPECTIVE JUROR:  You're welcome.

5              THE COURT:  All right.  Thank you very much.  You may

6      step down.

7              PROSPECTIVE JUROR:  Thank you.

8          (Juror 0401 steps down.)

9              MR. PIERCE:  Your Honor, we'd move to strike for cause

10     on the basis that at the end there she indicated she would

11     probably tend to believe law enforcement over a defendant in

12     their testimony.

13             THE COURT:  Mr. Valentini?

14             MR. VALENTINI:  Your Honor, the prospective juror

15     said -- her first answer right off the bat was, as I wrote it

16     down as I recall, was that it would depend on the testimony.

17     And she said she'd potentially give more credence to a law

18     enforcement officer over a defendant.  That is not the kind of

19     inability to assess the testimony and the credibility of

20     witnesses based on the testimony that is offered at trial,

21     which is the standard.  And so we don't think that the answer

22     to the last question would warrant a strike for cause in this

23     case.

24             THE COURT:  All right.  This is another close one, but

25     I do think that overall her answers with respect to this

1    subject of a law enforcement witness indicated that she would

2    assess the testimony, and it was the testimony that would

3    matter, and that she would -- could find that the law

4    enforcement officer was not being credible.

5        And I think, as I say, it's a close question, but I think

6    that overall there's sufficient confidence, from the Court at

7    least, that this witness would assess the testimony of a law

8    enforcement officer as she would the testimony of anyone else.

9    And we will not strike her for cause.

10       And I believe that that gives us the 22 we are looking for.

11   So what we will now do is bring everybody in as quickly as we

12   can -- since we only have 25 minutes and we're going to try to

13   accomplish this in 25 minutes or there about -- bring

14   everybody in, and we'll discharge everybody but the 22 we need

15   remaining, and the counsel will exercise their peremptories.

16       So bring them in.  And I don't really care -- I care about

17   the first 36 jurors being in proper seats.  The rest of them I

18   don't care where they sit because they're going to be

19   discharged immediately.

20       (Deputy clerk exits, reenters with jury pool.)

21       THE COURT:  Welcome back, everyone.  We've finished

22   talking to the number of jurors we need to talk to in order to

23   seat a jury.  So I'm going to excuse most of you.  I'll start

24   by thanking all of you, including those who are going to be

25   excused, for your service, for your patience and attention,

1    and the service to the community and to the criminal justice

2    system.

3        Anyone who has not come in individually to talk with me is

4    excused.  We will not need to keep you beyond this point.  And

5    then several others we can excuse as well.  Some of these

6    numbers that I'm going to read off have already been released,

7    but I'm going to read them off anyway so we have the record,

8    and in case I miss someone.

9        The other jurors who may leave who we will not be needing

10   any longer are jurors No. 0063, 1298, 0086, 1192, 2174, 0369,

11   2021, 1191, 1239, 0289, 1855, 0603, 0290, 0009, and 0627.  So

12   all those whose numbers I just read off plus anyone who I have

13   not spoken to individually may leave.

14       Mark, do they need to report back to the jury office or

15   call in tonight?

16           THE DEPUTY CLERK:  The jury office is closed for the

17   night, Your Honor, but please call the number after 5:00 to

18   see whether you have to report tomorrow or not.

19           THE COURT:  All right.  So you may all leave now,

20   everyone who I've indicated is excused.  And thank you again.

21       (Dismissed jurors exit the courtroom.)

22           THE COURT:  All right.  Have we given them the strike

23   sheets yet?

24       (Forms passed to counsel.)

25       All right.  Now I'm going to ask everyone who remains to

1    stay seated.  We need you in the same order that you came in

2    in.

3              PROSPECTIVE JUROR:  I wasn't sure if my number was

4    called.  I don't know if you said 0289 or 1289.

5              THE COURT:  What is your number?

6              PROSPECTIVE JUROR:  1289.

7              THE COURT:  Just a second.  No, you need to remain.

8              PROSPECTIVE JUROR:  Okay.

9              THE COURT:  All right.  So please stay in your seats

10    because now counsel and the defendants are going to exercise

11    what we call peremptory strikes that they get a right to

12    exercise.  And that will excuse a few more of you.  But you

13    need to stay in your seats so they can, when necessary, look

14    at you and figure out -- remember who you are.

15       And be patient.  We'll try to get this done as quickly as

16    possible, but I need to give them the opportunity to exercise

17    these rights that they have.  As soon as we do that, we'll be

18    able to wrap things up for the day and I'll tell you what more

19    we're going to be doing.

20       (Counsel exercising strikes.)

21              THE COURT:  My question for counsel is whether there

22    are any challenges, and all you have to do is indicate yes or

23    no.  Are there any challenges to the strikes exercised by the

24    other side?

25              MR. VALENTINI:  Not for the government.

1          MR. PIERCE:  No, Your Honor.

2          THE COURT:  All right.  Then we --

3       (Court conferring with staff.)

4          THE COURT:  Do we have enough phones yet or not?  I

5     just need counsel to pick up.

6        (Bench conference.)

7          THE COURT:  The last four listed would be -- well,

8     they're the only four on the second page, I believe.  So it

9     would be jurors 0501, 1289, 0893, and 0401.  So you each have

10    one strike for the alternates, and if you'd exercise those

11    now, I would appreciate it.

12       (End of bench conference.)

13      (Counsel exercising strikes.)

14         THE COURT:  All right.  We're now ready to seat the

15    jury.  And all I'm going to do is have you seated in the jury

16    box and excuse the rest of the jurors for the day.  But I'll

17    bring you back in the morning to continue things.  So we'll

18    only be here for another five minutes and then I'll bring you

19    back in the morning, we'll swear the jury in in the morning,

20    I'll give you preliminary instructions, and we'll begin the

21    case.

22       But for now, let's go ahead and seat the jury in the jury

23    box.

24         THE DEPUTY CLERK:  When I call your number, so 2015 --

25         THE COURT:  And the order of seating is front row --

1    the first juror sits in the first chair closest to me, and

2    then we go down seven, and then in the back row starting with

3    No. 8, down through No. 14.

4         THE DEPUTY CLERK:  0272 will be in seat No. 2.  0202,

5    seat No. 3.  0077, seat No. 4.  1737, seat No. 5.  1061, seat

6    No. 6.  1289, seat No. 7.  0317, seat No. 8.  1365, seat

7    No. 9.  0538, seat No. 10.  0401, seat No. 11.  0761, seat

8    No. 12.  0643, seat No. 13.  1664, seat No. 14.

9         THE COURT:  All right.  Ladies and gentlemen, you will

10   be the jury panel in this case.  For the rest of you, let me

11   thank you for your patience, endurance and attention.  Yes.

12        MS. MURPHY:  Your Honor, if I may?

13      (Bench conference.)

14        MS. MURPHY:  The numbering seems off.  If she would

15   read them again?  The numbering does not seem to be correct.

16   We didn't even get to the --

17        MR. PIERCE:  I agree with that, Your Honor.

18        MS. MURPHY:  The alternates on the second page, Your

19   Honor.

20        THE COURT:  I'm sorry, what?

21        MR. VALENTINI:  It appears that it's an ordering

22   question as opposed to -- a seat ordering question, as opposed

23   to who's on the jury.

24        THE COURT:  The alternates are in seats 7 and 11.  I

25   think I told you that earlier.

1          MR. VALENTINI:  Okay.  I'm sorry.

2          THE COURT:  So is that the only question you have?  And

3     I'll talk to you more about that after we excuse the jury.

4          MR. VALENTINI:  That's the only question.  Yes.  Thank

5     you.

6          MR. PIERCE:  I'm sorry.  I also had a question.

7     Actually, about 7 and 11, could she just repeat what juror

8     numbers are 7 and 11?

9          THE COURT:  No.  I'm not going to single that out

10    because -- well, I'll tell you right now on the phone.

11         MR. PIERCE:  That's what I meant, Your Honor.

12         THE COURT:  The juror numbers are 1289 and 0401.

13         MR. PIERCE:  Oh, I understand what happened.  Okay.

14    Sorry.

15         (End of bench conference.)

16         THE COURT:  All right.  With that, let me say again to

17    the remaining jurors sitting in the public seats of the

18    courtroom, thank you again for your service, attention,

19    endurance, and the community and the criminal justice system

20    and the Court thanks you very much.  And you can go ahead and

21    return home.  And I think as we told the other jurors, you

22    should call in to the jury number to see if you're needed

23    tomorrow.  Thank you.

24         (Excused jurors exit the courtroom.)

25         All right.  Ladies and gentlemen, the packets that you have

are to enable you to take notes.  But you can leave them here.
You don't take them with you.  I think you're going to be
walked down the hall and shown the jury room so you know where
to come in the morning.  We'll start at 9:30, so you need to
get here in time so you're there in the jury room.

Please don't discuss the case among yourselves now or when
you arrive tomorrow morning or with your friends and
relatives.  I'm not going to swear you in tonight.  We'll
swear you first thing tomorrow.  Then it'll be about 10 to 15
minutes worth of preliminary instructions just to give you a
little bit of framework for the case.  And then we'll commence
with the opening statements by each counsel and then the
evidence in the case.

So I wish you a good evening and I put you in the capable
hands of our deputy clerks to take you down the hall and show
you where you should come in the morning.  And then we'll
bring you in from there into the courtroom.  And again, we'll
begin at 9:30.

And the normal instruction that I give you once you're
sworn includes an instruction not to do any research with
respect to the case.  Don't go on the internet and start
looking up the defendants.  Don't even start looking up me, if
anyone would waste their time doing that, but just leave it
alone.  Don't try to do any investigation of your own with
respect to the case or the participants in the case.  And we

 1    will see you tomorrow morning.  Have a very nice evening and

 2    thank you all for your patience and endurance for this long

 3    day.

 4         (Jury out at 5:09 p.m.)

 5         THE COURT:  All right.  Are you all set on who's on the

 6    jury and who are the alternates?

 7         MR. PIERCE:  Yeah.  It just got confusing because --

 8         MR. VALENTINI:  Yes.

 9         THE COURT:  All right.  So as I just told them, we'll

10    start tomorrow morning with the swearing in and then the

11    preliminary instructions, and then we'll begin with the

12    opening statements.  The government's again would be I think

13    you said 10?

14         MS. MURPHY:  Between 10 minutes and 12 minutes.

15         THE COURT:  10 and 12.  You've rehearsed it.  And will

16    you be doing it, Mr. Pierce?

17         MR. PIERCE:  Yes, Your Honor.  I think it'll be just

18    about the same.

19         THE COURT:  All right.  And we'll look forward to that.

20    And then to the commencement of evidence.  Any change with

21    respect to witnesses, and is this the order of the

22    government's witnesses?  Or at least the first couple?  You

23    have Captain Summers first and then Special Agent Glavey.

24         MR. VALENTINI:  Yes, Your Honor.  Yes, this is the

25    order in which we expect to proceed.

1              THE COURT:  All right.  Good.

2              MR. VALENTINI:  One outstanding question has to do with

3       the defense exhibits.  I believe that there was an exhibit

4       list that was submitted on Friday.  We also received an upload

5       of electronic materials which we've not been able to open

6       because it's a large upload and we're working with the defense

7       on resolving that issue, and I'm optimistic that we'll be able

8       to resolve it, and I'm optimistic that the materials only

9       consist of exhibits that will be introduced in their case as

10      opposed to the government's case.

11             THE COURT:  All right.  Well, I'll say this with

12      respect to the defense exhibit list, which was pared down

13      somewhat based on the pretrial conference and my rulings, but

14      I don't think pared down sufficiently reflecting those

15      rulings, but I'll deal with the rest of it exhibit by exhibit,

16      anything you can't finish working out.

17         I don't think the defense is going to wind up getting all

18      130 remaining exhibits that you have, roughly 130, admitted.

19      Several of them seem to me to be barred, if you will, by my

20      previous rulings.  But we'll deal with that one by one.

21         And I'll also take a further look at the trial brief that

22      was filed and any objections that are raised with respect to

23      government witnesses -- government exhibits in that trial

24      brief.  And I'll save my comments for that for the morning.

25             MR. VALENTINI:  The last point I wanted to raise is,

1    with respect to the 200 series, which are the contents of the

2    cell phone, I understand, if I remember correctly from the

3    trial brief that I glanced at this morning, there's some

4    objections specific to two of those exhibits, and I understand

5    we will deal with that separately.

6        There's a more foundational question as to the authenticity

7    that we teed up for the Court at the pretrial conference.  And

8    our understanding is that there is no objection to proceeding

9    with the authentication of those exhibits from the iCloud

10   account by way of certification.  If there is an objection or

11   we need to have a witness who processed the data ready, we

12   need to know.  So I just want to make sure that if they plan

13   to object --

14           THE COURT:  Mr. Pierce or Mr. Roots, any response?

15           MR. ROOTS:  I'm Mr. Roots for the defendants.  My

16   understanding is these are from the cell phones of the

17   defendants?

18           MR. VALENTINI:  This is from the iCloud account of one

19   of the defendants.

20           MR. ROOTS:  Yeah.  I don't think we have a problem with

21   that.

22           THE COURT:  All right.  So we won't have any

23   authenticity problems with that.  There are objections to a

24   couple of those exhibits, but we'll deal with that.  They're

25   not authenticity objections.  We'll deal with that in the

1    morning.

2        In order to do any straightening out that is necessary

3    before we proceed, maybe we should be ready to go at 9:15 so

4    we don't keep the jury waiting, and we can deal in those first

5    15 minutes with anything that needs to be dealt with.

6        All right?  Have a good evening.  We'll see you in the

7    morning.  Thank you.

8        (Proceedings adjourned at 5:14 p.m.)

\* \* \* \* \* \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify
that the foregoing pages are a correct transcript from the
record of proceedings in the above-entitled matter.

*/s/ Bryan A. Wayne*
Bryan A. Wayne